**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

CARTER COE, by and through his parent and next friend, CAROLINE COE; REED ROE, by and through his parent and next friend, RILEY ROE; NICOLE NOE, by and through her parent, NORMAN NOE; KARL KOE; and JAY DOE, *on behalf of themselves and all similarly situated*,

*Plaintiffs*,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; U.S. DEPARTMENT OF JUSTICE; NYU LANGONE HEALTH SYSTEM; NYU LANGONE HOSPITALS; and NYU GROSSMAN SCHOOL OF MEDICINE, A DIVISION OF NEW YORK UNIVERSITY,

*Defendants*.

Case No.    1:26-cv-04641-JAV

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER</u>

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES................................................................................................ iv

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 2

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT...................................................................................................................... 5

I. Plaintiffs Are Likely to Succeed on the Merits. ..................................................... 5

A. The Court Has Jurisdiction to Entertain Plaintiffs' Claims and Issue Relief. .................... 5

1. Plaintiffs Have Standing. ........................................................................ 5

2. This Court May Issue the Requested Relief.......................................... 5

3. Grand Jury Investigative Power Is Limited by the Constitution.................................... 7

B. Plaintiffs Are Likely to Succeed on Their Fifth Amendment Claim. ................................ 9

1. Legal Standard for Evaluating Informational Privacy Claims........................................ 9

2. The Subpoenas Implicate Sensitive Personal Information Protected by the Fifth

Amendment.................................................................................... 10

3. The Factors for Evaluating Informational Privacy Claims Weigh Strongly in Favor of

Protecting Plaintiffs. ......................................................................11

i. Type of records and nature of the information...........................................11

ii. Potential for harm in nonconsensual disclosure ....................................... 12

iii. Degree of need for access..................................................................... 15

iv. Adequacy of safeguards to prevent unauthorized disclosure ................................. 16

v. Whether a statutory mandate, articulated public policy, or other recognizable public

interest militates toward access.................................................................. 17

C. Plaintiffs are Likely to Succeed on their Fourth Amendment Claim. .............................. 18

    1. The Fourth Amendment's guarantee of reasonableness applies to information sought here. ................................................................................................................................. 18

    2. Plaintiffs have an objectively reasonable expectation of privacy in their identifying and sensitive health information. ........................................................................................ 19

    3. DOJ's bad faith investigation and utter lack of legitimate purpose demand the conclusion that the Subpoenas are oppressive and unreasonable. .................................... 22

D. Plaintiffs Are Likely To Succeed on Their State Law Claims Against NYU. ................... 23

II. Absent a TRO, Plaintiffs Will Suffer Irreparable Harm. ...................................................... 26

III. The Balance of the Equities and Public Interest Favor Issuing a TRO. .............................. 27

IV. The Court Should Require No Bond. ................................................................................... 28

CONCLUSION ............................................................................................................................ 28

# TABLE OF AUTHORITIES

**Cases**                                                                                                            **Page(s)**

*Abdi v. Duke*,
  280 F.Supp.3d 373 (W.D.N.Y. 2017), *vacated in part on other grounds sub. nom. Abdi v. McAleenan*, 405 F.Supp.3d 467, 472 (W.D.N.Y. 2019) ........................................................... 4

*ACLU v. Clapper*,
  804 F.3d 617 (2d Cir. 2015) ........................................................................... 4

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
  57 F.4th 85 (2d Cir. 2023) ............................................................................ 7

*Airbnb, Inc. v. City of New York*,
  373 F.Supp.3d 467 (S.D.N.Y. 2019) ............................................................ 26

*Biosynexus, Inc. v. Glaxo Grp. Ltd.*,
  40 A.D.3d 384 (N.Y. App. Div. 1st Dept. 2007) ......................................... 24

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004) .......................................................................... 5

*Caldarola v. Cnty. of Westchester*,
  343 F.3d 570 (2d Cir. 2003) ........................................................................ 19

*Camara v. Mun. Ct. of City & Cnty. of San Francisco*,
  387 U.S. 523 (1967) ............................................................................... 18, 19

*Carpenter v. United States*,
  585 U.S. 296 (2018) .......................................................................... 20, 21, 22

*Chanko v. Am. Broad. Companies Inc.*,
  49 N.E.3d 1171 (NY 2016) ................................................................ 23, 24, 25

*Cooper v. Mount Sinai Health Sys., Inc.*,
  742 F.Supp.3d 369 (S.D.N.Y. 2024) ........................................................... 24

*Coronel v. Decker*,
  449 F.Supp.3d 274 (S.D.N.Y. 2020) ........................................................... 27

*Dillenbeck v. Hess*,
  536 N.E.2d 1126 (N.Y. 1989) ...................................................................... 25

*Doe v. Broderick*,
  225 F.3d 440 (4th Cir. 2000) ....................................................................... 19

*Doe v. City of New York*,
  15 F.3d 264 (2d Cir. 1994) ........................................................................... 10

*Doe v. U.S. Merch. Marine Acad.*,
307 F.Supp.3d 121 (E.D.N.Y. 2018) ............................................................... 9

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003) ........................................................................... 7

*Endocrine Soc'y v. Fed. Trade Comm'n*,
No. 26-cv-00512, 2026 WL 1257289 (D.D.C. May 7, 2026).......................... 13

*Ferguson v. City of Charleston*,
532 U.S. 67 (2001).......................................................................................... 19

*Hale v. Henkel,*
201 U.S. 43 (1906)........................................................................................... 18

*Hancock v. Cnty. of Rensselaer*,
882 F.3d 58 (2d Cir. 2018) ....................................................................9, 10, 11

*Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*,
843 F.2d 546 (D.C. Cir. 1988)......................................................................... 6

*In Re 2025 Children's Hosp. of Los Angeles Subpoena*,
No. 2:25-CV-11183, (C.D. Cal. Jan. 22, 2026)................................................ 16

*In re Admin. Subpoena 25 1431 032 to R.I. Hosp.*,
No. 1:26-mc-0007, 2026 WL 1392565 (D.R.I. May 14, 2026) .................. 8, 13, 23

*In re Admin. Subpoena No. 25-1431-019*,
800 F.Supp.3d 229 (D. Mass. 2025) ............................................................... 2

*In re Children's Nat'l Hosp.*,
No. 1:25-CV-03780, 2026 WL 160792 (D. Md. Jan. 21, 2026) ....................... passim

*In re Dep't of Just. Admin. Subpoena No. 25-1431-030*,
2026 WL 33398 (D. Colo. Jan. 5, 2026) ......................................................... 2

*In re Grand Jury Investigation in New York County*,
779 N.E.2d 173 (NY 2002) ........................................................................24, 25, 26

*In re Grand Jury Proceeding*,
971 F.3d 40 (2d Cir. 2020) .............................................................................. 23

*In re Grand Jury, John Doe No. G.J.2005-2*,
478 F.3d 581 (4th Cir. 2007) .......................................................................... 19

*In re Horowitz*,
482 F.2d 72 (2d Cir. 1973) .............................................................................. 18

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022) ............................................................... 27

*In re Subpoena Duces Tecum No. 25-1431-016*,
2025 WL 3562151 (W.D. Wash. Sept. 3, 2025).............................................. 2

*In re Subpoena No. 25-1431-014*,
810 F.Supp.3d 555 (E.D. Pa. 2025) ....................................................... passim

*In re Subpoenas to Loc. 478, Int'l Union of Operating Eng'rs & Ben. Funds*,
708 F.2d 65 (2d Cir. 1983) ................................................................................ 8

*In Re: 2025 UPMC Subpoena*,
No. 2:25-MC-1069, 2026 WL 570419 (W.D. Pa. Dec. 16, 2025) ................... 16, 17

*Juric v. Bergstraesser*,
44 A.D.3d 1186 (N.Y. App. Div. 3d Dept. 2007) ...................................... 26

*Katz v. United States*,
389 U.S. 347 (1967)......................................................................................... 18

*Kermani v. New York State Bd. of Elections*,
487 F.Supp.2d 101 (N.D.N.Y. 2006)......................................................... 28

*LaForest v. Former Clean Air Holding Co.*,
376 F.3d 48 (2d Cir. 2004) .............................................................................. 4

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016)............................................................................ 27

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........................................................................................... 5

*Make the Rd. N.Y. v. Pompeo*,
475 F.Supp.3d 232 (S.D.N.Y. 2020) .......................................................... 27

*Mazzocchi v. Windsor Owners Corp.*,
204 F.Supp.3d 583 (S.D.N.Y. 2016) .......................................................... 12

*Mitchell v. Cuomo*,
748 F.2d 804 (2d Cir. 1984) ...................................................................... 26, 27

*Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*,
604 F.Supp.2d 665 (S.D.N.Y. 2009) ...........................................................11

