# Exhibit F



# Presidential Documents

**Executive Order 14187 of January 28, 2025**

## Protecting Children From Chemical and Surgical Mutilation

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

**Section 1**. *Policy and Purpose.* Across the country today, medical professionals are maiming and sterilizing a growing number of impressionable children under the radical and false claim that adults can change a child's sex through a series of irreversible medical interventions. This dangerous trend will be a stain on our Nation's history, and it must end.

Countless children soon regret that they have been mutilated and begin to grasp the horrifying tragedy that they will never be able to conceive children of their own or nurture their children through breastfeeding. Moreover, these vulnerable youths' medical bills may rise throughout their lifetimes, as they are often trapped with lifelong medical complications, a losing war with their own bodies, and, tragically, sterilization.

Accordingly, it is the policy of the United States that it will not fund, sponsor, promote, assist, or support the so-called ''transition'' of a child from one sex to another, and it will rigorously enforce all laws that prohibit or limit these destructive and life-altering procedures.

**Sec. 2**. *Definitions.* For the purposes of this order:

(a) The term ''child'' or ''children'' means an individual or individuals under 19 years of age.

(b) The term ''pediatric'' means relating to the medical care of a child.

(c) The phrase ''chemical and surgical mutilation'' means the use of puberty blockers, including GnRH agonists and other interventions, to delay the onset or progression of normally timed puberty in an individual who does not identify as his or her sex; the use of sex hormones, such as androgen blockers, estrogen, progesterone, or testosterone, to align an individual's physical appearance with an identity that differs from his or her sex; and surgical procedures that attempt to transform an individual's physical appearance to align with an identity that differs from his or her sex or that attempt to alter or remove an individual's sexual organs to minimize or destroy their natural biological functions. This phrase sometimes is referred to as ''gender affirming care.''

**Sec. 3**. *Ending Reliance on Junk Science.* (a) The blatant harm done to children by chemical and surgical mutilation cloaks itself in medical necessity, spurred by guidance from the World Professional Association for Transgender Health (WPATH), which lacks scientific integrity. In light of the scientific concerns with the WPATH guidance:

(i) agencies shall rescind or amend all policies that rely on WPATH guidance, including WPATH's ''Standards of Care Version 8''; and

(ii) within 90 days of the date of this order, the Secretary of Health and Human Services (HHS) shall publish a review of the existing literature on best practices for promoting the health of children who assert gender dysphoria, rapid-onset gender dysphoria, or other identity-based confusion.

(b) The Secretary of HHS, as appropriate and consistent with applicable law, shall use all available methods to increase the quality of data to guide practices for improving the health of minors with gender dysphoria, rapid-onset gender dysphoria, or other identity-based confusion, or who otherwise seek chemical or surgical mutilation.

**Sec. 4**. *Defunding Chemical and Surgical Mutilation.* The head of each executive department or agency (agency) that provides research or education grants to medical institutions, including medical schools and hospitals, shall, consistent with applicable law and in coordination with the Director of the Office of Management and Budget, immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end the chemical and surgical mutilation of children.

**Sec. 5**. *Additional Directives to the Secretary of HHS.* (a) The Secretary of HHS shall, consistent with applicable law, take all appropriate actions to end the chemical and surgical mutilation of children, including regulatory and sub-regulatory actions, which may involve the following laws, programs, issues, or documents:

(i) Medicare or Medicaid conditions of participation or conditions for coverage;

(ii) clinical-abuse or inappropriate-use assessments relevant to State Medicaid programs;

(iii) mandatory drug use reviews;

(iv) section 1557 of the Patient Protection and Affordable Care Act;

(v) quality, safety, and oversight memoranda;

(vi) essential health benefits requirements; and

(vii) the Eleventh Revision of the International Classification of Diseases and other federally funded manuals, including the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition.

(b) The Secretary of HHS shall promptly withdraw HHS's March 2, 2022, guidance document titled ''HHS Notice and Guidance on Gender Affirming Care, Civil Rights and Patient Privacy'' and, in consultation with the Attorney General, issue new guidance protecting whistleblowers who take action related to ensuring compliance with this order.

**Sec. 6**. *TRICARE.* The Department of Defense provides health insurance, through TRICARE, to nearly 2 million individuals under the age of 18. As appropriate and consistent with applicable law, the Secretary of Defense shall commence a rulemaking or sub-regulatory action to exclude chemical and surgical mutilation of children from TRICARE coverage and amend the TRICARE provider handbook to exclude chemical and surgical mutilation of children.

**Sec. 7**. *Requirements for Insurance Carriers.* The Director of the Office of Personnel Management, as appropriate and consistent with applicable law, shall:

(a) include provisions in the Federal Employee Health Benefits (FEHB) and Postal Service Health Benefits (PSHB) programs call letter for the 2026 Plan Year specifying that eligible carriers, including the Foreign Service Benefit Plan, will exclude coverage for pediatric transgender surgeries or hormone treatments; and

(b) negotiate to obtain appropriate corresponding reductions in FEHB and PSHB premiums.

**Sec. 8**. *Directives to the Department of Justice.* The Attorney General shall:

(a) review Department of Justice enforcement of section 116 of title 18, United States Code, and prioritize enforcement of protections against female genital mutilation;

(b) convene States' Attorneys General and other law enforcement officers to coordinate the enforcement of laws against female genital mutilation across all American States and Territories;

(c) prioritize investigations and take appropriate action to end deception of consumers, fraud, and violations of the Food, Drug, and Cosmetic Act by any entity that may be misleading the public about long-term side effects of chemical and surgical mutilation;

(d) in consultation with the Congress, work to draft, propose, and promote legislation to enact a private right of action for children and the parents of children whose healthy body parts have been damaged by medical professionals practicing chemical and surgical mutilation, which should include a lengthy statute of limitations; and

(e) prioritize investigations and take appropriate action to end child-abusive practices by so-called sanctuary States that facilitate stripping custody from parents who support the healthy development of their own children, including by considering the application of the Parental Kidnaping Prevention Act and recognized constitutional rights.

**Sec. 9**. *Enforcing Adequate Progress.* Within 60 days of the date of this order, the heads of agencies with responsibilities under this order shall submit a single, combined report to the Assistant to the President for Domestic Policy, detailing progress in implementing this order and a timeline for future action. The Assistant to the President for Domestic Policy shall regularly convene the heads of agencies with responsibilities under this order (or their designees) to coordinate and prepare for this submission.

**Sec. 10**. *Severability.* If any provision of this order, or the application of any provision to any person or circumstances, is held to be invalid, the remainder of this order and the application of any of its other provisions to any other persons or circumstances shall not be affected thereby.

**Sec. 11**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*January 28, 2025.*

[FR Doc. 2025–02194
Filed 1–31–25; 8:45 am]
Billing code 3395–F4–P