# Exhibit H

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


* * * * * * * * * * * * * * *  * 26-MC-07-MSM
                               *
In Re: Administrative Subpoena *
25-1431-032 to Rhode Island    * MAY 12, 2026
Hospital                       *
                               *
                               * Courtroom 1
                               * PROVIDENCE, RI
* * * * * * * * * * * * * * *  *


BEFORE THE HONORABLE MARY S. McELROY

DISTRICT JUDGE

(Motion to Quash)


**APPEARANCES:**

FOR THE PETITIONERS:
Child Advocate for the     KEVIN LOVE HUBBARD, ESQ.
State of Rhode Island      DeLuca, Weizenbaum, Barry &
                           Revens
                           199 North Main Street
                           Providence, RI  02903

Rhode Island Hospital      ERIC G. OLSHAN, ESQ.
                           McGuireWoods LLP
                           260 Forbes Ave. Ste 1800
                           Pittsburgh, PA  15222-3142

FOR THE RESPONDENT:        BRANTLEY T. MAYERS
United States of America   JORDAN C. CAMPBELL
                           DOJ-Civ
                           950 Pennsylvania Avenue NW
                           Washington, D.C.  20503

Court Reporter:            Denise P. Veitch, RPR
                           One Exchange Terrace
                           Providence, RI  02903

12 MAY 2026 -- 2:00 P.M.

THE COURT:  Good afternoon.  Thank you for accommodating us with the change of court.

(Discussion off the record)

THE COURT:  We are on the record in a miscellaneous petition and we've moved courtrooms because we seem to have a lot of *amici* and other interested parties.  The case number for us is 26-MC-007, and it's an In Re: Administrative Subpoena 25-1431-032 to Rhode Island Hospital.

So will counsel identify themselves for the record.

MR. LOVE HUBBARD:  Good afternoon, your Honor.  Kevin Love Hubbard on behalf of the Child Advocate for the State of Rhode Island.

MS. ROMERO:  Good afternoon.  Amy Romero for the Office of the Child Advocate for the State of Rhode Island.

MS. LABINGER:  Lynette Labinger for the Office of Child Advocate.

MS. NAKASIAN:  Good afternoon, your Honor.  Stacey Nakasian on behalf of Rhode Island Hospital.

MR. OLSHAN:  Good afternoon, your Honor.  Eric Olshan on behalf of Rhode Island Hospital.

THE COURT:  Okay.

MR. MAYERS:  Good afternoon, your Honor. Brantley Mayers as counsel to the Assistant Attorney General Subdivision.

THE COURT:  Okay.

MR. CAMPBELL:  Good afternoon, your Honor. Jordan Campbell on behalf of the Government.

THE COURT:  Okay.  Now, I spoke to -- let me back up.  This was begun by the Child Advocate's motion to quash the administrative subpoena that the Department of Justice issued to Rhode Island Hospital. The Department of Justice responded, and Rhode Island Hospital moved to intervene here.  So they filed their papers on the weekend, I think Saturday, the motion to intervene and the brief that went along with it.

So the options today are to argue both petitions or stay the compliance with the subpoena unless and until Rhode Island Hospital has an opportunity to -- I'm sorry, the Department of Justice has an opportunity to respond to Rhode Island Hospital's motions and then have another hearing, or, decide it on the papers.  So I think I'll go with the Government selection.  We can't -- the compliance with the subpoena needs to be stayed in order to give you more time, if you seek the time.  Are you seeking more time?

MR. MAYERS:  No, your Honor.  We're fine to

Seattle Children's, QueerDoc, Colorado Children's, that was all under -- pardon me?

THE COURT:  Los Angeles, maybe?

MR. OLSHAN:  I believe the Los Angeles action, CHLA, was pursued by patients.

THE COURT:  Correct.  Okay.

MR. OLSHAN:  But my point is this is happening in parallel and so as we're negotiating and deciding next steps, again reacting to the conduct of the Government.  Again, they have not brought up the most sensitive category, and as the Court knows from our briefing, the Government voluntarily agreed to limitations from at least three subpoenaed entities.

THE COURT:  And there's nothing in the record that indicates that they gave that information to the Texas judge.  In fact, there's an argument that there was a misrepresentation to the Texas judge; isn't that correct?

MR. OLSHAN:  I am not aware of anything in the record in the Northern District of Texas that indicates they told that court that they had agreed to limitations as to deidentified records, no, your Honor.

THE COURT:  Okay.  And I think they're saying the deidentified records in their response in Texas they say, and actually Lisa Hsiao says in her

because you didn't tell the Texas court about the anonymized data that you agreed to there, or other places.  So that's another falsehood or arguably leading filing in Texas.

MR. MAYERS:  I disagree, your Honor, but --

THE COURT:  Based on what?

MR. MAYERS:  Your Honor pointed to a provision of the Hsiao Declaration that says the patient records, generally the patient records, --

THE COURT:  Uh'huh.

MR. MAYERS:  -- are important or essential to the investigation.

THE COURT:  So you're saying that anonymized data is fine; you don't need the actual identifiable data.  Is that what you're saying?

