**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARTER COE, by and through his parent and next friend, CAROLINE COE; et al., *on behalf of themselves and all similarly situated*,<br><br>     *Plaintiffs*,<br><br>     v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; et al.,<br><br>     *Defendants*. | Case No. 1:26-cv-04641-JAV |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**</u>

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..........................................................................................................ii

TABLE OF AUTHORITIES...............................................................................................iii

INTRODUCTION ................................................................................................................ 1

PROPOSED CLASS DEFINITIONS................................................................................. 4

FACTUAL BACKGROUND ............................................................................................... 4

    I. Case Background .......................................................................................................... 4

    II. Class Representatives and the Proposed Class ....................................................... 7

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ......................................................................................................................... 9

    III. The Proposed Class and NYU Subclass Satisfy the Requirements of Rule 23(a). ............... 9

        A. The Class Is So Numerous that Joinder Is Impracticable...................................... 9

        B. The Class Shares Common Issues of Law and Fact...........................................11

        C. The Representatives' Claims Are Typical of the Class....................................... 13

        D. The Representatives Will Fairly and Adequately Protect the Interests of the Class. ....... 15

        E. Class Counsel Is Adequate and Should Be Appointed Under Rule 23(g). ...................... 16

        F. The Proposed Class Is Ascertainable. ................................................................ 16

    IV. The Proposed Class Satisfies Rule 23(b)'s Requirements.................................... 17

CONCLUSION.................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**                                                                                    Page(s)

*Adames v. Mitsubishi Bank, Ltd.*,
    133 F.R.D. 82 (E.D.N.Y. 1989) ..................................................................................9, 11

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................... 15

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ............................................................................................. 8

*Ayzelman v. Statewide Credit Servs. Corp.*,
    238 F.R.D. 358 (E.D.N.Y 2006) ..................................................................... 12, 14

*B.K. ex rel. Tinsley v. Snyder*,
    922 F.3d 957 (9th Cir. 2019) .............................................................................. 18

*Barrows v. Becerra*,
    24 F.4th 116 (2d Cir. 2022) ........................................................................... 13, 14

*Bishop v. New York City Dep't of Hous. Pres. & Dev.*,
    141 F.R.D. 229 (S.D.N.Y. 1992) ...........................................................................11

*Caridad v. Metro-N. Commuter R.R.*,
    191 F.3d 283 (2d Cir. 1999) ................................................................................ 8

*Comer v. Cisneros*,
    37 F.3d 775 (2d Cir. 1994) ................................................................................ 17

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) .................................................................................. 9

*D.H. v. Snyder*,
    No. 4:20-cv-335 (D. Ariz. Aug. 6, 2020) ............................................................. 10

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) .............................................................................. 15

*Elisa W. v. City of New York*,
    82 F.4th 115 (2d Cir. 2023) ........................................................... 8, 12, 13, 14

*Espinoza v. 953 Assocs., LLC*,
    280 F.R.D. 113 (S.D.N.Y. 2011) ....................................................................... 13

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ...........................................................................................11

*In Re 2025 Subpoena to Children's Nat'l Hosp.*,
  No. 1:25-cv-03780, 2026 WL 160792 (D. Md. Jan. 21, 2026), *appeal dockete*d, No. 26-1104
  (4th Cir. Feb. 2, 2026) ...................................................................................................... 5

*In re 2025 UPMC Subpoena*,
  2025 WL 3724705 (W.D. Pa. Dec. 24, 2025), *judgment entered*, No. 2:25-MC-01069, 2026
  WL 570419 (W.D. Pa. Mar. 2,2026), *appeal docketed*, No. 26-1401 (3d Cir. Mar. 4, 2026)..... 5

*In re Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*,
  2026 WL 1392565 (D.R.I. May 14, 2026) ........................................................................ 6

*In re Admin. Subpoena No. 25-1431-019*,
  800 F.Supp.3d 229 (D. Mass. 2025), *appeal docketed,* No. 25-2092 (1st Cir. Nov. 14, 2025) .. 5

*In re Aphria, Inc. Sec. Litig.*,
  342 F.R.D. 199 (S.D.N.Y. 2022) ..................................................................................... 16

*In re Dep't of Just. Admin. Subpoena No. 25-1431-030*,
  No. 25-MC-00063, 2026 WL 33398 (D. Colo. Jan. 5, 2026) ..................................................... 5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ............................................................................................ 15

*In re Foodserv. Inc. Pricing Litig.*,
  729 F.3d 108, 117 (2d Cir. 2013) .................................................................................... 7

*In re Petrobras Secs.*,
  862 F.3d 250 (2d Cir. 2017) ........................................................................................... 16

*In re Subpoena Duces Tecum No. 25-1431-016*,
  2025 WL 3562151 (W.D. Wash. Sept. 3, 2025) ...................................................................... 5

*In re Subpoena No. 25-1431-014*,
  810 F.Supp.3d 555 (E.D. Pa. 2025) ................................................................................. 5

*Johnson v. Nextel Comms. Inc.*,
  780 F.3d 128 (2d Cir. 2015) ........................................................................................... 12

