UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARTER COE, by and through his parent and
next friend, CAROLINE COE; REED ROE,
by and through his parent and next friend,
RILEY ROE; NICOLE NOE, by and through
her parent, NORMAN NOE; KARL KOE;
and JAY DOE, *on behalf of themselves and
all similarly situated*,

Plaintiffs,

-v.-

TODD BLANCHE, in his official capacity as
Acting Attorney General of the United States;
U.S. DEPARTMENT OF JUSTICE; NYU
LANGONE HEALTH SYSTEM; NYU
LANGONE HOSPITALS; and NYU
GROSSMAN SCHOOL OF MEDICINE, A
DIVISION OF NEW YORK UNIVERSITY,

Defendants.

Case No.: 1:26-Civ.-04641-JAV

**NYU DEFENDANTS' MEMORANDUM IN RESPONSE
TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Defendants NYU Langone Health System, NYU Grossman School of Medicine, and NYU

Langone Hospitals (collectively, "NYU Langone" or "NYULH"), by and through their

undersigned attorneys, respectfully submit this memorandum in response to Plaintiffs' Motion for

a Temporary Restraining Order ("TRO") in this action (ECF No. 8).  For the reasons set forth

below, NYULH does not oppose the entry of the requested TRO as to NYULH, insofar as it seeks

to enjoin NYULH from "disclosing or producing any identifying or sensitive health information

of Plaintiffs and members of the [putative] NYU Subclass" (*see* Proposed TRO, ECF No. 8-1 at

3).[1]

---

[1] NYULH takes no position with respect to Plaintiffs' request for class certification.

1

## PRELIMINARY STATEMENT

NYULH is currently subject to compulsory criminal process issued by a federal grand jury sitting in the Northern District of Texas, namely: Subpoena No. R26 TXN 53130 (the "GJ Subpoena"). *See* Complaint (ECF No. 1) at Ex. A.[2]  The GJ Subpoena seeks, *inter alia*, a broad array of documents, including identifiable medical, treatment, and billing records of patients who, while they were minors, received gender affirming care at NYULH between January 2020 and May 2026.[3]  *See Id.* at 3–5.[4]  NYULH fully acknowledges the understandable concern of the putative class members in this action – patients and their parents – about the potential disclosure of information revealing the most intimate aspects of their or their children's lives, sexual identities, health, and treatment.  Those serious concerns animate this action and Plaintiffs' request that the Court enjoin such disclosure, both preliminarily and permanently.  NYU Langone also recognizes the sovereign interests of the State of New York, as articulated in the State's amicus filing in this action.  ECF No. 36 (the "AG Amicus Brief"); *see also* New York CPLR 4504(a).

---

[2] The GJ Subpoena is directed to NYU Langone Hospitals; on its face, the GJ Subpoena extends to the Hospital's affiliates and parent organizations.

[3] As discussed further below, the GJ Subpoena was issued shortly after the withdrawal of an administrative subpoena, issued under the Health Insurance Portability and Accountability Act of 1996, 18 U.S.C § 3486 (HIPAA) to NYU Langone Hospitals in June of 2025, which also sought, *inter alia*, identifiable patient medical and billing records (the "HIPAA Subpoena").  While NYULH produced documents responsive to the HIPAA Subpoena, it has not so far produced, pursuant to either the HIPAA Subpoena or the GJ Subpoena, any patient records or information, and has undertaken not to do so prior to the return date of the GJ Subpoena, which has been extended, by agreement with DOJ, to June 24, 2026.

[4] References are to the pagination of the GJ Subpoena, which appears at pages 49–50 of ECF No. 1 in this action.

NYULH finds itself "between the Scylla of intentionally flouting state law and the Charybdis" of disregarding a federal grand jury subpoena that itself has the force of law. *Steffel v. Thompson*, 415 U.S. 452, 462 (1974).  NYULH is thus confronted by the conflicting claims of the putative plaintiff class seeking to enjoin disclosure of patient records and information under New York and federal law, and DOJ's demand for production of those same records under the GJ Subpoena.  Pending judicial determination as to which of these interests should prevail, and to what extent, NYULH has endeavored to protect patient privacy in two significant ways.

First, NYULH has negotiated with DOJ regarding the redaction of identifiable patient information, including medical and billing records, with each record to be labeled with an individual code number created by, and known only to, NYULH and its counsel in lieu of the redacted patient identifiers.  DOJ has agreed to accept records in such a redacted format, subject to possible requests to "un-mask" or "un-redact" such records at a future stage of DOJ's investigation.

Second, NYULH has negotiated a reservation of right with DOJ, under which NYULH reserves its right to oppose any requests to "un-mask" or "un-redact" the records, if made in the future, and DOJ reserves its right to press them, with both parties having the ability to seek judicial determination of the issue before the court with supervisory authority over the Grand Jury's investigation.  Consistent with these undertakings, NYULH is presently and actively in the process of redacting these records.  NYULH accordingly does not object to the Court's maintenance of the status quo pending determination of the merits of Plaintiffs' request for preliminary injunctive relief.