*New Jersey v. T.L.O.*,
469 U.S. 325 (1985).......................................................................................... 19

*New York v. U.S. Dep't of Homeland Sec.*,
 969 F.3d 42 (2d Cir. 2020) ........................................................................ 27

*Nw. Mem'l Hosp. v. Ashcroft*,
 362 F.3d 923 (7th Cir. 2004) ........................................................................ 8

*O'Connor v. Pierson*,
 426 F.3d 187 (2d Cir. 2005) ................................................................... 9, 10

*Ohio v. Robinette*,
 519 U.S. 33 (1996) ...................................................................................... 19

*Oregon v. Gonzales*,
 546 U.S. 243 (2004) .................................................................................... 17

*Oregon v. Kennedy*,
 No. 6:25-CV-02409, 2026 WL 1048354 (D. Or. Apr. 18, 2026) ............... 17

*Orr v. Trump*,
 778 F.Supp.3d 394 (D. Mass. 2025) ........................................................... 12

*Perry v. Rockmore*,
 238 A.D.3d 67 (N.Y. App. Div., 3d Dept., 2025) ....................................... 23

*PFLAG, Inc. v. Trump*,
 769 F.Supp.3d 405 (D. Md. 2025) .............................................................. 13

*Powell v. Schriver*,
 175 F.3d 107 (2d Cir. 1999) ..................................................................10, 11

*Press Pub. Co. v. Walling*,
 327 U.S. 186 (1946) .................................................................................... 19

*QueerDoc, PLLC v. U.S. DOJ*,
 807 F.Supp.3d 1295 (W.D. Wash. 2025) ...................................................... 8

*Rodgers v. Rensselaer Cnty. Sheriff's Dep't*,
 No. 1:14-CV-01162, 2015 WL 4404788 (N.D.N.Y. July 17, 2015) ............ 9

*Rosselló Nevares*,
 305 F.Supp.3d 327 (D.P.R. 2018) ...........................................................10, 11

*San Francisco A.I.D.S. Found. v. Trump*,
 786 F.Supp.3d 1184 (N.D. Cal. 2025) ........................................................ 13

*Schwenk v. Kavanaugh*,
 4 F.Supp.2d 110 (N.D.N.Y. 1998) ................................................................ 9

*Smith v. Maryland*,
442 U.S. 735 (1979) ................................................................................ 18

*State of Texas v. Bruck*,
No. EF2025-2536, Slip Op. (N.Y. Sup. Ct., Ulster Cnty. Oct. 31, 2025),
https://tinyurl.com/68a9yyya [https://perma.cc/K7NL-94VX] ................................................ 14

*State v. Russell*,
274 N.E.3d 387 (Ohio Ct. App. 6th Dist. 2025) ....................................................... 22

*Strouchler v. Shah*,
891 F.Supp.2d 504 (S.D.N.Y. 2012) ..................................................................... 4

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .................................................................................... 5

*The New York Times Co. v. Gonzales*,
459 F.3d 160 (2d Cir. 2006) ...................................................................... 6, 7

*Trump v. Vance*,
480 F.Supp.3d 460 (S.D.N.Y.), *aff'd, 977* F.3d 198 (2d Cir. 2020) .................................... 18, 22

*Tucson Woman's Clinic v. Eden*,
379 F.3d 531 (9th Cir. 2004) ...................................................................... 11, 16

*United States v. Calandra*,
414 U.S. 338 (1974) .............................................................................. 7, 8, 18

*United States v. Jones*,
565 U.S. 400 (2012) .............................................................................. 18, 19, 20

*United States v. Miller*,
425 U.S. 435 (1976) ................................................................................ 21

*United States v. R. Enters., Inc.*,
498 U.S. 292 (1991) .............................................................................. 7, 19, 22

*United States v. Skrmetti*,
605 U.S. 495 (2025) ................................................................................ 10

*United States v. Westinghouse Elec. Corp.*,
638 F.2d 570 (3d Cir. 1980) ......................................................................... 11

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981) .................................................................................. 4

*Wallace v. Health Quest Sys., Inc.*,
No. 20-cv-00545, 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ........................................ 24

*Whalen v. Roe,*
  429 U.S. 589 (1977) ............................................................................. 9

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.,*
  485 F.Supp.3d 1 (D.D.C. 2020) ........................................................ 15

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ................................................................................ 4

*Wood v. Georgia,*
  370 U.S. 375 (1962) .......................................................................... 23

*Yang v. Kosinski,*
960 F.3d 119 (2d Cir. 2020) ............................................................... 27

**Federal Statutes and Constitutional Provisions**

18 U.S.C. § 3771(a)(8) ............................................................................. 21

28 U.S.C. § 1331 ....................................................................................... 5

28 U.S.C. § 1346 ....................................................................................... 5

28 U.S.C. § 1361 ....................................................................................... 5

28 U.S.C. § 1367(a) .................................................................................. 5

28 U.S.C. § 2201 ................................................................................... 5, 6

28 U.S.C. § 2202 ....................................................................................... 6

42 U.S.C. § 1320d .................................................................................... 21

42 U.S.C. §§ 1320d-6 .............................................................................. 20

U.S. Const. art. III ..................................................................................... 5

U.S. Const. amend. IV ............................................................................. 18

**State Statutes**

N.Y. Exec. L. § 837-x .............................................................................. 25

N.Y. Gen. Bus. L. § 394-I(10) ................................................................. 25

**Rules**

Fed. R. Crim. P. 17(c)(3) .......................................................................... 21

Fed. R. Crim. P. 6(e) ................................................................................................ 16

N.Y. CPLR § 4504 ................................................................................ 20, 24, 25, 26

N.Y. CPLR § 4507 ..................................................................................................... 20

**Regulations**

45 C.F.R. § 164.512 (f)(1)(ii)(C)(1)-(3) ...................................................................... 3

**Other Authorities**

Ankit Rastogi et al., *Health and wellbeing: A report of the 2022 U.S. Transgender Survey* (2025), https://ustranssurvey.org/download-reports/ [https://perma.cc/DT9U-LDTA] ......................... 15

Att'y Gen. of Texas, Press Release, *AG Paxton Declares So-Called Sex-Change Procedures on Children and Prescription of Puberty Blockers to be "Child Abuse" Under Texas L*aw (Feb. 21, 2022), https://tinyurl.com/wsep5uy3 [https://perma.cc/Z67Z-A5RR] ............................... 14

Kristie L. Seelman et al., *Transgender Noninclusive Healthcare and Delaying Care Because of Fear: Connections to General Health and Mental Health Among Transgender Adults*, 2 Transgender Health 17-28 (2017), https://tinyurl.com/3bmfanjx [https://doi.org/10.1089/trgh.2016.0024] .................................................................. 15

Off. of the N.Y. State Att'y Gen., *Shield Law Protections* (Jan. 27, 2025), https://tinyurl.com/yk6epdjj [https://perma.cc/7CUU-F5Z4] .................................................. 20

Off. of the New York Att'y Gen., Press Release, *Attorney General James Defends New York's Shield Law Against Texas Attack* (Sept. 8, 2025), https://tinyurl.com/mvftmkt [https://perma.cc/CD6S-QULE] ....................................................... 14

Ronita Nath et al., *The Trevor Project, 2025 U.S. National Survey on the Mental Health of LGBTQ+ Young People* (2026), https://tinyurl.com/mtm5xn47 [https://doi.org/10.70226/EKGT3197] .................................................................. 14

**INTRODUCTION**

Plaintiffs and proposed class members are minors, their parents, and young adults caught in the crosshairs of the Trump Administration's across-the-board attack on healthcare for transgender adolescents. Effectuating the Administration's mission to "end" this necessary care, the U.S. Department of Justice ("DOJ") has weaponized civil and now criminal investigative tools, issuing subpoenas to healthcare institutions in states where gender-affirming medical care for minors is legal and protected, seeking a broad swath of identifying and sensitive health information about minor patients. Courts around the country have quashed administrative subpoenas seeking this information, and now, NYU Langone hospitals – and likely other New York hospitals – have received a criminal grand jury subpoena.

Plaintiffs ask this Court for a temporary restraining order ("TRO") to safeguard their constitutional interests by preserving the *status quo* in the district where they reside, where the information sought was created, and where the relevant records are held. Plaintiffs are likely to succeed on their claims that DOJ's demands violate their informational privacy rights under the Fifth Amendment; constitute an unjustifiable intrusion into their reasonable expectation of privacy under the Fourth Amendment; and violate state law protecting physician-patient confidentiality. Given that compliance with the subpoena is demanded by June 10, 2026, immediate relief is necessary. Without a TRO, Plaintiffs will suffer imminent and irreparable harm from the irreversible disclosure of their identifying and sensitive health information to DOJ. Plaintiffs are strongly favored in the balance of the equities, as disclosure of their identifying and sensitive health information could subject them to stigma, harassment, discrimination, and potentially violence, while DOJ has repeatedly attested it does not need this information to pursue its allegations of healthcare offenses relating to gender-affirming medical care for minors.