MR. MAYERS:  Your Honor, it has been our practice to the extent that I'm aware of offering anonymized data request or an anonymized data production to recipients.

THE COURT:  When did you offer that to Rhode Island Hospital?

MR. MAYERS:  I was informed that we -- to the best of my recollection I was informed that we had, but I can't confirm that or confirm the date of that.

THE COURT:  Can you confirm who would have made

that offer?

MR. MAYERS:  Who would have made that offer would be a member of I believe either the Enforcement and Affirmative Litigation Branch or a member of our team in Northern District of Texas.

THE COURT:  Okay.

MR. MAYERS:  I believe the offer in this case, if one was made, and I can't confirm that without double-checking would be --

THE COURT:  Can you double-check with co-counsel?  I think he's running this case generally; right?

(Counsel confer)

MR. MAYERS:  Your Honor, it would have been David Gunn, --

THE COURT:  When?

MR. MAYERS:  -- who was the trial attorney in the case.  He's in Washington, D.C.

And to be clear, if Rhode Island Hospital were to come to us and say would you be willing to go and asked the court for, you know, anonymized records, that would be fine with us.

THE COURT:  But you -- oh, so you'll do that now?

MR. MAYERS:  Yes, your Honor, we would still

take -- if they agree to produce anonymized records, patient records, we would take those.

THE COURT:  And that wouldn't be a violation of the Texas judge's order?

MR. MAYERS:  We would go to Judge O'Connor and say the parties have discussed in the light of your Honor's order and we would take anonymized.

THE COURT:  But when I asked you before if you could agree to an extension of that judge's order you said no because it was court order; didn't you?

MR. MAYERS:  Your Honor, I believe we said that we could not guarantee how Judge O'Connor would rule on such order and that we were not in a place to request such an order at this time.

THE COURT:  But then you can't make that representation to Rhode Island Hospital of whether anonymized data would work.

MR. MAYERS:  We could make the representation that we would agree to go to the court and say that we have discussed and that pursuant to our approach in the other investigations we would accept anonymized patient data.

THE COURT:  I'm going to ask counsel for Rhode Island Hospital to address when and if that was stated, and I'm going to ask for an affidavit from Mr. Gunn by

speaks to the relevancy of the request.  And also I've outlined to your Honor two theories, one being that Rhode Island Hospital possesses, could possess evidence relevant to potential misconduct by pharmaceutical companies and (2) Rhode Island Hospital could have engaged in a conspiracy with said pharmaceutical companies.

THE COURT:  Right.

MR. MAYERS:  So we think that each subpoena requests --

THE COURT:  Well, that doesn't get you to 11 through 15, but we'll address that later.

MR. MAYERS:  I'm happy to address it --

THE COURT:  How do you get to 11 through 15?

MR. MAYERS:  Well, your Honor, you know, as we've discussed --

THE COURT:  And why can't it be deidentified, as I think HSS requires under the CFR HSS rules say that in order to get that information or give that information, Rhode Island Hospital's responsible for deidentifying that data and you're responsible for saying why it can't be deidentified.

MR. MAYERS:  So if Rhode Island Hospital takes the position that they will produce deidentified patient information to the extent it is possible for us

to carry out our investigation, we would accept those records

THE COURT:  And did you tell the Texas judge that?

MR. MAYERS:  We didn't tell the Texas judge one way or the other.

THE COURT:  And did you tell the Texas judge essentially that you needed the information, without disclosing to the Texas judge that you had agreed to deidentified information in several other places?

MR. MAYERS:  We told the Texas judge that patient records, and again I can quote from -- I want to be sure I'm precise here.

(Judge confers with Clerk)

MR. MAYERS:  So we said, your Honor, just referring to patient records generally.

THE COURT:  Where is this?

MR. MAYERS:  This is, I believe your Honor quoted earlier in paragraph 44 of the initial Hsiao Declaration.

THE COURT:  Okay.

MR. MAYERS:  So we say, patient records: Generally without this information we cannot fully determine the scope of violations, identify patterns, or assess whether conduct was taken with intent to

and let madam court reporter...

THE COURT: Yes, we have some replies too from the other side, and I have questions for you too.

MR. MAYERS: Yes, so your Honor, I would be happy to answer those questions now.

THE COURT: Okay. Let me make sure I have them. I think you already answered who or what entities can be held liable for misbranding; is that correct?

MR. MAYERS: Yes, I have.

THE COURT: And you don't need -- we're agreed you don't need patient's name, Social Security number, home address to investigate billing fraud or off-label promotion or misbranding; correct?

MR. MAYERS: We think that that information would assist in our investigation.

THE COURT: I'm asking if you need it.

MR. MAYERS: Again, it would assist. Is it absolute every circumstance? As we've discussed we have accepted anonymized data in other cases, in other interactions requested of other subpoena recipients, so we would say that we're willing to accept that, we have been so far; that it is not -- that the information you read off is not necessarily irrelevant to our investigation.

THE COURT: But you agreed to not -- to forego