*Kindle v. Dejana*,
  315 F.R.D. 7 (E.D.N.Y. 2016) .......................................................................................11

Marisol A. by Forbes v. Giuliani,
  929 F.Supp. 662 (S.D.N.Y. 1996), aff'd sub nom. Marisol A. v. Giuliani, 126 F.3d 372 (2d Cir.
  1997) ...................................................................................................................... 18

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ................................................................................... 8, 12, 14

*Merryman v. Citigroup, Inc.*,
  2018 WL 1621495 (S.D.N.Y. Mar. 22, 2018) .......................................................................... 8

*Nat'l L. Ctr. on Homelessness & Poverty v. New York*,
  224 F.R.D. 314 (E.D.N.Y. 2004) ........................................................................................... 15

*Nicholson v. Williams,*
  205 F.R.D. 92 (E.D.N.Y. 2001) ...................................................................................... 10, 18

*Orr v. Trump*,
  786 F.Supp.3d 397 (D. Mass. 2025), *appeal pending*, No. 25-1579 (1st Cir. 2025) .................11

*Parker v. Time Warner Ent. Co.*,
  239 F.R.D. 318 (E.D.N.Y. 2007) .............................................................................................11

*QueerDoc, PLLC v. U.S. Dep't of Justice*,
  807 F.Supp.3d 1295 (W.D. Wash. 2025), *appeal docketed*, No. 25-7384 (9th Cir. Nov. 24,
  2025) ......................................................................................................................................... 5

*Ramirez v. Riverbay Corp.*,
  39 F.Supp.3d 354 (S.D.N.Y. 2014) ........................................................................................ 13

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ..........................................................................................9, 11, 14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ................................................................................................................. 7

*Shilling v. United States*,
  773 F. Supp. 3d 1069 (W.D. Wash. 2025) .............................................................................. 10

*Stinson v. City of New York*,
  282 F.R.D. 360 (S.D.N.Y. 2012) ...................................................................................... 14, 17

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) ............................................................................................ 12

*United States v. Skrmetti*,
  605 U.S. 495 (2025) ............................................................................................................... 10

*V.W. by & through Williams v. Conway*,
  236 F.Supp.3d 554 (N.D.N.Y. 2017) ...................................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................................................... passim

**Rules**

Fed. R. Civ. P. 23........................................................................................................... 7, 8, 17

Fed. R. Civ. P. 23(a) ................................................................................................... passim

Fed. R. Civ. P. 23(a)(1) ..................................................................................................... 9

Fed. R. Civ. P. 23(a)(2) ...............................................................................................11, 14

Fed. R. Civ. P. 23(a)(3) ................................................................................................... 14

Fed. R. Civ. P. 23(a)(4) ................................................................................................... 15

Fed. R. Civ. P. 23(b) .................................................................................................... 7, 17

Fed. R. Civ. P. 23(b)(2) ............................................................................................. passim

Fed. R. Civ. P. 23(c)(5) ..................................................................................................... 8

Fed. R. Civ. P. 23(g) ....................................................................................................... 16

## Executive Orders

Exec. Order No. 14187, *Protecting ChildrenFrom Chemical and Surgical Mutilation*, 90 Fed.
    Reg. 8771, § 1 (Jan. 28, 2025) ................................................................................... 5

## Other Authorities

1 Newberg and Rubenstein on Class Actions (6th ed. 2026) ......................................... 18

7A Wright & Miller, Federal Practice & Procedure (3d ed. 2018) ................................. 9

New York State Dep't of *Health, Sexual Orientation and Gender Identity: Demographics and
    Health Indicators, New York State Adults, 2021-2022, Behavioral Risk Factor Surveillance
    System, Numbe*r 2025-16 (June 2025), https://tinyurl.com/3n38wxkp .................................... 10

Exec. Order No. 14187, *Protecting ChildrenFrom Chemical and Surgical Mutilation*, 90 Fed.
    Reg. 8771, § 1 (Jan. 28, 2025) ................................................................................... 5

Jodi L. Herman et al., The Williams Inst., *How Many Adults and Youth Identify as Transgender
    in the United States?* (2022), https://tinyurl.com/2r8wdc3k [https://perma.cc/J57F-XPL7].... 10

New York City Department of City Planning, *Population FactFinder: Demographic Profile,
    2019-2023: New York City* [American Community Survey], https://tinyurl.com/ycyfcwwh
    [https://perma.cc/B7NV-WHAA] (accessed May 31, 2026) ................................................. 10

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97
    (2009) ................................................................................................................ 17

**INTRODUCTION**

The Plaintiffs and proposed class representatives in this putative class action are minors, their parents, and young adults seeking to challenge the imminent and unconstitutional disclosure of their identities and sensitive health information related to gender-affirming medical care to the DOJ Defendants, whom they allege are seeking that information for improper, unlawful, and discriminatory purposes. They seek to certify a class of individuals who all received the same defined types of medical care in New York City and whose identities and sensitive health information the DOJ is seeking, and a subclass who received care from NYU Langone Hospital and bring additional state law claims against NYU directly.