## RELEVANT FACTUAL BACKGROUND

### A.  NYU Langone Hospitals and the Transgender Youth Health Program

NYU Langone Hospitals, the NYU entity to which the GJ Subpoena was issued, is a New York nonprofit corporation and is licensed under Article 28 of the New York Public Health Law as a hospital, with campuses in New York City and on Long Island, employing nearly 9,000 providers and providing world-class medical treatment, in every category of care, to nearly 112,000 hospital inpatients per year.  As is relevant to the present controversy, from 2016 until 2026, NYU Langone operated the Transgender Youth Health Program (the "TYHP"),[5] offering gender affirming care ("GAC") to patients under the age of eighteen, including the prescription of puberty blockers and/or hormones for gender dysphoria.  GAC is intended to align the physical sex characteristics of a patient with their gender identity.[6]  As described in the AG Amicus Brief, GAC, for both minor and adult patients, is both entirely lawful in the state of New York (ECF No. 36 at 16–17, n.8) and,

---

[5] The TYHP closed in February 2026 in the face of (1) the devastating, and potentially imminent threatened consequences of continuing to offer gender affirming prescriptions to minors, including the Hospital's potential exclusion from participation in federal healthcare programs by the Office of the Inspector General of the Department of Health and Human Services; (2) the pendency of a soon-to-be-finalized Proposed CMS Regulation (Condition of Participation) that would require a hospital participating in the Medicare and Medicaid programs, like NYU Langone Hospitals, not to offer medical or surgical care to minor patients (*see* 90 Fed. Reg. 59463–78 (Dec. 19, 2025)); and (3) the departure of the TYHP's medical director from NYULH as of February 20, 2026,, which departure left the TYHP without the appropriate specialized clinical leadership necessary to continue the TYHP.  NYULH continues to provide gender affirming mental health care to minors following the closure of the TYHP.  NYULH continues to treat transgender minors in all other respects, and it continues to provide all types of GAC to adult patients.

[6] Under New York law, "[g]ender-affirming care" is defined as "any type of care provided to an individual to affirm their gender identity or gender expression" and provides that the provision of such care shall not, by itself, constitute professional misconduct. N.Y. Educ. Law § 6531-b(1)(c), (2).

pursuant to state law, must be covered by both the Medicaid program and by private insurers (*id.* at 17–19, n.9–10, 13–15).

### B. DOJ's Investigation of NYULH'S Provision of Gender Affirming Care to Minors

#### 1. *DOJ Issues a HIPAA Subpoena Seeking NYULH Records*

On June 11, 2025, the former Consumer Protection Branch of DOJ's Civil Division in Washington, D.C., issued Subpoena Duces Tecum No. 25-1431-015 to NYU Langone Hospitals (the "HIPAA Subpoena"), under the authority of Section 248 of the Health Insurance Portability and Accountability Act of 1996, 18 U.S.C. § 3486, a true and correct copy of which appears as Exhibit A, to the accompanying Declaration of Zachary A. Cunha. The HIPAA Subpoena commanded NYULH to appear before DOJ officials in Washington, D.C., and to produce documents on or before July 9, 2025. *Id.* NYULH met and conferred with DOJ at least 15 times subsequent to service of the HIPAA Subpoena to negotiate the scope and timing of productions. As noted *supra* at n.1, while NYULH made seven rolling productions in response to the HIPAA Subpoena over the course of approximately ten months, none of these included patient records or other patient information.

The HIPAA Subpoena defined the "Relevant Time Period" as January 1, 2020, through the date of service and sought fifteen categories of documents relating to "gender-related care" provided to minors, including NYULH personnel files, billing and coding records, communications with pharmaceutical manufacturers, patient medical records, informed consent documents, and records of adverse events. Ex. A at 2, 5–7.[7]

---

[7] References are to the pagination of the HIPAA Subpoena.

### 2. *DOJ Withdraws the HIPAA Subpoena and Issues the GJ Subpoena*

On May 6, 2026, DOJ withdrew the HIPAA Subpoena. The following day, May 7, 2026, DOJ issued the GJ Subpoena out of the Northern District of Texas, commanding NYU Langone to appear and produce documents before a grand jury on June 10, 2026.[8]  The GJ Subpoena defines the "Relevant Time Period" as January 1, 2020, through May 5, 2026, and seeks seventeen categories of documents that substantially overlap with the withdrawn HIPAA Subpoena, including identifiable patient medical and billing records.  Most significantly, the GJ Subpoena demands identification of every minor patient who received GAC at NYU Langone, each such patient's complete clinical record "from initial consultation to the most recent treatment provided," all informed consent and parental authorization documents, all adverse event records, and all diagnostic coding and billing records related to the GAC provided to minor patients (the "Patient Records").[9]

---

[8] Consistent with the stipulation embodied in Plaintiffs' June 4, 2026 motion for an extension of time (ECF No. 23), DOJ subsequently agreed that no healthcare institution in New York City, specifically including NYULH, would be required to produce any materials covered by this lawsuit prior to June 24, 2026; NYULH likewise undertook not to produce such information prior to that date.