**FACTUAL BACKGROUND**

The Administration's campaign to end medical care for transgender minors in jurisdictions where the care is legal, like New York, took off during its second week in office, when the President signed an Executive Order announcing that the United States "will not fund, sponsor, promote, assist, or support" gender-affirming medical care for minors, and proclaimed that the Administration "will rigorously enforce all laws that prohibit or limit" such care, declaring it to be a "stain on our Nation's history," and that "it must end." *See* Compl. ¶ 42. A series of sweeping implementation efforts followed, including by DOJ. Compl. ¶ 43.

DOJ issued civil administrative subpoenas to more than twenty healthcare institutions whose care for their minor patients includes gender-affirming medical care. Compl. ¶ 71. Among other things, the subpoenas sought identifying and sensitive health information about patients who received the targeted medical care. Compl. ¶ 77.

Several actions were filed to quash or limit the subpoenas. Compl. ¶ 73. Each court that considered these motions quashed or limited DOJ's ability to obtain patient-identifying or sensitive health information. Compl. ¶ 74. The courts concluded that the true purpose of the subpoenas was to end medical treatment for gender dysphoria and harass providers of the care and not any legitimate investigative purpose. *See*, *e.g.*, *In re Subpoena Duces Tecum No. 25-1431-016*, 2025 WL 3562151, at *11 (W.D. Wash. Sept. 3, 2025) (subpoena intended "to pressure hospitals into ending gender-related care for minors"); *In re Admin. Subpoena No. 25-1431-019*, 800 F.Supp.3d 229, 239 (D. Mass. 2025) (subpoena's true purpose was interference with state's protection for this care, harassment and intimidation of providers, and dissuading patients from seeking it); *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, 2026 WL 33398, at *7 (D. Colo. Jan. 5, 2026) (subpoena "use[d] the FDCA as a smokescreen" for true objective of pressuring hospitals into ending care through "vague, suspicionless 'investigations.'"); *In re Children's Nat'l Hosp.*, No.

1:25-CV-03780, 2026 WL 160792, at *9 (D. Md. Jan. 21, 2026) (subpoena has "no purpose other than to intimidate and harass" hospital and patients such that "the Subpoena is the classic impermissible fishing expedition."); *see also* Compl. ¶¶ 75-80.

On May 7, 2026, NYU Langone Hospitals received a grand jury subpoena from the U.S. Attorney's Office in the Northern District of Texas directing the hospital to produce seventeen broad categories of records, from January 1, 2020, through May 5, 2026, by June 10, 2026. *See* Dkt. 1-1. The NYU Subpoena seeks identifying and sensitive health information substantially analogous to the information sought by the administrative subpoenas. *Compare* Dkt. 1-1 *with* Loewy Decl., Ex. G. Specifically, the following demands from the NYU Subpoena directly seek:

- Subpoena specification 12 seeks "[d]ocuments sufficient to identify each patient who underwent Sex-Rejecting Procedures."

- Subpoena specification 13 seeks, for each patient identified, "documents relating to the clinical indications, diagnoses, or assessments that formed the basis for providing Sex-Rejecting Procedures, including the prescribing of puberty blockers or hormones, and all documents relating to the Sex-Rejecting Procedures care provided to each patient … from initial consultation to the most recent treatment provided."

- Subpoena specification 14 seeks, for each patient identified, "[a]ll documents relating to informed consent, patient intake, and parent or guardian authorization … including any disclosures about off-label use … and potential risks of puberty blockers and/or hormones."

(herein collectively referred to as "identifying and sensitive health information"). *See also* Compl. ¶ 104 (defining "Sex-Rejecting Procedures"). The Subpoena further notes that DOJ has purportedly considered the predicate requirements of 45 C.F.R. § 164.512 (f)(1)(ii)(C)(1)-(3) and determined that "[d]e-identified information could not reasonably be used in its stead." Though the subpoena was purportedly issued under the authority of a grand jury in the Northern District of Texas, it requests that responsive materials be sent to a Special Agent in the Kansas City Field Office of the FDA Office of Criminal Investigations.

On May 11, 2026, NYU posted a notice on its website that it and other hospitals had received subpoenas (collectively, as to all hospitals, "the Subpoenas"). *See* Dkt. 1-2; *see also* Compl. ¶ 114. Through that notice, families across New York City learned that their child's identifying and sensitive health information might be imminently produced to DOJ in a court across the country.

## LEGAL STANDARD

A TRO should issue if a Plaintiff establishes that they are "likely to succeed on the merits, … likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *ACLU v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015). While a Plaintiff seeking expedited relief has the burden of demonstrating likelihood of success on the merits, they need not prove their case in full at this stage, only such portions that enable them to obtain the sought injunctive relief. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

In ruling on this motion, the Court "'may conditionally certify the class or otherwise award a broad … injunction, without a formal class ruling, under its general equity powers.'"[1] *Strouchler v. Shah*, 891 F.Supp.2d 504, 517 (S.D.N.Y. 2012) (citation omitted); *see also Abdi v. Duke*, 280 F.Supp.3d 373, 400 (W.D.N.Y. 2017) (ordering expedited pre-certification class-wide relief; discussing cases), *vacated in part on other grounds sub. nom. Abdi v. McAleenan*, 405 F.Supp.3d 467, 472 (W.D.N.Y. 2019). In analyzing the TRO record, the Court may consider evidence of harm to putative class members in support of the petitioners' request for class-wide relief. *See LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48, 58 (2d Cir. 2004).

---

[1] Class-wide relief is appropriate for the reasons discussed in Plaintiffs' Motion for Class Certification and supporting papers, filed concurrently and incorporated herein by reference.

**ARGUMENT**

**I. Plaintiffs Are Likely to Succeed on the Merits.**

    **A. The Court Has Jurisdiction to Entertain Plaintiffs' Claims and Issue Relief.**

        **1. Plaintiffs Have Standing**.

Plaintiffs satisfy all the elements (injury, causation, and redressability) for Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs face an imminent risk that their identifying and sensitive health information will be disclosed on or before June 10, 2026 because of the Subpoenas sent by DOJ. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (a "certainly impending" injury satisfies imminence requirement for injury-in-fact). In addition to violating their constitutional rights and rights under New York law, that disclosure could lead to worsened anxiety for plaintiffs and their families and exposure to other harm. Relief from this Court would remedy that injury by clarifying the scope of Plaintiffs' rights, limiting the federal government's ongoing campaign to violate those rights, and preventing the disclosure of their private information.

        **2. This Court May Issue the Requested Relief**.

This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1346 and 28 U.S.C. § 1361,[2] and authority to issue equitable relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. In addition to most Plaintiffs and the NYU Defendants being based in the district, a substantial part of the events or omissions giving rise to this matter occurred and continues to occur here. That an unknown number of subpoenas were issued from the Northern

---

[2] The Court also has supplemental jurisdiction over Plaintiffs' state law claims against NYU pursuant to 28 U.S.C. § 1367(a). *See Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) ("[F]ederal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to 'form part of the same case or controversy under Article III of the United States Constitution.' … This is so even if the state law claim is asserted against a party different from the one named in the federal claim.") (quotation omitted).

District of Texas does not divest this Court of authority to protect the constitutional rights of patients whose records are held within its jurisdiction.

"Under the Declaratory Judgment Act, a district court 'may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.' 28 U.S.C. § 2201(a)." *The New York Times Co. v. Gonzales*, 459 F.3d 160, 165 (2d Cir. 2006). A court may also grant "further relief" as is necessary or proper based on such declaration, 28 U.S.C. § 2202, including injunctive relief. *Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 549 (D.C. Cir. 1988) (§ 2202 "indicates that the prevailing party in a declaratory judgment may seek further relief in the form of ... an injunction").

The Second Circuit has confirmed the propriety of district courts entertaining claims by third parties harmed by an actual or potential grand jury subpoena from another jurisdiction. In *Gonzales*, 459 F.3d 160, the New York Times sued the Attorney General and the United States, seeking a declaration that the First Amendment barred enforcement of grand jury subpoenas seeking reporters' telephone records from third-party phone companies. Although the Second Circuit ultimately rejected the privilege claim on the merits, it held that the district court properly exercised jurisdiction to consider that case even though it implicated a grand jury subpoena from another district. *See id*. at 165-67, 174.