On May 7, 2026, NYU Langone Hospitals received a federal grand jury subpoena from the U.S. Attorney's Office for the Northern District of Texas. *See* Dkt. 1-1. On information and belief, other New York City-based healthcare providers, including Mount Sinai Health System, also received nearly identical grand jury subpoenas (hereafter "the Subpoenas"). *See* Compl. ¶ 114. The Subpoenas are part and parcel of the current federal administration's efforts to "end" gender-affirming medical care for transgender minors and its systematic attacks on transgender people more broadly. Through the Subpoenas, DOJ seeks to target and intimidate providers of gender-affirming medical care to transgender adolescents into ceasing the provision of these lawful, medically-necessary treatments.

The Subpoenas demand that NYU and potentially other health institutions in New York City turn over the identifying and sensitive health information of all transgender people who received medical care as treatment for their gender dysphoria while they were minors, as well as the identity of their parents. Permitting the government to obtain private, sensitive information in connection with the Subpoenas would unjustifiably invade the Plaintiffs' privacy in violation of their rights under the Fourth and Fifth Amendments to the Constitution of the United States and

cause severe and irreparable harm. Permitting the NYU Defendants to disclose this sensitive and private information would also unlawfully breach physician-patient confidentiality under state law.

Plaintiffs request that this Court certify a class under Federal Rules of Civil Procedure 23(a) and 23(b)(2) for purposes of declaring the rights of all members of the class to be free from Defendants' infringement of rights under the Fourth and Fifth Amendments and enjoining the DOJ Defendants from seeking, receiving, using, retaining, or disseminating any patient-identifying information or sensitive health information as to all members of the Class through the Subpoenas. Plaintiffs further request the certification of a subclass for purposes of enjoining the NYU Defendants from breaching the fiduciary patient-physician relationship by disclosing or producing any patient-identifying information or sensitive health information of Plaintiffs and members of the proposed NYU Subclass to the DOJ Defendants pursuant to the Subpoena. As noted in their Complaint and motion for a temporary restraining order, Plaintiffs ask that, given the June 10, 2026, deadline of the Subpoena, and the emergency nature of this requested relief, the Court begin by provisionally certifying the class for the purpose of issuing emergency relief, *see* Mem. In Support of TRO, after which the Court may consider any outstanding questions before proceeding to full class certification.

The proposed Class and NYU Subclass satisfy the requirements of Rule 23(a) and fall within the scope of Rule 23(b)(2). The proposed Class and NYU Subclass are sufficiently numerous and geographically dispersed that joinder of all members is impracticable. They raise common legal questions that will generate common answers, including whether Defendants' pursuit and disclosure of the information sought by the Subpoenas violates class members' rights under the United States Constitution and subclass members' privilege against disclosure of their confidential medical information. Adjudication of these issues will in turn clarify the scope of the

2

putative class members' rights, determine whether or to what extent DOJ may be enjoined from seeking or receiving the Class's identifying and sensitive health information and determine whether the NYU Defendants may be enjoined from disclosing such information as to the NYU Subclass.

The proposed Class and NYU Subclass each raise common factual issues because Plaintiffs and class members are subject to the same threat of disclosure. Plaintiffs' claims are typical of those whom they seek to represent—that is, transgender people who received gender-affirming medical care as minors at healthcare institutions in New York City and whose records of such care are at risk of being disclosed as part of the DOJ Defendants' efforts to "end" gender affirming medical care for minors.

Plaintiffs are also adequately represented by a team of attorneys with significant experience litigation relating to the rights of transgender people as well as class action litigation, including before this Court, from the American Civil Liberties Union Foundation ("ACLU"), Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal"), and the New York Civil Liberties Union Foundation ("NYCLU").

Plaintiffs' proposed Class and NYU Subclass likewise satisfy Federal Rule of Civil Procedure 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Because the Subpoenas seek the same information about each patient, they are operating in a manner that is common to all Plaintiffs. The Class and NYU Subclass as a whole are therefore entitled to declarations that state that permitting DOJ Defendants to seek or NYU Defendants to disclose their private health information as part of the DOJ Defendants' current effort to end gender affirming medical care would violate their

constitutional rights and breach duties of confidentiality. The Class and NYU Subclass are likewise entitled to an injunction enjoining DOJ Defendants from requesting or receiving such information.

## PROPOSED CLASS DEFINITIONS

Plaintiffs move for the certification of the following class under Federal Rule of Civil Procedure 23(b)(2):

> All individuals who received any medical treatment for gender dysphoria, including any medical, surgical, pharmaceutical, or clinical intervention that is intended or reasonably expected to suppress, alter, or eliminate endogenous pubertal development, or to modify primary or secondary sex characteristics, for the purpose of aligning with or affirming a minor's asserted gender identity rather than the minor's birth sex, while they were under eighteen years of age, from January 1, 2020, through May 5, 2026, at a healthcare institution located in New York City, including NYU Langone Hospitals (and any other NYU entity) and Mount Sinai Health System.