[9] *See* GJ Subpoena requests 2, 3, 12, 13, 14, 16.

## ARGUMENT

As discussed above, DOJ claims it has a right to production of the Patient Records pursuant to the GJ Subpoena, issued in furtherance of an investigation of purported federal healthcare offenses.  Should NYULH fail to comply, it faces the possibility of contempt proceedings in the Northern District of Texas.

In direct tension with that compulsion and threat, the Plaintiffs assert that NYU Langone is prohibited under New York law from producing the Patient Records, and that they have constitutionally protected privacy interests in those records. Should NYU Langone produce them in response to the GJ Subpoena, the Plaintiffs argue it will violate state law and their privacy rights. Specifically, both the Plaintiffs and the state Attorneys General, including New York (the "State Amici"), assert that New York law – specifically N.Y. CPLR § 4504(a) – prohibits disclosure of information acquired during medical treatment absent express waiver by a patient. The statute states:

> Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing, dentistry, podiatry or chiropractic shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.

N.Y. CPLR § 4504(a).

The Plaintiffs argue that NYULH's production of the Patient Records in response to the GJ Subpoena would disclose medical information acquired during the course of treatment that is subject to New York state privilege laws under New York CPLR § 4504(a).  They also seek to enjoin DOJ from requesting or obtaining their personal information and records in response to the GJ Subpoena on a constitutional basis, asserting rights under the Fourteenth Amendment's

7

protections for informational privacy and the Fourth and Fifth Amendments of the United States Constitution.

NYULH thus faces both the threat of proceedings to enforce compliance with the GJ Subpoena if Patient Records are not provided to the Grand Jury and potential liability under New York state law or in violation of whatever restraint this Court may impose in adjudicating Plaintiffs' substantive claims, in the event that it is compelled to produce those same records to DOJ. Under these circumstances, NYULH respectfully submits that its status relative to the dispute between Plaintiffs' request for relief and the competing demands of the GJ Subpoena is best conceived as that of an interpleader plaintiff, who holds a res to which two or more competing demands or interests apply. *See, e.g. Wash. Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993) ("[W]hat triggers interpleader is a real and reasonable fear of double liability or vexatious, conflicting claims.") (citation omitted).

Consistent with the principles of interpleader, to the extent that the issues of patient privacy and redaction raised in this case are not resolved by agreement of the parties, should this matter proceed to consideration on the merits, NYULH anticipates formally seeking this Court's direction as to whether, and in what form, the Patient Records and information subject to this action may be produced. As reflected by NYULH's prior discussions with DOJ, NYULH remains willing both to engage in the substantial effort of redaction required to protect patient privacy and is actively implementing that process, while at the same time taking steps to preserve its rights – and the rights of the patient Plaintiffs – to argue against any future unmasking or re-identification of these materials. Absent a judicial determination, however, NYULH faces the untenable prospect of dual liability. Pending a determination in this Court, in the form of a decision on the merits of Plaintiffs'

8

request for preliminary injunctive relief, NYULH does not oppose the entry of a TRO to preserve the status quo with respect to the production of Patient Records.

## CONCLUSION

For the reasons discussed above, NYULH does not oppose the entry of the requested TRO as to NYULH, insofar as it seeks to enjoin NYULH from "disclosing or producing any identifying or sensitive health information of Plaintiffs and members of the [putative] NYU Subclass," pending adjudication of Plaintiffs' request for preliminary and/or permanent injunctive relief.

Dated: New York, New York
      June 15, 2026

                            Respectfully submitted,

                            **NIXON PEABODY LLP**

By:     */s/ Zachary A. Cunha*
         Zachary A. Cunha (ZC 5946)
         55 West 46th Street
         New York, New York 10036
         Tel.: (212) 940-3000
         zcunha@nixonpeabody.com

         *Attorneys for Defendants*
         *NYU Langone Health System*
         *NYU Langone Hospitals and*
         *NYU Grossman School of Medicine*

## WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that the foregoing memorandum of law contains 2,295 words, excluding any cover page, caption, table of authorities, table of contents, signature blocks, and this certification. In making this certification, I rely on the word count supplied by Microsoft Word, the word-processing program used to prepare the foregoing document.

Dated: New York, New York
      June 15, 2026

                            */s/ Zachary A. Cunha*
                            Zachary A. Cunha