As in *Gonzales*, Plaintiffs are non-recipients of the Subpoenas and seek relief here in the district where they reside, the information at issue was created, and the relevant records are held. It is appropriate for the Court to consider Plaintiffs' challenges on the merits notwithstanding the pendency of the Texas grand jury proceeding.

While the Second Circuit has emphasized that district courts retain "broad discretion" to determine whether to exercise jurisdiction to issue declaratory relief, *Admiral Ins. Co. v. Niagara*

*Transformer Corp.*, 57 F.4th 85, 100 (2d Cir. 2023), all the relevant considerations weigh in favor of the exercise of jurisdiction here. *See id.* at 99-100 (clarifying factors in *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003)). A declaratory judgment would "clarify" critical questions about non-recipient Plaintiffs' constitutional rights, which are implicated by DOJ's far-reaching attempts to access the subject identifying and sensitive health information. *Admiral Ins.*, 57 F.4th at 99. Further, given the many attempts by DOJ to access this information, the Court's exercise of jurisdiction here would serve, not hinder, "judicial economy." *Id.* at 100.

Like in *Gonzales*, no "better or more effective remedy" is available to Plaintiffs through a motion to quash. *Admiral Ins.*, 57 F.4th at 100; *Gonzales*, 459 F.3d at 167 (motion to quash would not offer the same relief and might not be available if the subpoena had not been issued or had already been complied with). Though Plaintiffs are aware of the NYU grand jury subpoena, other New York City hospitals where class members received care may have received similar subpoenas. *See* Compl. ¶ 114. And given that Plaintiffs are non-recipients of the Subpoenas, they are also not aware if the Subpoenas have been or will be complied with. It is solely through this Court's exercise of discretion that Plaintiffs can ensure that their constitutional and legal rights are identified and vindicated, not subject to decisions of third parties in a distant jurisdiction. Finally, the exercise of jurisdiction here would not result in procedural fencing or *res judicata* as Plaintiffs are not parties to any actions in other courts and are not recipients of any grand jury subpoenas.

**3. Grand Jury Investigative Power Is Limited by the Constitution**.

While the Supreme Court has long recognized that grand jury subpoenas are presumptively reasonable and that grand juries are vested with broad investigative authority, *see United States v. R. Enters., Inc.*, 498 U.S. 292, 297-301 (1991), that authority is not limitless. Indeed, "[j]udicial supervision is properly exercised … to prevent the wrong before it occurs," *United States v. Calandra*, 414 U.S. 338, 346 (1974), when a request pursuant to a grand jury's authority would

violate a constitutional right. *In re Subpoenas to Loc. 478, Int'l Union of Operating Eng'rs & Ben. Funds*, 708 F.2d 65, 70 n.5 (2d Cir. 1983). Constitutional privacy limits apply regardless of the procedural vehicle used to compel disclosure. *See*, *e.g.*, *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 929-31 (7th Cir. 2004) (invalidating trial subpoena for patient records on patient-privacy grounds).

These Subpoenas seeking patient identities and medical records do not exist in a vacuum, and there is substantial evidence of an improper purpose for these requests. DOJ has repeatedly sought nearly identical patient information through the administrative subpoena process, only to be rejected by multiple courts because the information was disconnected from DOJ's asserted theories. *QueerDoc, PLLC v. U.S. DOJ*, 807 F.Supp.3d 1295, 1303 (W.D. Wash. 2025) (finding that DOJ "issued the subpoena[s] first and searched for a justification second"). Instead of articulating a legitimate need for this highly sensitive information, DOJ now repackages these same patient-data demands as grand jury subpoenas from a forum totally disconnected from New York, where Plaintiffs received this care and where the targets of the subpoena are located. Both the administrative and grand jury subpoenas have the same constitutional problem already identified by many courts: no adequate connection between this highly sensitive patient and health information and DOJ's asserted FDCA or fraud theories. *See* Factual Background *supra* and Section I.B.3.iii *infra*. This defect is not overcome by simply labeling the same request as a grand jury subpoena. DOJ cannot "immunize any coercive investigation from the improper purpose doctrine simply by appending an untenable legal theory to it." *In re Admin. Subpoena 25 1431 032 to R.I. Hosp.*, No. 1:26-mc-0007, 2026 WL 1392565, at *8 (D.R.I. May 14, 2026).

**B. Plaintiffs Are Likely to Succeed on Their Fifth Amendment Claim**.

"It is well established that the individual right to privacy is protected by the Due Process Clause" of the Fifth Amendment. *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005).[3] This includes "the right to confidentiality (i.e., the right to hold certain information private)." *Id.*; *see also Whalen v. Roe*, 429 U.S. 589, 599–600 (1977). Because Plaintiffs' privacy interests overwhelmingly outweigh the government's interest in breaching those rights, Plaintiffs' claims are likely to succeed.

**1. Legal Standard for Evaluating Informational Privacy Claims**

"A constitutional violation only occurs when the individual's interest in privacy outweighs the government's interest in breaching it." *Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018). Where the government is acting in an executive capacity, courts consider "whether the action was so 'arbitrary' as to 'shock the conscience.'" *Id.* at 66 (citing *O'Connor*, 426 F.3d at 203). "A court applying a shocks-the-conscience test must always examine the executive branch's interest in breaching that privacy" and "[t]he stronger the individual interest, the more compelling the government actor's reasons must be." *Id.* at 68.

Courts "apply a balancing test to the government's *collection* or publication" of *all* private personal information that is constitutionally protected. *Id.* at 68 (emphasis added).[4] The focus of the inquiry is "on the *government's* interests in the information contained in the records and the manner in which those interests might be achieved," and "[t]he strength of the individual interest

---

[3] The standard for a substantive due process claim under the Fifth Amendment is the same as under the Fourteenth Amendment. *Doe v. U.S. Merch. Marine Acad.*, 307 F.Supp.3d 121, 156 (E.D.N.Y. 2018).

[4] "Although confidentiality is often addressed in the context of unauthorized *disclosure* of medical information, it has been construed to protect against other types of intrusions as well." *Rodgers v. Rensselaer Cnty. Sheriff's Dep't*, No. 1:14-CV-01162, 2015 WL 4404788, at *6 (N.D.N.Y. July 17, 2015); *see, e.g.*, *O'Connor*, 426 F.3d at 201 (improper demand that employee release his medical records); *Schwenk v. Kavanaugh*, 4 F.Supp.2d 110, 115 (N.D.N.Y. 1998) (prosecutor's improper possession of medical files).

in privacy adjusts how closely [courts must] scrutinize the government's offered justifications."

*Id*.

**2. The Subpoenas Implicate Sensitive Personal Information Protected by the Fifth Amendment**.

The right to informational privacy "categorically protects privacy in certain types of personal information." *Hancock*, 882 F.3d at 66-67.

*First*, the informational privacy right protects "medical information." *Hancock*, 882 F.3d at 67; *see also O'Connor*, 426 F.3d at 201 ("[m]edical information in general … is information of the most intimate kind" such that plaintiff "had a protected privacy right in [his] medical records"); *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (extending confidentiality right to personal medical information because "there are few matters that are quite so personal … and few matters the dissemination of which one would prefer to maintain greater control over"). The "interest in maintaining such information confidential is not just presumptively reasonable, it is fundamental." *Hancock*, 882 F.3d at 67; *see also*, *e.g.*, *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8 ("no question" of "constitutionally reasonable expectation of privacy in the highly sensitive medical records").

*Second*, the right to informational privacy protects information relating to one's transgender status.[5] *See Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999) (describing as "beyond debate" that "for persons who wish to preserve privacy in the matter," transgender status is "excrutiatingly [sic] private"). "Disclosing that one is transgender involves a deep personal choice which the government cannot compel, unless disclosure furthers a valid public interest." *Arroyo González v. Rosselló Nevares*, 305 F.Supp.3d 327, 333 (D.P.R. 2018). Indeed, "disclosure

---

[5] The information sought here pertains to patients who received gender-affirming medical care as treatment for gender dysphoria, which is only sought by transgender people. *United States v. Skrmetti*, 605 U.S. 495, 497 (2025).

… exposes transgender individuals to a substantial risk of stigma, discrimination, intimidation, violence, and danger." *Id.*; *see also Powell*, 175 F.3d at 111–12. As such, this privacy interest "is particularly compelling." *Id.* at 111.

As the Second Circuit has observed, "[t]he strength of a privacy interest *is* relevant to the due process inquiry, but only in service of determining how strong the government's interest must be in order to override it." *Hancock*, 882 F.3d at 67. Here, given how sensitive the information is, the government's interest must be particularly strong.