In addition, Plaintiffs move for the certification of the following subclass (the "NYU Subclass") under Federal Rule of Civil Procedure 23(b)(2):

> All individuals who received any medical treatment for gender dysphoria, including any medical, surgical, pharmaceutical, or clinical intervention that is intended or reasonably expected to suppress, alter, or eliminate endogenous pubertal development, or to modify primary or secondary sex characteristics, for the purpose of aligning with or affirming a minor's asserted gender identity rather than the minor's birth sex, while they were under eighteen years of age, from January 1, 2020, through May 5, 2026, at NYU Langone Hospitals or any other NYU entity.

## FACTUAL BACKGROUND

### I.    Case Background

From day one, the Trump Administration has used every lever of executive power to effectuate a broad-based campaign to eradicate legal protections for transgender people and "end" medical care that many transgender people need to sustain their health and well-being. *See* Compl. ¶¶ 41-106 (documenting actions by the administration targeting transgender people). Agencies across the government took action to carry out the mandates of a series of Executive Orders targeting transgender people, including one issued on January 28, 2025 declaring it "the policy of

4

the United States that it will not fund, sponsor, promote, assist, or support" gender-affirming medical care for minors, and proclaimed that the Administration "will rigorously enforce all laws that prohibit or limit" such care, declaring it to be a "stain on our Nation's history," and that "it must end." *See* Exec. Order No. 14187, *Protecting Children From Chemical and Surgical Mutilation*, 90 Fed. Reg. 8771, § 1 (Jan. 28, 2025) ("Denial-of-Care EO").

The Denial-of-Care EO imposed specific obligations on DOJ to explore legal avenues for limiting or ending the provision of gender-affirming medical care. *See id.*, § 8. Following directives from then-Attorney General Bondi and the chief of the Civil Division, *see* Dkt. 1-3, 1-4 (Bondi and Shumate Memos), DOJ began issuing civil administrative subpoenas to more than twenty healthcare institutions across the country whose care for their minor patients includes gender-affirming medical care. These administrative subpoenas sought a broad swath of information and documents, including patients' identifying and sensitive health information. Healthcare institutions and families of patients filed motions seeking to quash or limit many of these subpoenas. Each of the courts that considered these motions quashed or limited the ability of obtain patient-identifying information or protected health information. *See In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, No. 25-MC-00063, 2026 WL 33398 (D. Colo. Jan. 5, 2026); *In Re 2025 Subpoena to Children's Nat'l Hosp.*, No. 1:25-cv-03780, 2026 WL 160792 (D. Md. Jan. 21, 2026), appeal docketed, No. 26-1104 (4th Cir. Feb. 2, 2026); *In re 2025 UPMC Subpoena*, No. 2:25-MC-01069, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025), judgment entered, No. 2:25-MC-01069, 2026 WL 570419 (W.D. Pa. Mar. 2, 2026), appeal docketed, No. 26-1401 (3d Cir. Mar. 4, 2026); *In re Admin. Subpoena No. 25-1431-019*, 800 F.Supp.3d 229 (D. Mass. 2025), appeal docketed, No. 25-2092 (1st Cir. Nov. 14, 2025); *In re Subpoena No. 25-1431-014*, 810 F.Supp.3d 555, 583 (E.D. Pa. 2025); *QueerDoc, PLLC v. U.S. Dep't of Justice*, 807 F.Supp.3d 1295, 1303 (W.D. Wash. 2025), appeal

docketed, No. 25-7384 (9th Cir. Nov. 24, 2025); *In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-MC-00041, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025).

After receiving multiple adverse rulings from federal district courts that protected patients' information from disclosure to DOJ, on April 30, 2026, DOJ for the first time moved to enforce an administrative subpoena, filing a motion to enforce the subpoena sent to Rhode Island Hospital in the U.S. District Court for the Northern District of Texas, which was granted within hours and without notice to or an opportunity to respond by Rhode Island Hospital. *In re Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*, 2026 WL 1392565, at *1, *3 (D.R.I. May 14, 2026). After the Rhode Island Child Advocate moved to quash the administrative subpoena, the U.S. District Court for the District of Rhode Island enjoined DOJ from seeking, receiving, using, retaining, or disseminating any patient-identifying information or protected health information produced by Rhode Island Hospital in response to the administrative subpoena at issue. *In re Subpoena to R.I. Hosp.*, 2026 WL 1392565, at *1. The court further held that the subpoena demanded information that, if complied with, would violate the constitutional privacy rights of Rhode Island children and that it was issued for an improper purpose. *Id*.

On May 7, 2026, NYU Langone Hospitals received a grand jury subpoena from the U.S. Attorney's Office in the Northern District of Texas directing the hospital to produce seventeen broad categories of records, from January 1, 2020, through May 5, 2026, by 9:00am on June 10, 2026. *See* Dkt. 1-1 (NYU Subpoena). The requested records include identifying information of all minors who received gender-affirming medical care, as well as sensitive details of the full course of their care. Days later, pursuant to New York's Shield Law, NYU notified its patients of the subpoena, indicating that several other healthcare institutions had received them as well. *See* Dkt. 1-2 (NYU Notice).