### 3. The Factors for Evaluating Informational Privacy Claims Weigh Strongly in Favor of Protecting Plaintiffs.

In balancing the government's interest in obtaining or disclosing information and a person's interest in maintaining its confidentiality, courts consider various factors, including the type of record requested and the nature of the information it contains; the potential for harm in any subsequent nonconsensual disclosure; the degree of need for access; the adequacy of safeguards to prevent unauthorized disclosure; and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access. *See Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 604 F.Supp.2d 665, 673 (S.D.N.Y. 2009) (citing *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir. 1980)); *see also Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) (addressing similar factors).

Each factor weighs strongly in favor of protecting the identities of transgender adolescent patients and their sensitive health information from DOJ.

### i. *Type of records and nature of the information*

Indisputably, the patient information sought by the Subpoenas is of the most intimate and private nature. The Subpoenas seek identifying information that would reveal Plaintiffs' transgender status and demand sensitive health information such as assessments, diagnoses, and

informed consent records underlying medical decisions to prescribe medical care to Plaintiffs. *In re Subpoena No. 25-1431-014*, 810 F.Supp.3d 555, 595, 597 (E.D. Pa. 2025) ("These records … often involve intimate disclosures about discomfort with specific body parts, sexual history, past trauma, interfamily dynamics, use of self-harm or other negative coping mechanisms such as disordered eating, and experiences of harassment and bullying," as well as "the diagnoses, clinical reasoning, and informed-consent discussions underlying treatment decisions."); *see also* Coe Decl. ¶17; Koe Decl. ¶12; Noe Decl. ¶14; Roe Decl. ¶14; Doe Decl. ¶15. DOJ then "seeks to pair these disclosures with the names, dates of birth, addresses, and social security numbers of the children involved." *In re Subpoena No. 25-1431-014*, 810 F.Supp.3d at 597. "Linking such intimate material to identified children—across assessments, diagnoses, psychosocial histories, and consent discussions—invokes the strongest privacy protections." *Id.*

### ii. *Potential for harm in nonconsensual disclosure*

The potential for harm from the nonconsensual disclosure of this identifying and sensitive health information is substantial.

*First*, disclosure to DOJ of the identities, and therefore transgender status, of Plaintiffs exposes them to substantial risks of stigma, discrimination, harassment, and potentially even violence. *See* Section I.B.2 *supra*. So does disclosure of their mental health. *See Mazzocchi v. Windsor Owners Corp.*, 204 F.Supp.3d 583, 604 (S.D.N.Y. 2016) (noting "societal stigma associated with receiving mental healthcare").

DOJ and the Administration have expressed unrelenting hostility towards transgender people and gender-affirming medical care, and disclosure of identifying information sought by the Subpoenas to DOJ therefore raises serious questions about how it will be used. As other courts have found, DOJ's and the Administration's actions with respect to transgender people are "built on a foundation" of animus. *Orr v. Trump*, 778 F.Supp.3d 394, 418 (D. Mass. 2025) (subsequent

history omitted). Indeed, they "deny the existence of transgender persons entirely." *San Francisco A.I.D.S. Found. v. Trump*, 786 F.Supp.3d 1184, 1216 (N.D. Cal. 2025); *see also Endocrine Soc'y v. Fed. Trade Comm'n*, No. 26-cv-00512, 2026 WL 1257289, at *2 (D.D.C. May 7, 2026); *PFLAG, Inc. v. Trump*, 769 F.Supp.3d 405, 444 (D. Md. 2025).

Plaintiffs "do not trust this government with [their] medical information," "especially since the government has expressed such vitriol and disdain for transgender people." Doe Decl. ¶19; Roe Decl. ¶18. "Given this administration's targeting and intimidation of" providers of gender-affirming medical care, Plaintiffs "fear" that their names "may go on a list … and that [they] will be investigated simply for receiving medical care." Roe Decl. ¶20. These fears have caused "difficulty sleeping" for one Plaintiff, which affects "[her] ability to do [her] job." Coe Decl. ¶19.

Indeed, DOJ has said it will use this information to contact patients and families. *See In re Subpoena to R.I. Hosp.*, 2026 WL 1392565, at *9 n.12 (noting DOJ's concession "that its investigative efforts would include attempting to locate and question both children and their caregivers in its search for criminal conduct."). And "direct contact between federal investigators and patients" could be "distressing, potentially out[] patients and increas[e] their risk of harassment, discrimination, and violence." *In re Subpoena No. 25-1431-014*, 810 F.Supp.3d at 598; *see also* Roe Decl. ¶20; Coe Decl. ¶19.

Without safeguards on how the information sought by the subpoenas may be used or disseminated (*see infra*), there is also real risk that DOJ could share it with other entities that seek to harm Plaintiffs. For example, DOJ has worked with officials in Texas—where gender-affirming medical care for minors is banned—to reach a settlement with a Texas hospital to establish "detransition clinics." *See* Loewy Decl., Exs. I and J. The Texas Attorney General has deemed this

care to be child abuse,[6] and has sought to go after New York residents for care provided to Texans in New York.[7] Thus, DOJ could use the Subpoenas as an end run around New York law,[8] which expressly protects gender-affirming medical care.

Without additional safeguards, there is also risk that information disclosed to DOJ could become public. *See In re Subpoena No. 25-1431-014*, 810 F.Supp.3d at 598 (noting "the 'embarrassment, humiliation, and trauma' [] patients could face if their records and exceptionally sensitive information 'were somehow made public' through leaks or other disclosure"); *see also* Doe Decl. ¶20; Noe Decl. ¶16 (noting worry of "vigilantism or harassment" which "heightens … fear of being targeted" and has "limited [their] travel.").

*Second*, the disclosure of information may harm Plaintiffs by eroding the provider-patient relationship and dissuading people from seeking needed healthcare. Awareness of the Subpoenas and the information they seek has already "heightened fears of surveillance and exposure among patients and families." *In re Subpoena No. 25-1431-014*, 810 F.Supp.3d at 598; *see also* Coe Decl. ¶¶12, 20; Koe Decl. ¶15; Noe Decl. ¶¶15, 17.[9] These fears will likely "deter some patients from seeking care and engaging in daily life, with serious health and psychological consequences." *In*

---

[6] *See* Att'y Gen. of Texas, Press Release, *AG Paxton Declares So-Called Sex-Change Procedures on Children and Prescription of Puberty Blockers to be "Child Abuse" Under Texas Law* (Feb. 21, 2022), https://tinyurl.com/wsep5uy3 [https://perma.cc/Z67Z-A5RR].

[7] *See, e.g.*, Decision Order and Judgment, *State of Texas v. Bruck*, No. EF2025-2536, Slip Op. (N.Y. Sup. Ct., Ulster Cnty. Oct. 31, 2025) (Doc. No. 75), https://tinyurl.com/68a9yyya [https://perma.cc/K7NL-94VX].

[8] *See, e.g.*, Off. of the New York Att'y Gen., Press Release, *Attorney General James Defends New York's Shield Law Against Texas Attack* (Sept. 8, 2025), https://tinyurl.com/mvftmkt [https://perma.cc/CD6S-QULE].

[9] *See* Ronita Nath et al., *The Trevor Project, 2025 U.S. National Survey on the Mental Health of LGBTQ+ Young People* (2026), https://tinyurl.com/mtm5xn47 [https://doi.org/10.70226/EKGT3197] (documenting that over eight in ten transgender young people experience stress, anxiety, and negative mental health impacts due to awareness of anti-LGBTQ policies and actions).

*re Subpoena No. 25-1431-014*, 810 F.Supp.3d at 598.[10] As a result, some "will likely develop increasingly acute conditions on account of their delaying necessary care or refraining from transparent communication with providers out of fear of discrimination." *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F.Supp.3d 1, 60–61 (D.D.C. 2020).

### iii. *Degree of need for access*

Multiple courts have concluded that DOJ has no need for this identifying and sensitive health information. As one court noted, "[i]f the Government is pursuing FDCA violations, it is utterly unclear … why the Government demands production of adolescent patient records, including patient names, dates of birth, social security numbers, parent information, clinical indications, diagnoses, and parent authorization forms." *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8; *see also In re Subpoena No. 25-1431-014*, 810 F.Supp.3d at 604 (holding DOJ's investigation relating to "commercial practices, billing practices, and interactions with manufacturers or distributors" does not "require[] access to children's and their families' identities, psychosocial histories, sexual-development disclosures, family dynamics, trauma histories, or other intimate clinical details").