## II.      Class Representatives and the Proposed Class

Plaintiffs, Carter Coe, by and through his parent and next friend, Caroline Coe; Reed Roe, by and through his parent and next friend, Riley Roe; Nicole Noe, by and through her parent, Norman Noe; Karl Koe; and Jay Doe, ask the court to appoint them as class representatives. Coe Decl. ¶ 10; Roe Decl. ¶ 10; Noe Decl. ¶ 10; Koe Decl. ¶ 10; Doe Decl. ¶ 10. The proposed class representatives face the risk of having their identities, their parent or guardian's identities, sensitive healthcare information, treatment options, patient-provider conversations, and mental health appointments shared with the federal government. Coe Decl. ¶¶ 13-20; Roe Decl. ¶¶ 13-22; Noe Decl. ¶¶ 13-17; Koe Decl. ¶¶ 12-18; Doe Decl. ¶¶ 13-23. The proposed class representatives are all transgender individuals, three minors represented by and through their parents, and two young adults who all received gender-affirming medical care at healthcare institutions in New York City, including NYU Langone Hospital and Mount Sinai Hospital, while they were minors. Coe Decl. ¶¶ 1-3, 11; Roe Decl. ¶¶ 1-3, 11; Noe Decl. ¶¶ 1-3, 11; Koe Decl. ¶¶ 1-3, 11; Doe Decl. ¶¶ 1-3, 11.

Each class representative brings this lawsuit to protect not only their own interests, but also the interests of the class as a whole. The class representatives bring this lawsuit to protect their own rights and those of others like them to informational privacy and against unreasonable searches and seizures, as well as their privilege against disclosure of their confidential medical information. Coe Decl. ¶ 10; Roe Decl. ¶ 10; Noe Decl. ¶ 10; Koe Decl. ¶ 10; Doe Decl. ¶ 10.

## LEGAL STANDARD

"By its terms, [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Certification is appropriate when a putative class satisfies the requirements of Rule 23(a) and meets at least one of the standards of Rule 23(b). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *In re Foodserv. Inc. Pricing Litig.*, 729

7

F.3d 108, 117 (2d Cir. 2013). A class satisfies Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there is at least one question of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed R. Civ. P. 23(a). Additionally, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class." Fed. R. Civ. P. 23(c)(5).

Plaintiffs seek certification for the Class and the NYU Subclass under Rule 23(b)(2), which permits class treatment if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2) applies "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

While plaintiffs must prove by a preponderance of the evidence that each Rule 23 element is met, *Elisa W. v. City of New York*, 82 F.4th 115, 127 (2d Cir. 2023), courts reviewing a motion for class certification accept as true the complaint's allegations concerning the case's merits. *See Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999). "Merits questions may be considered ... only to the extent[] that they are relevant to" determining whether Rule 23 is satisfied. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

Finally, Rule 23 should be "given liberal rather than restrictive construction." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *see also Merryman v. Citigroup, Inc.*, 2018 WL 1621495, at *13 (S.D.N.Y. Mar. 22, 2018).

8

**ARGUMENT**

Class certification is particularly appropriate in this case. Civil rights actions like this one are particularly amenable to class treatment under the federal rules. Rule 23(b)(2) was enacted to "facilitate the bringing of class actions in the civil-rights area." 7A Wright & Miller, Federal Practice & Procedure § 1775 (3d ed. 2018).

The proposed classes meet each of the requirements for certification under Rule 23(a) : (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

The arguments in favor of class certification are especially strong in this context where many individual class members are unlikely to be able to pursue their claims individually due to the confidentiality concerns and discrimination at the heart of this case. *See Adames v. Mitsubishi Bank, Ltd.*, 133 F.R.D. 82, 89 (E.D.N.Y. 1989) (noting fear of retaliation or harassment by defendant impacts ability to litigate individual cases).

**III.     The Proposed Class and NYU Subclass Satisfy the Requirements of Rule 23(a).**

**A.     The Class Is So Numerous that Joinder Is Impracticable.**

Numerosity is satisfied when a class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, numerosity is presumed when a class consists of 40 members or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs need not demonstrate the "exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

9

The proposed Class and NYU Subclass easily satisfy the numerosity requirement—a requirement that is relaxed "where the proposed class seeks injunctive and declaratory relief pursuant to Rule 23(b)(2)." *Nicholson v. Williams,* 205 F.R.D. 92, 98 (E.D.N.Y. 2001). While the precise number of class members is not currently known, publicly available information, including a declaration from another federal case, indicates that well over forty minor patients sought gender-affirming medical care from New York City-based hospitals, including over forty patients at NYU Langone alone, during the relevant time period. Dr. Aron Janssen, who founded and then served as Clinical Director of NYU's Gender and Sexuality Service, stated that 200 families with transgender and gender diverse youth were served by NYU's Gender and Sexuality Service from 2015 to 2020. *See* Expert Decl. of Aron Janssen, M.D. at ¶ 7, *D.H. v. Snyder*, No. 4:20-cv-335 (D. Ariz. Aug. 6, 2020) (ECF No. 5-4).