Moreover, DOJ has admitted that it has no need for this identifying information. With regard to the same information sought through administrative subpoenas, DOJ has withdrawn the requests that seek identifying information and agreed that a hospital could "redact any patient identifying information in records that are produced in response" to the other requests in the

---

[10] *Cf.* Ankit Rastogi et al., *Health and wellbeing: A report of the 2022 U.S. Transgender Survey* (2025), at 37, https://ustranssurvey.org/download-reports/ [https://perma.cc/DT9U-LDTA] (24% of transgender people report avoiding care due to fear of mistreatment or discrimination); Kristie L. Seelman et al., *Transgender Noninclusive Healthcare and Delaying Care Because of Fear: Connections to General Health and Mental Health Among Transgender Adults*, 2 Transgender Health 17-28 (2017), https://tinyurl.com/3bmfanjx [https://doi.org/10.1089/trgh.2016.0024] (documenting that delaying healthcare because of fear of discrimination is associated with worse general and mental health outcomes among transgender people).

subpoena. Settlement Agreement, *In Re 2025 Children's Hosp. of Los Angeles Subpoena*, No. 2:25-CV-11183 (C.D. Cal. Jan. 22, 2026) (ECF 25-1). And it has made the same representation to numerous other courts. *See*, *e.g.*, Mot. to File Suppl. Br., *In Re: 2025 UPMC Subpoena*, No. 2:25-MC-1069, 2026WL570419 (W.D. Pa. Dec. 16, 2025) (ECF 47); Loewy Decl., Ex. H (D.R.I. Hr'g Tr.) at 100:13-19, 102:18-22, 124:23-125:2.

### iv. *Adequacy of safeguards to prevent unauthorized disclosure*

No adequate protections exist "against release of information to government employees who have no need for the information." *Tucson Woman's Clinic*, 379 F.3d at 552. "Even if a law adequately protects against *public* disclosure of a patient's private information, it may still violate informational privacy rights if an unbounded, large number of government employees have access to the information." *Id.* at 551-52.

The Subpoenas offer no safeguards or guarantees concerning the use of Plaintiffs' identities or sensitive health information, no limit on which federal employees will have access to these records, and no assurances that they will not be used to harass or intimidate Plaintiffs. Regardless, "[t]o the extent the DOJ [] urge[s] trust, … its assurances are cold comfort," given that its "actions in this area are unprecedented." *In re UPMC Subpoena*, 2026WL570419, at *1-2.

Although Federal Rule of Criminal Procedure 6(e) establishes some constraints on public disclosure of grand jury information, its exceptions permit disclosure to "an attorney for the government for use in performing that attorney's duty," disclosure to government personnel "that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law," and disclosure to another federal grand jury. Fed. R. Crim. P. 6(e)(3)(A)(i), (ii); 6(e)(3)(C). Those exceptions do not meaningfully limit inter- and intra-governmental dissemination or prevent use of Plaintiffs' information for purposes far removed from any lawful need for their identifying and sensitive health information.

DOJ explicitly intends to partner with other entities in its efforts to "end" gender-affirming medical care. *See* Dkt. 1-3 at 5. That partnership will include "identify[ing] leads, shar[ing] intelligence, and build[ing] cases against hospitals and practitioners." *Id*. And notwithstanding that gender-affirming medical care is legal in New York, families reasonably fear that DOJ's intent to partner with these other entities may mean that information sought could be used to target the families themselves. *See* Section I.B.3.ii *supra* (noting Texas Attorney General proclaiming gender-affirming medical care to child abuse); The White House, *National Child Abuse Prevention Month, 2025* (Apr. 3, 2025), https://tinyurl.com/42swzwe5; *see also* Roe Decl. ¶¶18, 20 (Plaintiff fears they will "go on a list" and "will be investigated"); Doe Decl. ¶19.

**v.** ***Whether a statutory mandate, articulated public policy, or other recognizable public interest militates toward access***

No lawful public policy or recognizable public interest militates towards disclosure of this information. To the contrary, the Subpoena is part of the Administration's open efforts to target transgender people for discrimination and to "end" gender-affirming medical care.

States, not the federal government, are the primary regulators of medical practice. *See Oregon v. Gonzales*, 546 U.S. 243, 275 (2004) (rejecting that "a single executive officer [has] the power to effect a radical shift of authority from the States to the Federal Government to define general standards of medical practice in every locality"); *Oregon v. Kennedy*, No. 6:25-CV-02409, 2026 WL 1048354, at *18 (D. Or. Apr. 18, 2026) (rejecting federal "authority to unilaterally establish standards of care" for gender-affirming care that "supersede professionally recognized" standards in plaintiff states); *In re UPMC Subpoena*, 2026 WL 570419, at *2 ("The DOJ would usurp the States' regulation of the medical profession."). And the Subpoenas have been issued for the improper purpose of "fulfill[ing] the Executive's well-publicized policy objective to terminate

and block gender affirming healthcare." *In re Children's Nat'l Hosp.*, 2026 WL 160792 at \*8; *see also* Factual Background *supra*; Compl. ¶¶ 75-80.

**C. Plaintiffs are Likely to Succeed on their Fourth Amendment Claim**.

**1. The Fourth Amendment's guarantee of reasonableness applies to information sought here.**

The Fourth Amendment protects the right of people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Amendment's "basic purpose … is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967). "[T]he application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action," *Smith v. Maryland*, 442 U.S. 735, 740 (1979)—that is, whether "government officers violate a person's reasonable expectation of privacy." *United States v. Jones*, 565 U.S. 400, 406 (2012) (quotation omitted). This inquiry is satisfied when an individual "seeks to preserve something as private," and their expectation of privacy is "one that society is prepared to recognize as 'reasonable.'" *Smith*, 442 U.S. at 740 (quoting *Katz v. United States*, 389 U.S. 347, 351, 361 (1967)).

The Fourth Amendment's protections apply to the grand jury, which is "without power to invade a legitimate privacy interest protected by the Fourth Amendment." *Calandra*, 414 U.S. at 346; *cf. Trump v. Vance*, 480 F.Supp.3d 460, 483 (S.D.N.Y.) ("The grand jury's investigative powers … may not be used to violate a valid privilege."), *aff'd*, 977 F.3d 198 (2d Cir. 2020). Demands for information through "a *subpoena duces tecum* may constitute a search forbidden by the Fourth Amendment" if its terms are unreasonable. *In re Horowitz*, 482 F.2d 72, 75 (2d Cir. 1973) (quoting *Hale v. Henkel,* 201 U.S. 43, 76 (1906)).

Whether a particular intrusion is reasonable "is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). This requires "balancing the need to search against the invasion which the search entails," *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985) (quoting *Camara*, 387 U.S. at 536-537), and "a contextualized reasonableness analysis … seeks to balance the intrusion on privacy caused by law enforcement against the justification asserted for it by the [government]." *Caldarola v. Cnty. of Westchester*, 343 F.3d 570, 576 (2d Cir. 2003) (quotation omitted). Whether such an intrusion is reasonable depends on the context, including the "nature, purposes and scope of the inquiry." *Okla. Press Pub. Co. v. Walling,* 327 U.S. 186, 209 (1946); *see also R. Enters.*, 498 U.S. at 299. A subpoena that is "irrelevant; abusive or harassing; overly vague; or excessively broad" is unreasonable. *In re Grand Jury, John Doe No. G.J.2005-2*, 478 F.3d 581, 585 (4th Cir. 2007) (citations omitted).

Under these principles, DOJ's demanded production of Plaintiffs' identifying and sensitive health information is an unjustifiable intrusion into their reasonable expectation of privacy.

**2. Plaintiffs have an objectively reasonable expectation of privacy in their identifying and sensitive health information**.

On the Plaintiffs' interests' side of the Fourth Amendment's balancing test lies the highly intimate, comprehensive, and unredacted medical and mental health information sought by the Subpoenas. "[M]edical treatment records contain intimate and private details that people do not wish to have disclosed, expect will remain private, and, as a result, believe are entitled to some measure of protection from unfettered access by government officials." *Doe v. Broderick*, 225 F.3d 440, 451 (4th Cir. 2000). For this reason, the Supreme Court held in *Ferguson v. City of Charleston* that "[t]he reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without [their] consent." 532 U.S. 67, 78 (2001). In *Jones*, Justice Sotomayor's concurrence

19

alluded to the "indisputably private nature" of visits disclosed in GPS location data to "the psychiatrist, the plastic surgeon, the abortion clinic, [and] the AIDS treatment center," 565 U.S. at 415, and in *Carpenter v. United States*, the Court acknowledged the inherent invasion of privacy of government officials knowing the mere fact that individuals may have entered "doctor's offices … and other potentially revealing locales," 585 U.S. 296, 311 (2018).

Overlapping state and federal protections against disclosure of this category of information confirm that society recognizes the expectation of privacy in this information as objectively reasonable. *First*, and most explicitly, New York has enacted a series of statutes, known collectively as the "Shield Law," that specifically prohibit law enforcement and other state officials from facilitating access to "personally identifying information related to individuals' medical procedures" vis-a-vis investigations into reproductive or gender-affirming medical care lawfully provided in New York. Off. of the N.Y. State Att'y Gen., *Shield Law Protections* (Jan. 27, 2025), https://tinyurl.com/yk6epdjj [https://perma.cc/7CUU-F5Z4]. Indeed, the only reason Plaintiffs became aware of the Subpoena targeting their private medical records was NYU Defendants' belief that the Shield Law required such notice.