What's more, while we do not know the exact number of transgender and gender diverse young people who received care at other healthcare institutions based in New York City, there are thousands of possible class members in New York City. There are approximately 1.5 million people in New York City between the ages of 10 and 24 years old,[1] and at least 1.4% people between the ages of 13 and 24 years old identify as transgender in New York State.[2] Because "only transgender individuals seek treatment for gender dysphoria," *United States v. Skrmetti*, 605 U.S. 495, 497 (2025); *see also Shilling v. United States*, 773 F. Supp. 3d 1069, 1091 (W.D. Wash. 2025) ("Gender

---

[1]    *See* New York City Department of City Planning, *Population FactFinder: Demographic Profile, 2019-2023: New York City* [American Community Survey], https://tinyurl.com/ycyfcwwh [https://perma.cc/B7NV-WHAA] (accessed May 31, 2026).

[2]    *See* Jodi L. Herman et al., The Williams Inst., *How Many Adults and Youth Identify as Transgender in the United States?* (2022), at 10, https://tinyurl.com/2r8wdc3k [https://perma.cc/J57F-XPL7] (documenting that 1.37% of persons between 18 and 24 years of age, and 3.00% of persons between 13 and 17 years of age in New York State identify as transgender); *cf.* New York State Dep't of Health, *Sexual Orientation and Gender Identity: Demographics and Health Indicators, New York State Adults, 2021-2022, Behavioral Risk Factor Surveillance System, Number 2025-16* (June 2025), at 3, https://tinyurl.com/3n38wxkp (noting that around 1.8% of adults in New York City identify as transgender).

dysphoria is plainly 'closely correlated' with being transgender.") (citation and subsequent history omitted), it is exceedingly likely that at least 40 of the approximately 21,000 transgender young people in New York City sought medical treatment for gender dysphoria at healthcare institutions in New York City other than NYU between January 2020 and May 2026. *See Orr v. Trump*, 786 F.Supp.3d 397, 409–10 (D. Mass. 2025) (relying on similar calculation to find "proposed classes no doubt exceed[ed] the low threshold for numerosity") (quotation marks omitted), *appeal pending*, No. 25-1579 (1st Cir. 2025).

In addition, the nature of this action makes joinder impracticable. *See Bishop v. New York City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 235 (S.D.N.Y. 1992) ("The factors to be considered in evaluating the practicability of joinder include not only the number of the parties involved, but also the inconvenience of trying individual suits, the nature of the action, the size of the individual claims, and the location of the class members."). The confidentiality concerns at the center of this case impact the ability of claimants to institute individual suits. *See Robidoux*, 987 F.2d at 936 (noting wide range of factors that can impact ability to litigate, including poverty and fluctuating class membership); *Adames*, 133 F.R.D. at 89 (noting fear of retaliation or harassment by defendant impacts ability to litigate individual cases). Given the likely number of impacted class members and the nature of the claims, the proposed Class and NYU Subclass satisfy the numerosity requirement.

### B.    The Class Shares Common Issues of Law and Fact.

The claims asserted by the proposed Class and NYU Subclass include common questions of law and fact that satisfy Rule 23(a)(2). Commonality is "a minimal burden for a party to shoulder," *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (quoting *Parker v. Time Warner Ent. Co.*, 239 F.R.D. 318, 329 (E.D.N.Y. 2007)). It only "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 564 U.S. at 349–50 (quoting *Gen.*

11

*Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). This requirement is satisfied if there is a single issue common to all members of the class, so long as common questions are at the "core of the cause of action alleged." *Ayzelman v. Statewide Credit Servs. Corp.*, 238 F.R.D. 358, 363 (E.D.N.Y 2006) (quotation marks omitted); *see also Marisol A.*, 126 F.3d at 376 ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) ("Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members."). "[E]ven a single common question will do." *Wal-Mart*, 564 U.S. at 359 (citation modified); *see also Elisa W.*, 82 F.4th at 127. As the Supreme Court has clarified, commonality turns on the action's ability to "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (citation omitted). It exists if there is at least one question "capable of classwide resolution," such "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiffs in this case have alleged injuries arising from the same actions—DOJ Defendants' actions seeking minor patients' identifying and sensitive health information and NYU Defendants' imminent disclosure of the same. *See Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.") (citation omitted). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Elisa W.*, 82 F.4th at 123 (quoting *Johnson*, 780 F.3d at 137–38).

In addition to this common injury, the legal questions raised are common to the proposed Class and NYU Subclass: whether DOJ Defendants' pursuit and NYU Defendants' compelled

disclosure of the identifying and sensitive health information of class members sought by the Subpoenas violates class members' rights under the U.S. Constitution and, for the NYU Subclass, under New York state law. And while class members may present individualized facts (e.g., the ages, diagnoses, medical treatments, or other details regarding *how* each member meets the class definition), "'[t]he commonality requirement may be met when individual circumstances of class members differ,' as long as class members' 'injuries derive from a unitary course of conduct.'". *Ramirez v. Riverbay Corp.*, 39 F.Supp.3d 354, 364 (S.D.N.Y. 2014) (quoting *Espinoza v. 953 Assocs., LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011)); *see also Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) ("That the injury arising from the [challenged conduct] may manifest itself differently depending on a [class member's] situation does not defeat the commonality of the class's injury.").