*Second*, New York law establishes evidentiary privileges for all "confidential relations and communications between a psychologist … and his client," N.Y. CPLR § 4507, as well as all "information … acquired" by any "person authorized to practice medicine" "in attending a patient in a professional capacity, … necessary to enable him to act in that capacity," N.Y. CPLR § 4504. As described below, New York recognizes a right of action against medical providers for violating these privileges.

*Third*, the federal HIPAA statute imposes criminal penalties for knowingly obtaining or disclosing without consent any person's "individually identifiable health information," 42 U.S.C.

§§ 1320d-6, including information "created or received by a health care provider" that "relates to the past, present, or future physical or mental health or condition of an individual," or "the provision of health care," and which "identifies the individual; or … with respect to which there is a reasonable basis to believe that the information can be used to identify the individual." 42 U.S.C. § 1320d.

*Finally*, if the government's asserted purpose for the Administration's systemic attacks on medical care for transgender youth—to "protect[] vulnerable children," Loewy Decl., Ex. J, were in fact true, Plaintiffs would be understood as the "victims" of the alleged criminal actions being investigated, and DOJ would have a duty under the Crime Victims' Rights Act and Federal Rules of Criminal Procedure to demonstrate "respect for [their] dignity and privacy," 18 U.S.C. § 3771(a)(8), and to give notice (if any charging instruments were filed) of any subpoena "requiring the production of personal or confidential information" about them. Fed. R. Crim. P. 17(c)(3). All of these legal safeguards point to the objectively reasonable nature of Plaintiffs' privacy interest.

That the information DOJ seeks is in the possession of healthcare providers who have received the Subpoenas does not undercut the legitimacy of Plaintiffs' expectations of privacy in this information. When individuals have "a legitimate privacy interest in records held by a third party," including but not limited to "the modern-day equivalents of an individual's own 'papers' or 'effects,'" they do not give up their rights against unwarranted government intrusion. *Carpenter*, 585 U.S. at 319. In *Carpenter*, the Supreme Court clarified that the third-party doctrine, which states that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," 585 U.S. at 308, is not categorical, and individuals may retain "a legitimate 'expectation of privacy' concerning the[] contents" of such information, *id.* at 314 (quoting *United States v. Miller*, 425 U.S. 435, 442 (1976)), based on the nature, comprehensiveness, and level of

intimacy at stake in the particular "category of information" sought. *See id.* at 310–315. Where, as here, records "provide[] an intimate window into a person's life," thereby revealing "the privacies of life," and have a "comprehensive reach," *id.* at 310, 320, a third party's possession of such records does not defeat a Fourth Amendment claim. On the contrary, courts have recognized that a grand jury subpoena for hospital medical records created in the course of regular treatment may violate the patient's Fourth Amendment rights. *See, e.g., State v. Russell*, 274 N.E.3d 387, 397 (Ohio Ct. App. 6th Dist. 2025) (collecting cases finding medical records "containing information about the use of alcohol, drugs of abuse, and controlled substances" and the like exposed "too much about [a party's] private life" and were "deserving of protection because of their deeply revealing nature").

3. **DOJ's bad faith investigation and utter lack of legitimate purpose demand the conclusion that the Subpoenas are oppressive and unreasonable**.

"Grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass." *R. Enters.,* 498 U.S. at 299. Even crediting DOJ's claims that the Subpoenas relate to investigations of certain healthcare offenses, it is implausible that those ends would require the sweeping identifying and sensitive health information of Plaintiffs. "[A] grand jury subpoena is problematic if it seeks material clearly unrelated to a legitimate aim or calls for an unduly burdensome production, or if facts suggest improper motive." *Vance*, 480 F.Supp.3d at 500. Here, it has already been repeatedly established that DOJ has "no purpose other than to intimidate and harass" Plaintiffs and their healthcare providers, that "[t]he Government seeks to fulfill its policy agenda through compliance born of fear," and that these Subpoenas, like the administrative subpoenas that came before them, are "the classic impermissible fishing expedition." *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *9.

The continued escalation of this Administration's bad faith investigation and harassment campaign against law-abiding medical providers negate any reasons to accede to the standard presumption of reasonableness for grand jury subpoenas. Every court to consider in an adversarial proceeding DOJ's administrative subpoenas found that they had no legitimate purpose, *see supra*, and now DOJ has transferred their project to a "distant forum that DOJ deems friendly to its political positions" to approve their abuse of judicial process. *In re Subpoena to R.I. Hosp.*, 2026 WL 1392565, at *1. And in escalating their tactics to a grand jury, they perversely resort to abusing the constitutionally guaranteed body meant to serve as "a primary security … against hasty, malicious and oppressive persecution," *Wood v. Georgia*, 370 U.S. 375, 390 (1962), for those very purposes. DOJ has proven themselves unworthy of the "trust that federal prosecutors, when wielding this awesome power against a state, a company, or certainly against vulnerable children, will play fair and be honest with its counterparts and the judiciary." *In re Subpoena to R.I. Hosp.*, 2026 WL 1392565, at *1.

These exceptional facts provide sufficient "particularized proof of an improper purpose," *In re Grand Jury Proceeding*, 971 F.3d 40, 54 (2d Cir. 2020) (quotation omitted), for this Court to find the Subpoenas unreasonable under the Fourth Amendment.

**D. Plaintiffs Are Likely To Succeed on Their State Law Claims Against NYU**.

For many of the same reasons that Plaintiffs are likely to succeed on their constitutional claims, Plaintiffs are also likely to succeed on their state law claims against NYU. The disclosure of Plaintiffs' identifying and sensitive health information would constitute a "breach of physician-patient confidentiality," *Chanko v. Am. Broad. Companies Inc.*, 49 N.E.3d 1171, 1176 (NY 2016). This is a "well established" cause of action, *Perry v. Rockmore*, 238 A.D.3d 67, 69-70 (N.Y. App. Div., 3d Dept., 2025) (collecting cases) (quotation omitted), prohibiting institutional medical

providers from violating the statutory privilege established by N.Y. CPLR 4504(a), which generally shields from disclosure "any information … acquired in attending a patient in a professional capacity" without consent. And these are claims this Court has routinely exercised supplemental jurisdiction over, including in putative class actions. *See*, *e.g.*, *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F.Supp.3d 369, 377, 385 (S.D.N.Y. 2024) (denying MTD on class claims alleging hospital disclosed private medical information); *Wallace v. Health Quest Sys., Inc.*, No. 20-cv-00545, 2021 WL 1109727, at *13 (S.D.N.Y. Mar. 23, 2021) (denying MTD on class claim where healthcare corporation failed to keep patients' information confidential).

In *Chanko*, the Court of Appeals laid out the elements of the claim: "(1) the existence of a physician-patient relationship; (2) the physician's acquisition of information relating to the patient's treatment or diagnosis; (3) the disclosure of such confidential information to a person not connected with the patient's medical treatment, in a manner that allows the patient to be identified; [and] (4) lack of consent for that disclosure." 49 N.E.3d at 1176 (collecting cases).[11] In that case, the court held that a plaintiff stated a claim based on a hospital's disclosure of confidential medical information about him to people outside the hospital's staff, noting that CPLR 4504(a) created a "broad rule" that "protects all types of medical information," including "all information relating to the nature of the treatment rendered and the diagnosis made." *Id.* at 1175, 1177 (cleaned up).

A hospital may breach its obligations under CPLR 4504(a) even when compelled to disclose medical records by a grand jury subpoena. *See In re Grand Jury Investigation in N.Y Cnty.*, 779 N.E.2d 173, 176-77 (NY 2002) (CPLR 4504(a) precluded complying with subpoena seeking

---

[11] The court also identified damages as an element of the claim in that case, which sought damages. *Chanko,* 49 N.E.3d at 1176. Plaintiffs seek only declaratory and injunctive relief to prevent the harm from the imminent threat of disclosure of their sensitive medical information and need not assert damages. Such equitable relief is available for claims like Plaintiffs' alleging breach of fiduciary duty. *See*, *e.g.*, *Biosynexus, Inc. v. Glaxo Grp. Ltd.*, 40 A.D.3d 384, 384 (N.Y. App. Div. 1st Dept. 2007).

all medical records concerning "treatment [for] laceration, puncture wound or slash, or other injury"). Where compliance would disclose "privileged information concerning diagnosis and treatment," CPLR 4504(a) may bar a hospital from doing so. *Id.* (quotation omitted).