Answering any one of these common legal questions "does not involve the circumstances of any individual [class member]," *Elisa W.*, 82 F.4th at 125, and will "drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (citation omitted). Should the Court agree that Plaintiffs' identifying and sensitive health information warrant constitutional and legal protection, all class members will benefit from the requested relief, which includes a declaration to that effect and an injunction preventing Defendants from obtaining or providing that information.

Because the questions of fact and law common to the Class and NYU Subclass, when answered, will in one stroke drive resolution of the asserted classwide federal constitutional and state law claims, the commonality requirement of Rule 23(a) is satisfied.

### C.    The Representatives' Claims Are Typical of the Class.

"[W]here the claims of a class stem from a single course of conduct, 'the commonality and typicality requirements of Rule 23(a) tend to merge.'" *Elisa W.*, 82 F.4th at 128 (quoting *Wal-Mart*, 564 U.S. at 349 n.5). "Typicality requires that claims of [would-be] class representatives be typical

of those of the class, and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (quoting *Barrows*, 24 F.4th at 131).

Here, Plaintiffs allege claims typical of the proposed Class and NYU Subclass. *See* Fed. R. Civ. P. 23(a)(3). "[T]he same unlawful conduct was directed at or affected both the named plaintiffs and the prospective class" such that the typicality requirement is met under controlling law. *Stinson v. City of New York*, 282 F.R.D. 360, 371 (S.D.N.Y. 2012); *see also Robidoux*, 987 F.2d at 936-37 (typicality may be met irrespective of minor factual variations underlying individual claims).

Typicality is satisfied here for largely the same reasons that commonality is satisfied. *See Marisol A.*, 126 F.3d at 376 ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."). Each proposed class member, including the proposed class representatives, faces the same principal injury (infringement of informational privacy rights, unreasonable search and seizure, and, for the NYU Subclass, violation of physician-patient privilege), based on the same course of action (DOJ's demand identifying and health information of class members who received medical treatment for gender dysphoria at NYC-based healthcare institutions as minors, and, for the NYU Subclass, any disclosure and production of that information by the NYU Defendants), which is unlawful as to the entire class because it violates legal guarantees against such intrusions. Plaintiffs thus share an identical interest in seeking declaratory and injunctive relief here.

Moreover, as with commonality, any factual differences that might exist here between Plaintiffs and proposed class members are not enough to defeat typicality. *See*, *e.g.*, *Ayzelman*, 238 F.R.D. at 363 (typicality satisfied where each class member was subject to the same practice notwithstanding minor variations in how they were subject to it); *V.W. by & through Williams v.*

14

*Conway*, 236 F.Supp.3d 554, 576 (N.D.N.Y. 2017) (typicality satisfied where plaintiffs' claims were "based on the common application of certain challenged policies").

### D.    The Representatives Will Fairly and Adequately Protect the Interests of the Class.

Plaintiffs fulfill the final requirement that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement exists to ensure that the named representatives will "have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). The adequacy requirement is met where plaintiffs "seek broad based relief ... [and] the interests of the class members are identical despite the individualized problems of each plaintiff." *Nat'l L. Ctr. on Homelessness & Poverty v. New York*, 224 F.R.D. 314, 325 (E.D.N.Y. 2004). Only a "fundamental" conflict can defeat a motion for class certification, and no such conflict is present here. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citation omitted).

Plaintiffs will fairly and adequately protect the interests of the proposed class. Plaintiffs do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class members. Instead, Plaintiffs aim to secure relief that will protect them and the entire class from Defendants' challenged conduct and to enjoin Defendants from further violations. Plaintiffs have no incentive to deviate from this class relief, nor do Plaintiffs seek financial gain at the cost of absent class members' rights. There are no differences that create "conflicts of interest between named parties and the class they seek to represent." *Id*. (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)); *see also* Coe Decl. ¶ 10; Roe Decl. ¶ 10; Noe Decl. ¶ 10; Koe Decl. ¶ 10; Doe Decl. ¶ 10.

E.      **Class Counsel Is Adequate and Should Be Appointed Under Rule 23(g).**

Proposed class counsel will represent the Class and NYU Subclass fairly and adequately. Plaintiffs' attorneys have identified and thoroughly investigated all claims in this action and have committed significant resources to represent the Class and NYU Subclass through trial and any appeals.

Proposed class counsel from Lambda Legal, the ACLU, and NYCLU include experienced attorneys with extensive experience in cases involving the rights of transgender people and class action litigation. Hodgson Decl. ¶¶ 10-12; Strangio Decl. ¶¶ 3-5; Gonzalez-Pagan Decl. ¶¶ 14-35. As these declarations make clear, proposed class counsel have been appointed class counsel in several successful class action cases concerning the rights of LGBTQ people and in many complex civil rights class actions. Hodgson Decl. ¶¶ 10-12; Strangio Decl. ¶¶ 3-5; Gonzalez-Pagan Decl. ¶¶ 19, 25, 30, 35.

F.      **The Proposed Class Is Ascertainable.**

Although the implied requirement of ascertainability does not apply to Rule 23(b)(2) class actions, should it apply the proposed Class and NYU Subclass meet the requirement. *But see In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 203-04 (S.D.N.Y. 2022) (noting the Second Circuit imposes an implied requirement that the Class is ascertainable). "The ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries. This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Secs.*, 862 F.3d 250, 269 (2d Cir. 2017).

Here, the proposed Class is readily ascertainable because membership in the class is clearly objective. *Id*. The class is defined to include individuals who received specific, defined forms of medical care within a discrete time period from NYU and from other healthcare entities within a

16

discrete geographic location—New York City. As to the NYU Subclass, the very records at issue identify each subclass member. Because of this, identifying class members is administratively feasible.

### IV.    The Proposed Class Satisfies Rule 23(b)'s Requirements

Rule 23 requires that, in addition to satisfying the requirements of Rule 23(a), a putative class must also fall within one of the parts of subsection (b). Plaintiffs seek class certification under Rule 23(b)(2), which provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994) (finding Rule 23(b)(2) satisfied where plaintiffs "seek injunctive relief and they predicate the lawsuit on defendants' acts and omissions with respect to" the class). Rule 23(b)(2) "is most commonly relied upon by litigants seeking institutional reform" through classwide declaratory or injunctive relief. *Stinson*, 282 F.R.D. at 379 (quotations marks and citation omitted). Central to a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Rule 23(b)(2) is particularly appropriate here because Plaintiffs seek classwide injunctive and declaratory relief to address Defendants' unlawful conduct—namely, the DOJ Defendants' demand through the Subpoenas for the identifying and sensitive health information of class members, and the NYU Defendants' compelled production and disclosure of the same for the NYU Subclass. Indeed, Defendants' conduct apply generally to the class members and infringe class members' rights in the same way. Thus, because Plaintiffs seek a uniform remedy to enjoin

17

Defendant's unlawful conduct, this case fits squarely within the scope of Rule 23(b)(2). *See Nicholson*, 205 F.R.D. at 99 ("Several courts in the Second Circuit have found Rule 23(b)(2) satisfied when the nature of the relief sought by plaintiffs is injunctive and would benefit all class members."); *Marisol A. by Forbes v. Giuliani*, 929 F.Supp. 662, 692 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997); *cf. B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) (Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole" (citation omitted)). Such relief is precisely the type of remedial action for which Rule 23(b)(2) was designed. *See*, *e.g.*, 1 Newberg and Rubenstein on Class Actions, § 1:3 (6th ed. 2026) ("Rule 23(b)(2) . . . is typically employed in civil rights and other cases where monetary relief is not the primary remedy. The (b)(2) class action is often referred to as a "civil rights" or "injunctive" class suit."). As such, the Class and NYU Subclass are exactly the kinds of classes that Rule 23(b)(2) is meant to embrace. The Class's interests are sufficiently related to warrant aggregate litigation.

## CONCLUSION

The Court should certify the proposed Class under Rule 23(a) and 23(b)(2), appoint the Plaintiffs as Class Representatives, and appoint the undersigned counsel as Class Counsel.

Dated: June 2, 2026

Respectfully submitted,

/s/ Omar Gonzalez-Pagan

Robert Hodgson
Gabriella Larios
Anya Weinstock
**New York Civil Liberties Union Foundation**
125 Broad Street, 19th Floor
New York, New York 10004
Telephone: 212-607-3300
rhodgson@nyclu.org
glarios@nyclu.org
aweinstock@nyclu.org

Chase B. Strangio
Shana Knizhnik*
**American Civil Liberties Union Foundation**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: 212-549-2500
Facsimile: 212-549-2650
cstrangio@aclu.org
sknizhnik@aclu.org

Elizabeth Gill*
**American Civil Liberties Union Foundation**
425 California Street, Suite 700
San Francisco, California 94104
Telephone: 415-343-0779
egill@aclu.org

* Motions for admission *pro hac vice* forthcoming

Omar Gonzalez-Pagan
Karen L. Loewy
**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, New York 10005
Telephone: 212-809-8585
Facsimile: 855-535-2236
ogonzalez-pagan@lambdalegal.org
kloewy@lambdalegal.org

Nora Huppert*
**Lambda Legal Defense and Education Fund, Inc.**
3656 N. Halsted Street
Chicago, Illinois 60613
Telephone: 312-605-3233
Facsimile: 855-535-2236
nhuppert@lambdalegal.org

A.D. Sean Lewis*
**Lambda Legal Defense and Education Fund, Inc.**
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
Telephone: 213-382-7600
Facsimile: 855-535-2236
alewis@lambdalegal.org

## <u>CERTIFICATION UNDER LOCAL CIVIL RULE 7.1(c)</u>

In accordance with Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, promulgated pursuant to 28 U.S.C. § 2071 and Fed. R. Civ. P. 83, the undersigned certifies that the word count in this memorandum of law (not including the caption, table of contents, table of authorities, and signature block as well as this certification), as established using the word count function on the word-processing system used to prepare it, complies with the word-count limitations of this Court and is 5,797 words.

Dated: June 2, 2026
New York, New York                                      */s/ Omar Gonzalez-Pagan*
                                                                    Omar Gonzalez-Pagan

20