So too here. Plaintiffs satisfy the *Chanko* elements because NYU's disclosure of the patient information the Subpoena seeks would involve (1) a physician-patient relationship; (2) records relating to Plaintiffs' "treatment or diagnosis"; (3) disclosure to requestors not involved in providing that treatment, in a way that identifies Plaintiffs; and (4) lack of consent. *See* Compl. ¶¶ 14-18, 135-53; Coe Decl. ¶16; Doe Decl. ¶18; Koe Decl. ¶14; Noe Decl. ¶13; Roe Decl. ¶17. As in *In re Grand Jury Subpoena in N.Y. Cnty.*, a request seeking the names of all patients who received a certain diagnosis or treatment is squarely precluded by the statutory privilege of CPLR 4504(a). Even more so here, disclosure of Plaintiffs' voluminous records—collected over years and documenting intimate personal details, prescriptions, diagnoses, and disclosures to their doctors, *see* Coe Decl. ¶17; Koe Decl. ¶12; Noe. Decl. ¶14; Roe Decl. ¶14; Doe Decl. ¶15—would plainly "discourage … care," "intrude on" physician-patient relationships, and "undermine" particularly strong "expectations of privacy" for vulnerable minor plaintiffs. 779 N.E.2d at 177; *see also Dillenbeck v. Hess*, 536 N.E.2d 1126, 1130 (N.Y. 1989) (CPLR 4504(a) reflects the strong public interest in "protect[ing] the privacy expectations of patients"); Section I.B.3.ii *supra* (discussing Plaintiffs' privacy interests and the significant harms of disclosure).

Indeed, as discussed *supra*, the already-strong protections of CPLR 4504(a) are also bolstered by the state's recently-passed shield statutes, which specifically designate "gender-affirming care" as a "legally protected health care activity." N.Y. Exec. L. § 837-x. These laws, which explicitly incorporate the existing protections of all other New York confidentiality provisions, *see* N.Y. Exec. L. § 837-x(2)(d); N.Y. Gen. Bus. L. § 394-I(10), must be read alongside

CPRL 4504(a) to reflect the strongest possible public interest in protecting Plaintiffs' privacy expectations in privileged records regarding the provision of gender-affirming medical care.

While the privilege of CPLR 4504(a) is not absolute, the government's attempts to obtain Plaintiffs' records do not fall into any permissible exception to the privilege. Courts may consider a "[j]ustification or excuse" for disclosure, depending on "a showing of circumstances and competing interests which support the need to disclose." *Juric v. Bergstraesser*, 44 A.D.3d 1186, 1188 (N.Y. App. Div. 3d Dept. 2007) (citations omitted). But such "affirmative defense[s]," *id.*, are narrowly construed and include scenarios far afield from the facts here—for example, the disclosure of a record that threatens imminent danger to the spouse of a patient. *Id.* But where, as here, Plaintiffs' identifying and sensitive health information is squarely within "the realm[] of medical diagnosis and treatment," *In re Grand Jury Investigation in N.Y. Cnty.*, 779 N.E.2d at 176, and where permitting the government to obtain this information would infringe Plaintiffs' constitutional rights, *see* Sections I.B and C *supra*, the information lies at the heart of the statutory privilege's protections.

## II. Absent a TRO, Plaintiffs Will Suffer Irreparable Harm.

"When an alleged deprivation of a constitutional right is involved ... no further showing of injury is necessary" to obtain a preliminary injunction. *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (quotation omitted). "[P]laintiffs may show irreparable harm by showing that they are 'threatened with imminent violations of their constitutional rights in the absence of preliminary relief.'" *Airbnb, Inc. v. City of New York*, 373 F.Supp.3d 467, 498 (S.D.N.Y. 2019) (quotation omitted)

Nonetheless, "[t]he disclosure of private, confidential information is the quintessential type of irreparable harm that cannot be compensated or undone by money damages." *Airbnb, Inc.*, 373 F.Supp.3d at 499 (quotation omitted). This is especially true where disclosure is imminent and

where, absent relief, it cannot be undone. *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 802 (N.D. Cal. 2022). As described *supra*, Sections I.B.2 and I.B.3.i-ii, the disclosure here "would strip patients of control over their most personal information, expose intimate details about their bodies and lives, and risk public outing and lasting stigma," which "would inflict deep emotional harm, destroy trust in medical care, and spread the damage to families, peers, and many others." *In re: Subpoena No. 25-1431-014*, 810 F.Supp.3d at 599.

### III. The Balance of the Equities and Public Interest Favor Issuing a TRO.

Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief, as well as the public consequences in employing the extraordinary remedy of injunction." *Yang v. Kosinski*, 960 F.3d 119, 135-36 (2d Cir. 2020) (quotation omitted). "Where, as here, the government is a party to the suit, the final two factors merge." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020). These factors overwhelmingly favor Plaintiffs.

There is "generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also Make the Rd. N.Y. v. Pompeo*, 475 F.Supp.3d 232, 269 (S.D.N.Y. 2020). The public interest is "best served by ensuring the constitutional rights of persons are upheld." *Coronel v. Decker*, 449 F.Supp.3d 274, 287 (S.D.N.Y. 2020) (quotation omitted). Absent a temporary restraining order, Plaintiffs will be imminently subjected to irreparable harm and disclosure of their identities and sensitive health information and may be subjected to additional disclosure to and possible harm from non-federal actors. *See* Sections I.B.3.ii and II *supra*.

Conversely, temporarily enjoining DOJ from obtaining this data does not harm them; a delay in accessing records is an administrative concern that cannot overcome the constitutional harms at issue here. *Mitchell*, 748 F.2d at 807-08 (in conflict between "state's financial and

27

administrative concerns" and "risk of substantial constitutional harm to plaintiffs … the balance of hardships tips decidedly in plaintiffs' favor."). Similarly, enjoining the NYU Defendants from producing such data does not harm them, either.

## IV. The Court Should Require No Bond.

"[T]hat neither party stands to suffer any significant monetary losses from the issuance … [of a TRO], and given the important constitutional and public policy issues arising in this matter," counsels in favor of waiving the bond requirement. *Kermani v. NY State Bd. of Elections*, 487 F.Supp.2d 101, 115-16 (N.D.N.Y. 2006).

## CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion for Temporary Restraining Order.

Dated: June 2, 2026

Respectfully submitted,

*/s/ Omar Gonzalez-Pagan*

| | |
|---|---|
| Robert Hodgson | Omar Gonzalez-Pagan |
| Gabriella Larios | Karen L. Loewy |
| Anya Weinstock | **Lambda Legal Defense** |
| **New York Civil Liberties Union** | **and Education Fund, Inc.** |
| **Foundation** | 120 Wall Street, 19th Floor |
| 125 Broad Street, 19th Floor | New York, New York 10005 |
| New York, New York 10004 | Telephone: 212-809-8585 |
| Telephone: 212-607-3300 | Facsimile: 855-535-2236 |
| rhodgson@nyclu.org | ogonzalez-pagan@lambdalegal.org |
| glarios@nyclu.org | kloewy@lambdalegal.org |
| | |
| Chase B. Strangio | Nora Huppert* |
| Shana Knizhnik* | **Lambda Legal Defense** |
| **American Civil Liberties Union** | **and Education Fund, Inc.** |
| **Foundation** | 3656 N. Halsted St. |
| 125 Broad Street, Floor 18 | Chicago, Illinois 60613 |
| New York, New York 10004 | Telephone: 312-605-3233 |
| Telephone: 212-549-2500 | Facsimile: 855-535-2236 |
| Facsimile: 212-549-2650 | nhuppert@lambdalegal.org |

cstrangio@lambdalegal.org
sknizhnik@aclu.org

Elizabeth Gill*
**American Civil Liberties Union**
**Foundation**
425 California Street, Suite 700
San Francisco, California 94104
Telephone: 415-343-0779
egill@aclu.org

A.D. Sean Lewis*
**Lambda Legal Defense**
**and Education Fund, Inc.**
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
Telephone: 213-382-7600
Facsimile: 855-535-2236
alewis@lambdalegal.org

\* Motions for admission *pro hac vice*
forthcoming

*Attorneys for Plaintiffs*

29

## CERTIFICATION UNDER LOCAL CIVIL RULE 7.1(c)

In accordance with Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, promulgated pursuant to 28 U.S.C. § 2071 and Fed. R. Civ. P. 83, the undersigned certifies that the word count in this memorandum of law (not including the caption, table of contents, table of authorities, and signature block as well as this certification), as established using the word count function on the word-processing system used to prepare it, complies with the word-count limitations of this Court and is 8,748 words.

Dated: June 2, 2026

New York, New York
*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan