**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CARTER COE, BY AND THROUGH HIS
PARENT AND NEXT FRIEND, CAROLINE
COE, et al.,

                                           No. 26 Civ. 4641 (JAV)

                              Plaintiffs,

            -against-

TODD BLANCHE, et al.,

                              Defendants

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ........................................................................................................................... 2

    I.     This Court cannot interfere with a grand jury investigation allegedly conducted in a different federal district and supervised by a different federal district court....................... 2

    II.    Plaintiffs are not likely to succeed on their Fifth Amendment claim................................. 6

    III.   Plaintiffs are not likely to succeed on their Fourth Amendment claim........................... 10

        A.   Plaintiffs are unlikely to succeed in overcoming the third-party doctrine. .............. 10

        B.   Regardless, Plaintiffs cannot carry their burden in this Court...................................11

    IV.   Plaintiffs' state law claims fail. ....................................................................................... 13

    V.    The Court should not enter classwide relief. .................................................................... 14

        A.   Absent class certification, the Court cannot grant relief to nonparties. .................... 14

        B.   Plaintiffs fail to meet Rule 23's standards................................................................. 15

    VI.   The non-merits factors do not favor preliminary relief. ................................................... 23

CONCLUSION........................................................................................................................ 25

## TABLE OF AUTHORITIES

**CASES**

*AARP v. Trump*,
605 U.S. 91 (2025).............................................................................................. 15

*Airbnb, Inc. v. City of New York*,
373 F. Supp. 3d 467 (S.D.N.Y. 2019) ................................................................ 24

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...................................................................................... 21, 22

*Barrows v. Becerra*,
24 F.4th 116 (2d Cir. 2022) ................................................................................ 19

*Becker v. Kroll*,
494 F.3d 904 (10th Cir. 2007) .............................................................................. 7

*Blair v. United States*,
250 U.S. 273 (1919)............................................................................................... 8

*Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
934 F.2d 30 (2d Cir. 1991) ................................................................................. 25

*Branzburg v. Hayes*,
408 U.S. 665 (1972)...................................................................................... *passim*

*Carpenter v. United States*,
585 U.S. 296 (2018)..............................................................................................11

*Cheney v. U.S. Dist. Court*,
542 U.S. 367 (2004).............................................................................................. 4

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992)................................................................................................. 15

*City of Rome v. Verizon Commc'ns, Inc.*,
362 F.3d 168 (2d Cir. 2004) ................................................................................. 5

*Cmty. for Creative Non-Violence v. Pierce*,
786 F.2d 1199 (D.C. Cir. 1986).......................................................................... 13

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998).............................................................................................. 7

*Doe (1) v. Univ. of Kan. Hosp. Auth.*,
2025 WL 1634958 (D. Kan. June 9, 2025)......................................................... 21

*Doe v. City of New York*,
   15 F.3d 264 (2d Cir. 1994) ................................................................................. 7

*Doe v. Luzerne Cnty.*,
   660 F.3d 169 (3d Cir. 2011) ............................................................................. 18

*Elisa W. v. City of New York*,
   82 F.4th 115 (2d Cir. 2023) ....................................................................... 15, 18

*Ferguson v. City of Charleston*,
   532 U.S. 67 (2001)............................................................................................11

*Flores v. Anjost Corp.*,
   284 F.R.D. 112 (S.D.N.Y. 2012) ...................................................................... 16

*Gen. Telephone Co. of S.w. v. Falcon*,
   457 U.S. 147 (1982)........................................................................................... 15

*Hancock v. County of Rensselaer*,
   882 F.3d 58 (2d Cir. 2018) ..................................................................... 7, 8, 10

*In re Ashley Madison Customer Data Sec. Breach Litig.*,
   2016 WL 1366616 (E.D. Mo. Apr. 6, 2016) .................................................... 21

*In re Biaggi*,
   478 F.2d 489 (2d Cir. 1973)............................................................................. 24

*In re Grand Jury Investigation in New York County*,
   779 N.E.2d 173 (NY 2002) ............................................................................... 13

*In re Grand Jury Subpoena*,
   781 F.2d 238 (2d Cir. 1986) (en banc) ........................................................... 10

*In re Grand Jury Subpoena Dated Nov. 18, 1994 v. United States*,
   1995 WL 84173 (W.D.N.Y. Feb. 24, 1995) ..................................................... 13

*In re Sealed Case*,
   794 F.2d 749 (D.C. Cir. 1986)......................................................................... 25

*In re Subpoena Duces Tecum*,
   228 F.3d 341 (4th Cir. 2000).......................................................................... 25

*J.R. v. Atrium Health, Inc.*,
   2024 WL 3032890 n.4 (W.D.N.C. June 17, 2024)........................................... 20

*Kim v. Allison*,
   87 F.4th 994 (9th Cir. 2023)............................................................................ 22

iii

*Levine v. United States*,
   362 U.S. 610 (1960) .................................................................................................... 1

*Matsushita Elec. Indus. Co. v. Epstein*,
   516 U.S. 367 (1996) .................................................................................................. 14

*Mercado v. Noem*,
   800 F. Supp. 3d 526 (S.D.N.Y. 2025) ...................................................................... 15

*NASA v. Nelson*,
   562 U.S. 134 (2011) .................................................................................................... 6

*New York Times v. Gonzales*,
   459 F.3d 160 (2d Cir. 2006) .................................................................................. 4, 5

*Newsom v. Trump*,
   141 F.4th 1032 (9th Cir. 2025) ................................................................................ 25

*Nixon v. Administrator of General Services*,
   433 U.S. 425 (1977) .................................................................................................... 6

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) .............................................................................. 16

*O'Connor v. Pierson*,
   426 F.3d 187 (2d Cir. 2005) ...................................................................................... 7

*Pittsburgh Plate Glass Co. v. United States*,
   360 U.S. 395 (1959) .................................................................................................. 24

*Polardo v. Adelberg*,
   2023 WL 2664612 (S.D.N.Y. Mar. 28, 2023) ..........................................................11

*Powell v. Schriver*,
   175 F.3d 107 (2d Cir. 1999) ...................................................................................... 7

*Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ...................................................................................... 16

*Rapuano v. Trs. of Dartmouth Coll.*,
   334 F.R.D. 637 (D.N.H. 2020) ................................................................................. 20

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010) ...................................................................................... 25

*Samia v. United States*,
   599 U.S. 635 (2023) .................................................................................................. 25

iv

*Shapiro v. Cadman Towers, Inc.*,
   51 F.3d 328 (2d Cir. 1995) ................................................................................................ 23

*Sherman v. Trinity Teen Sols., Inc.*,
   339 F.R.D. 203 (D. Wyo. 2021) ........................................................................................ 21

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) .......................................................................................................... 14

*Tom Doherty Assocs. v. Saban Entm't, Inc.*,
   60 F.3d 27 (2d Cir. 1995) .................................................................................................. 25

*TransUnion LLC v. Ramirez*,
   594 U.S. 413, (2021) ......................................................................................................... 13

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) .......................................................................................................... 14

*Trump v. United States*,
   603 U.S. 593 (2024) .......................................................................................................... 12

*Trump v. Vance*,
   481 F. Supp. 3d 161 (S.D.N.Y. 2020) .............................................................................. 24

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .......................................................................................................... 17

*United States v. Calandra*,
   414 U.S. 338 (1974) ............................................................................................................ 9

*United States v. Dionisio*,
   410 U.S. 1 (1973) ................................................................................................................ 9

*United States v. Interstate Dress Carriers, Inc.*,
   280 F.2d 52 (2d Cir. 1960) ................................................................................................ 24

*United States v. McClintock*,
   748 F.2d 1278 (9th Cir. 1984) ............................................................................................ 3

*United States v. Miller*,
   425 U.S. 435 (1976) .......................................................................................................... 11

*United States v. R. Enterprises., Inc*,
   498 U.S. 292 (1991) .................................................................................................. *passim*

*United States v. Williams*,
   504 U.S. 36 (1992) .............................................................................................................. 3

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011). ...................................................................................................*passim*

*Whalen v. Roe*,
  429 U.S. 589 (1977) ........................................................................................................ 6

*Wayte v. United States*,
  470 U.S. 598 (1985) ...................................................................................................... 13

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .......................................................................................................... 23

## RULES

Fed. R. Civ. P. 23 .............................................................................................. 16, 20, 23

Fed. R. Civ. P. 45 ...................................................................................................... 4

Fed. R. Crim. P. 6 .................................................................................................... 24

Fed. R. Crim. P. 6(e) ........................................................................................... 1, 12

## OTHER AUTHORITIES

Elias Neibart, *The Rise of the All-Writs-Act-Putative-Class-Injunction?*,
  77 Baylor L. Rev. 681 (2025) ................................................................................. 14

## PRELIMINARY STATEMENT

Plaintiffs make an extraordinary request of this Court: issue an injunction prohibiting compliance with a grand jury subpoena they say was issued by a different district court. Plaintiffs do not offer a *single past example* of such an order. That is because grand jury subpoenas are subject to judicial supervision, but the supervising court is the one that issues the subpoena. Indeed, "[t]he grand jury is an arm of the court." *Levine v. United States*, 362 U.S. 610, 617 (1960). This Court can no more review proceedings in the Northern District of Texas than that Court can review this Court's actions. If Plaintiffs wish to seek quashal of a subpoena they say was issued by the Northern District of Texas, they are free to move to quash in that court.

Plaintiffs' choice to instead file a civil case in this Court, and to seek a temporary restraining order, leaves their request without precedent. It also makes them unable to meaningfully support their Fourth and Fifth Amendment claims. Plaintiffs, this Court, and the NYU hospital entities ("Hospital Defendants") lack basic facts to meaningfully evaluate questions about an alleged grand jury subpoena, and grand jury secrecy prevents the Department from even confirming or denying the existence of a grand jury subpoena. *See* Fed. R. Crim. P. 6(e). And Plaintiffs do not even claim knowledge of other grand jury subpoenas they believe exist, leaving them unable to show that even provisional class certification is permissible.

Nor do the non-merits considerations favor Plaintiffs. Their irreparable harm theory depends on *public* disclosure of their medical records or transgender status, ignoring the alleged grand jury context. And the public interest and balance of equities decisively favor permitting grand juries to investigate whether crimes have been committed.

**BACKGROUND**

Plaintiffs claim that, on May 7, 2026, a grand jury in the Northern District of Texas issued a subpoena to Hospital Defendants directing them to produce certain records related to treatment of minor patients with gender dysphoria. Pursuant to Federal Rule of Criminal Procedure 6(e), the Department is not presently permitted to confirm or deny this assertion.

On May 11, citing New York's Shield Law, Hospital Defendants posted a notice on their website disclosing the existence of the alleged subpoena and its general requirements. Several families of children who received treatment from NYU Langone during the time period allegedly covered by the subpoena brought this motion for a temporary restraining order to bar disclosure of their medical records to United States pursuant to the alleged subpoena. They seek certification of a class encompassing certain patients from all New York City hospitals, as well as a subclass of certain NYU Langone patients.

**ARGUMENT**

I.  **This Court cannot interfere with a grand jury investigation allegedly conducted in a different federal district and supervised by a different federal district court.**

A challenge to a federal grand jury subpoena belongs in the district court supervising the grand jury that issued the subpoena, not in a separate federal district through collateral civil litigation. The Federal Rules of Criminal Procedure expressly govern all proceedings in criminal cases, including proceedings related to grand jury investigations, and Rule 17(c) provides the exclusive mechanism for challenging grand jury subpoenas. "The court" which has the ongoing authority to supervise the grand jury investigation and litigate claims related to its process—and which, under Rule 6(e), is responsible for determining any requests for disclosure of grand jury materials—is the only appropriate court to decide Plaintiffs' claims. "Grand juries are subject to judicial control and subpoenas to motions to quash"—not collateral civil litigation. *Branzburg v.*

*Hayes*, 408 U.S. 665, 708 (1972). Granting Plaintiffs' request would circumvent the rules of criminal procedure and encroach on the authority of the supervising district court over its own process. Not surprisingly, Plaintiffs have not cited a single case upholding this novel procedure.

The Supreme Court has recognized that grand jury subpoenas remain subject to the supervision of the issuing court overseeing the grand jury investigation. *United States v. R. Enters., Inc*, 498 U.S. 292, 298-301 (1991) (A "grand jury subpoena issued through normal channels" is presumed reasonable, and motions to quash are evaluated by the supervising court in light of the grand jury's broad investigative authority); *United States v. Williams*, 504 U.S. 36, 47 (1992) (recognizing historic independence of the grand jury and the limited role of courts in interfering with grand jury investigations). Courts likewise have recognized that challenges to grand jury subpoenas belong before the issuing court supervising the grand jury investigation. *See, e.g.*, *United States v. McClintock*, 748 F.2d 1278, 1285 (9th Cir. 1984) (district court may exercise its supervisory power over grand jury proceedings only where necessary to deter official misconduct and protect judicial integrity). Disputes concerning compliance with a federal grand jury subpoena—including motions to quash, requests for protective relief, or assertions of privilege—must be directed to the issuing court, not litigated collaterally in another federal district.

It is easy to see why the Criminal Rules channel challenges to grand jury subpoenas to the district where the criminal investigation or prosecution is being conducted. Permitting a separate federal district court to entertain collateral challenges to a subpoena issued by a grand jury sitting in another district would improperly intrude upon the issuing court's supervisory authority, create the risk of inconsistent rulings among federal courts, and disrupt the orderly administration of federal criminal investigations. Only by having all such questions addressed by the supervisory court can consistency be ensured and the grand jury's overall conduct be effectively monitored.

The distinct features of grand juries explain why grand jury subpoenas are subject to challenge only in the court that issued the subpoena, unlike other subpoenas that can be challenged in "the district where compliance is required." Fed. R. Civ. P. 45(d). More generally, the Supreme Court has emphasized that the grand jury's investigative powers are necessarily broad and courts should avoid unnecessary interference with its functioning. *Branzburg*, 408 U.S. at 688 ("the longstanding principle that 'the public … has a right to every man's evidence'" applies with particular force in the grand jury context); *R. Enters.*, 498 U.S. at 297 (grand jury's investigative power must be broad if its responsibilities are to be adequately discharged). Those principles are undermined if a non-issuing district court attempts to supervise or restrain compliance with a grand jury subpoena issued under the authority of another federal court in an ongoing criminal investigation.

Principles of comity and judicial restraint thus strongly weigh against this Court issuing an injunction that interferes with a grand jury subpoena allegedly issued by a federal grand jury sitting in another district. Such an injunction would improperly intrude upon proceedings pending before another federal court and undermine the orderly administration of criminal justice. Moreover, such relief would raise serious separation-of-powers concerns because it would effectively restrain a lawful Executive Branch criminal investigation through collateral civil process. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 381-82 (2004) (recognizing separation-of-powers concerns arising from judicial intrusion into Executive Branch functions). Just as the Northern District of Texas does not superintend this Court's grand jury proceedings, this Court should decline Plaintiffs' inappropriate attempt to place this Court in the position of superintending alleged grand jury proceedings in the Northern District of Texas via coercive process issued to the United States or Hospital Defendants.

Plaintiffs cite *New York Times v. Gonzales*, 459 F.3d 160 (2d Cir. 2006), as permitting such interference. They claim that *Gonzales* amounts to "confirm[ation of] the propriety of district

4

courts entertaining claims by third parties harmed by an actual or potential grand jury subpoena from another jurisdiction." TRO Mot. 6. Not so. *Gonzales* considered only the possibility of a *declaratory judgment*, which is "less formidable" and "milder" remedy than the injunction Plaintiffs seek. *City of Rome v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 174 n.3 (2d Cir. 2004). Plaintiffs do not request a declaratory judgment as part of their TRO motion, nor could they. Neither rule nor statute recognizes a *preliminary* declaratory judgment. Instead, a declaratory judgment is just that—a judgment. This case is not close to a posture conducive to a final judgment: Plaintiffs filed their complaint less than two weeks ago, Defendants have not yet filed a responsive pleading, and neither side has filed a dispositive motion. Moreover, in *Gonzales*, the plaintiffs professed that it was "unknown whether subpoenas have been issued to telephone carriers or not, and if so, whether the carriers have already complied." 459 F.3d at 167. That meant there was a prospect that the declaration did not interfere with *any* grand jury subpoenas and that alternative forms of relief, such as moving to quash, were unavailable. *Id.* at 167 (observing that "a motion to quash is not available if the subpoena has not been issued"). Here, by contrast, Plaintiffs profess certainty that a grand jury subpoena has issued, and unlike the *Gonzales* plaintiffs, they have simply opted not to avail themselves of the option to challenge the alleged subpoena in the issuing court. If anything, the fact that Plaintiffs cite *Gonzales* as their *best* case simply illustrates that they are asking the Court to take an unprecedented step by issuing an injunction forbidding compliance with another district court's grand jury subpoena. [1] This Court should decline to do so.

---

[1] In response to a similar request, a district court has entered an order "intended solely to 'protect its jurisdiction' pending consultation with the parties as to the timeline for the Court's resolution of" a TRO motion. ECF No. 52, *Z.A. v. Lucile Salter Packard Children's Hosp. at Stanford*, No. 5:26-cv-4998 (N.D. Cal. June 11, 2026). That order is no precedent for the temporary restraining order Plaintiffs seek.

5

II.    **Plaintiffs are not likely to succeed on their Fifth Amendment claim.**

Plaintiffs' Fifth Amendment claim rests on the novel proposition that informational-privacy principles may be invoked to limit compliance with lawful grand jury subpoenas. To our knowledge, no court has applied the doctrine in that manner. The authorities on which Plaintiffs rely arose in different contexts involving government collection, maintenance, or dissemination of personal information and did not address the government's authority to obtain evidence through compulsory process in a criminal investigation. In any event, even assuming substantive due process could constrain a grand jury subpoena in some exceptional case, such a claim can only be assessed by the court supervising the grand jury—because grand jury secrecy means that only the supervising court could balance the asserted privacy interest against the grand jury's need for the evidence and the government's compelling interest in compliance. In this posture, Plaintiffs cannot show likely success on their Fifth Amendment claim.

The Supreme Court has never held that the Fifth Amendment protects a right to informational privacy. And in the few cases where the Court *assumed* that such a right exists, it has underscored the limited nature of any such doctrine. In *Whalen v. Roe*, the Court upheld a state law requiring the collection of patient-identifying prescription information, emphasizing that "[r]equiring such disclosures to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy." 429 U.S. 589, 600-06 (1977). In *Nixon v. Administrator of General Services*, the Court upheld a federal statute requiring former President Nixon to turn over presidential papers and recordings for government review, relying in part on safeguards against undue dissemination of private materials. 433 U.S. 425, 457-59 (1977). And most recently, in *NASA v. Nelson*, the Court rejected the claim because the information-gathering practices were accompanied by protections against public disclosure. 562 U.S. 134, 146-48, 155-59 (2011).

The Second Circuit's decisions likewise concern government disclosure or misuse of personal information after it was obtained, not the government's authority to compel production of evidence during a criminal investigation. *Doe v. City of New York*, 15 F.3d 264, 267-69 (2d Cir. 1994); *Powell v. Schriver*, 175 F.3d 107, 111-13 (2d Cir. 1999); *O'Connor v. Pierson*, 426 F.3d 187, 201-03 (2d Cir. 2005); *Hancock v. County of Rensselaer*, 882 F.3d 58, 64-68 (2d Cir. 2018). Those cases recognize, at most, a limited and context-specific privacy interest evaluated under a balancing framework. None suggests that informational-privacy principles authorize a court to bar compliance with an otherwise valid grand jury subpoena in a collateral proceeding.

Indeed, the standards governing informational-privacy claims further illustrate why Plaintiffs' novel claim is doomed to fail. When assessing a substantive-due-process challenge to executive action, courts apply a uniquely demanding standard: liability attaches only if the challenged conduct is so "arbitrary" as to "shock the conscience." *O'Connor*, 426 F.3d at 203. "Mere irrationality is not enough: 'only the most egregious official conduct' … will subject the government to liability for a substantive due process violation based on executive action." *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). And because this standard can be met "in only the most extreme circumstances," substantive-due-process liability for executive action "typically involv[es] some violation of physical liberty or personal physical integrity." *Becker v. Kroll*, 494 F.3d 904, 923 (10th Cir. 2007); *see Lewis*, 523 U.S. at 849 ("conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level"). Grand jury subpoenas as part of a criminal investigation bear little resemblance to these cases.

The substantive-due-process framework fits Plaintiffs' challenge poorly for other reasons. The Supreme Court's "concern with preserving the constitutional proportions of substantive due

7

process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Lewis*, 523 U.S. at 850. This analysis "depends on the state of mind of the government actor and the context in which the action was taken." *Hancock*, 882 F.3d at 66. Plaintiffs' attempt to apply that test in a collateral proceeding "ignores that grand jury proceedings are subject to strict secrecy requirements." *R. Enters.*, 498 U.S. at 299. Even if Rule 6(e) were no bar, "[r]equiring the Government to explain in too much detail the particular reasons underlying a subpoena threatens to compromise 'the indispensable secrecy of grand jury proceedings.'" *Id.* (citation omitted). This is precisely why the sort of objection that Plaintiffs raise here must be presented, if at all, to the supervising court under the procedures set out in Rule 17. *See supra* § I.

No ad hoc interest-balancing is required to conclude that Plaintiffs may not invoke their privacy interests to veto an alleged grand jury investigation. "[M]ost situations in which a government actor accesses an individual's personal information will not require the application of a balancing test to determine whether a due process violation has occurred." *Hancock*, 882 F.3d at 66. To the extent a grand jury's receipt of evidence implicates constitutionally protected privacy interests, such "a breach of privacy takes a form courts have previously approved." *Id.* The Supreme Court's pronouncements on this score are clear: "The function of the grand jury is to inquire into *all* information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *R. Enters.*, 498 U.S. at 297 (emphasis added). Thus, "[a] grand jury investigation 'is not fully carried out until *every* available clue has been run down and *all* witnesses examined in every proper way to find if a crime has been committed.'" *Branzburg*, 408 U.S. at 701 (citation omitted) (emphasis added); *see also, e.g.*, *Blair v. United States*, 250 U.S. 273, 282 (1919) ("It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or

forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime."). This explains why "a witness has no right of privacy before the grand jury," which is entitled to "responses [that] might prove embarrassing or result in an unwelcome disclosure of his personal affairs." *United States v. Calandra*, 414 U.S. 338, 353 (1974).

In short, the Supreme Court has repeatedly reaffirmed the grand jury's broad constitutional authority to compel evidence during its investigation. And it has repeatedly declined to adopt "[a]ny holding that would saddle a grand jury with minitrials and preliminary showings [that] would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio*, 410 U.S. 1, 17 (1973). Accepting Plaintiffs' invitation to subject grand jury subpoenas to a "multifactor test" focused on interest balancing "would invite procedural delays and detours while courts evaluate the relevancy and admissibility of documents sought by a particular subpoena." *R. Enters.*, 498 U.S. at 298. And such an approach, particularly in this Court, would improperly "compromise 'the indispensable secrecy of grand jury proceedings'" by "[r]equiring the Government to explain in too much detail the particular reasons underlying a subpoena." *Id.* at 299.

Plaintiffs' reliance on cases applying multifactor balancing tests to administrative subpoenas, employment records, or civil disclosure requirements is therefore misplaced. Whatever force those considerations may have in other contexts, neither the Supreme Court nor the Second Circuit has held that informational privacy authorizes a court to enjoin compliance with an otherwise lawful grand jury subpoena. Extending the doctrine in that manner would be irreconcilable with the grand jury's historically broad investigative authority.

Finally, even if balancing were appropriate and somehow possible despite grand jury

9

secrecy, the balance would easily favor the government. Plaintiffs' claimed expectation of privacy in medical records held by third parties is incompatible with the disclosures that NYU and Mount Sinai provide to patients and their families.[2] Both institutions expressly notify patients that they may disclose personal health information for a variety of reasons, including for law enforcement purposes. NYU Notice 2-3 ("responding to a court or administrative order" or "law enforcement"); Mount Sinai Notice 4 ("if we are required by law to do so"; "to government agencies authorized to conduct audits, investigations, and inspections of our facility"; and "to law enforcement officials … [t]o comply with court orders to laws that we are required to follow"). Given these disclosures, the notion that patients could reasonably expect their medical information to be shielded from a lawful federal subpoena is fanciful. Whatever privacy interest may persist cannot overcome the compelling interest in the functioning of the grand jury. *Hancock*, 882 F.3d at 67 (a "sufficiently weak" privacy interest "can be overwhelmed by even a moderately strong government interest in disclosure"); *In re Grand Jury Subpoena*, 781 F.2d 238, 249 (2d Cir. 1986) (en banc) ("Even where constitutional rights are involved," courts are "reluctant to create constitutional exemptions to the duty to appear before a grand jury and furnish relevant information.").

III.    **Plaintiffs are not likely to succeed on their Fourth Amendment claim.**

    A.    **Plaintiffs are unlikely to succeed in overcoming the third-party doctrine.**

    The third-party doctrine squarely applies to Plaintiffs' assertion of Fourth Amendment protections over medical records because they are business records held by third parties (the Hospital Defendants) and regularly disclosed by Hospital Defendants in the ordinary course of their business. The Supreme Court has long held that "a person has no legitimate expectation of

---

[2] *See* Ex. A, NYU Langone Health Notice of Privacy Practices, https://nyulangone.org/files/notice-of-privacy-practices.pdf (effective March 1, 2025); Ex. B, Mount Sinai Notice of Privacy Practices, https://www.mountsinai.org/files/MSHealth/Assets/HS/About/Compliance/Notice-of-Privacy-Practices-NOPP%20-English.pdf (revised October 2019).

privacy in information he voluntarily turns over to third parties," and thus "the Government is typically free to obtain such information from the recipient without triggering Fourth Amendment protections." *Carpenter v. United States*, 585 U.S. 296, 308 (2018). This is true "even if the information is revealed [to the third party] on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *United States v. Miller*, 425 U.S. 435, 443 (1976). Hospital Defendants' disclosure of business records in their usual course of business is no exception. Compl. Ex. B. Courts regularly conclude that medical records such as the ones at issue are subject to the third-party doctrine. *See Polardo v. Adelberg*, 2023 WL 2664612, at 16 n.15 (S.D.N.Y. Mar. 28, 2023) (collecting cases).

Plaintiffs' authority is unavailing. They cite *Ferguson v. City of Charleston* to suggest that patients maintain a reasonable expectation of privacy as to their medical records as a matter of law, even where those records have been shared with a hospital. TRO Mot. 19 (quoting 532 U.S. 67, 78 (2001)). But *Ferguson* expressly reserved whether the third-party doctrine applied. 532 U.S. at 78. Similarly, Plaintiffs cite *Carpenter*, but *Carpenter* itself clarifies that it is confined to the unique features of that case (i.e. cell phone location information). 585 U.S. at 315-16. Accordingly, *Carpenter* did not purport to overrule previous third-party doctrine cases. *Id.* Instead, *Carpenter* addressed the novel issue of the government's acquisition of wireless carrier cell-site records that necessitated reconciling two conflicting lines of precedent. *Id.* at 306-09. No such novel issue exists here, so the Court remains constrained by precedent regarding the third-party doctrine and to therefore conclude that Plaintiffs are not likely to succeed on their Fourth Amendment claim.

**B.    Regardless, Plaintiffs cannot carry their burden in this Court.**

Setting aside threshold problems, Plaintiffs' principal Fourth Amendment argument is that the alleged grand jury does not need Plaintiffs' medical records and is instead engaged in a fishing expedition. TRO Mot. 22-23. This argument is indistinguishable from arguments Plaintiffs would

11

press in a motion to quash the alleged grand jury subpoena, and it can be meaningfully addressed only in the court that allegedly issued the process—not this Court. In this Court, Plaintiffs cannot begin to carry their burden to show likely success. Without access to the materials before a grand jury and an understanding of its investigation, Plaintiffs cannot possibly prove—and this Court cannot meaningfully assess—relevance (to what crime? on what theory?), necessity (what other avenues has the alleged grand jury pursued?), a fishing expedition (what information was before the alleged grand jury?), or overall purpose. Nor can the Department supply answers to such questions consistent with grand jury secrecy. *See* Fed. R. Crim. P. 6(e). Those basic failures illustrate why a district court supervising a grand jury must be the one to hear any concerns about the legitimacy of the investigation, the grand jury's good faith, and the evidence's relevance.

Plaintiffs also argue in passing that "DOJ has no purpose other than to intimidate and harass Plaintiffs and their healthcare providers," solely citing conclusions of district courts regarding *administrative* subpoenas that are presently on appeal. TRO Mot. 22-23. The Department emphatically rejects that characterization. As explained in those cases, government opposition to certain medical interventions for minors does not render pretextual and improper any investigation involving those practices. Any contrary rule would immunize from investigation any industry or practice that an administration is opposed to as a policy matter, endangering consumers and undermining core Executive Branch prerogatives to develop and implement enforcement priorities. Would an administration that pursued or supported new legislation to ban practices of social media companies, or one that advocated for new gun control measures, be unable to also heighten its enforcement of existing laws governing those industries? The rule recently favored by district courts considering challenges to administrative subpoenas is impossible to square with the core executive power to exercise enforcement discretion in prioritizing what misconduct to

12

investigate. The Executive Branch possesses the "exclusive authority and absolute discretion," *Trump v. United States*, 603 U.S. 593, 620 (2024) (quotation omitted), to decide "how to prioritize and how aggressively to pursue legal actions against defendants who violate the law," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429, (2021). "The power to decide when to investigate, and when to prosecute, lies at the core of the Executive's duty to see to the faithful execution of the laws," *Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986), and "the Government's enforcement priorities" are a legitimate consideration in decisions about whether to prosecute, *Wayte v. United States*, 470 U.S. 598, 607 (1985).

This case is not comparable to those cases in any event. Those cases involved administrative subpoenas issued under 18 U.S.C. § 3486, and the Department defended the subpoenas' relevance to potential violations of the Food, Drug & Cosmetic Act. Grand jury subpoenas, however, are not limited to FDCA investigations. And here, Plaintiffs' chosen forum makes it impossible for either side to present, or the Court to evaluate, arguments about relevance, overbreadth, and the like. Plaintiffs are unlikely to succeed on their Fourth Amendment arguments.

## IV.    Plaintiffs' state law claims fail.

Plaintiffs are likewise unlikely to succeed on their state law claims. They argue that Hospital Defendants' disclosure of patient records would constitute a breach of physician-patient confidentiality, codified in CPLR 4504(a). But state law cannot preempt federal law or prevent the operation of any federal grand jury. Plaintiffs cite *In re Grand Jury Investigation in New York County*, 779 N.E.2d 173, 176-77 (NY 2002) for the proposition that "[a] hospital may breach its obligations under CPLR 4504(a) even when compelled to disclose medical records by a grand jury subpoena." TRO Mot. 24-25. That case concerned a *state* grand jury subpoena. 779 N.E.2d at 174. Plaintiffs offer no legal authority suggesting a state statute may supersede a federal grand jury subpoena. *See In re Grand Jury Subpoena Dated Nov. 18, 1994 v. United States*, 1995 WL 84173,

13

at *2 (W.D.N.Y. Feb. 24, 1995) (rejecting motion to quash federal grand jury subpoena based on CPLR 4504).

### V.      The Court should not enter classwide relief.

#### A.      Absent class certification, the Court cannot grant relief to nonparties.

Federal courts cannot issue relief "to *everyone* potentially affected by an allegedly unlawful act," regardless of party-status. *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025). Instead, judicial remedies are limited to parties. Prior to class certification, putative class members are nonparties. Unlike members of a *certified* class, members of a *putative* class are not bound by any resulting judgment. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("Neither a proposed class action nor a rejected class action may bind nonparties."); *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 379 (1996) ("[A]ll members of the class … are bound by the judgment entered in the action."). Relief in favor of a putative class—unlike a certified class—is thus relief issued for nonparties, and it thus exceeds "the maximum a court can provide." 606 U.S. at 854. The pre-*CASA* decisions Plaintiffs cite, TRO Mot. 4, rely on a pre-*CASA* understanding of courts' equitable powers.

Bearing this out, putative-class injunctions share many features of universal injunctions. Like a universal injunction, putative-class injunctions circumvent "Rule 23's procedural protections and allow courts to create *de facto* class actions at will." *CASA*, 606 U.S. at 849 (quotation omitted). Unlike rulings regarding certified classes, putative-class injunctions are plagued by the same asymmetry, which "equity abhors," as universal injunctions, where unsuccessful plaintiffs can file seriatim lawsuits until they prevail, while unsuccessful defendants need only lose once. Elias Neibart, *The Rise of the All-Writs-Act-Putative-Class-Injunction?*, 77 Baylor L. Rev. 681, 705 (2025). And putative-class injunctions are unlike "[d]ecrees obtained on a bill of peace"—the historic analog to today's class action, which "would bind all members of the group." *CASA*, 606 U.S. at 848 (quotation omitted).

14

To be sure, the Supreme Court once authorized temporary relief for a putative class. *AARP v. Trump*, 605 U.S. 91 (2025). But *AARP* was decided before *CASA* made clear that relief to non-parties is beyond what a federal court can provide. And in *AARP*, the "temporary injunctive relief to the putative class" was necessary "in order to preserve [the Court's] jurisdiction pending appeal." *Id.* at 97. No such issue is present here. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12-15 (1992) (compliance with subpoena does not moot challenge to subpoena). The Court should not read *AARP* to authorize a putative-class injunction.

### B.    Plaintiffs fail to meet Rule 23's standards.

Plaintiffs fall back on a request for provisional class certification. TRO Proposed Order 1. Even "provisional" class certification requires full Rule 23 analysis. *Mercado v. Noem*, 800 F. Supp. 3d 526, 559 (S.D.N.Y. 2025). "[C]ourts that label preliminary certification 'provisional' employ that term to signal that the certification will dissolve if the injunction does, *not* to suggest they undertook less than a full Rule 23 analysis." *Id.* (quoting Newberg and Rubenstein on Class Actions § 4:30). A plaintiff "must affirmatively demonstrate his compliance" with Rule 23. *Dukes*, 564 U.S. at 350. As the Supreme Court has explained, "Rule 23 does not set forth a mere pleading standard." *Id.* Instead, a "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* The movant must do so by a preponderance of the evidence. *Elisa W. v. City of New York*, 82 F.4th 115, 127 (2d Cir. 2023). And "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]'" *Dukes*, 564 U.S. at 350-51 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable." *Falcon*, 457 U.S. at 160.

Plaintiffs' motion cannot bear that scrutiny. They fail to affirmatively show numerosity,

15

commonality, typicality, and adequacy, and their proposed class falls outside Rule 23(b)(2).

**1. Numerosity.** Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, a class of more than 40 members satisfies the numerosity requirement. *Cons. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs do not need to provide a precise headcount, but they must offer evidence or a reasonable estimate of the actual class size from which this Court can draw reasonable inferences. *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004). They key word is reasonable—this Court may connect dots that the evidence supports connecting, but it may not speculate. *Flores v. Anjost Corp.*, 284 F.R.D. 112, 123 (S.D.N.Y. 2012).

Plaintiffs fail to supply actual evidence of numerosity. Start with the Janssen declaration, filed in a *different* case. To the extent it can be considered evidence for Plaintiffs' motion in *this* case, the declaration says nothing about the population of patients during the relevant time: It covers 2015 to 2020, while the alleged subpoena allegedly seeks records from 2020 to 2026. And neither the declaration nor Plaintiffs offer a non-speculative way to translate those numbers to the relevant population or time period. The declaration's reference to 200 families also fails to track the specific subset of patients whose records are allegedly sought by the subpoena Plaintiffs filed in this Court. Plaintiffs' invocation of polls about the number of individuals age 10-24 who identify themselves as transgender across New York State is even farther afield. Class Mot. 10. Plaintiffs again offer no reasonable method of translating such a poll into an estimate of the number of individuals who could fall within their proposed class, let alone proposed subclass of NYU Langone patients, based on medical interventions received from specific hospitals.

"[E]vidence of exact size or identity of class members is not required," but "pure speculation or bare allegations" is insufficient. *Flores*, 284 F.R.D. at 123. Because their numerosity

16

argument is purely speculative, Plaintiffs fail to affirmatively show numerosity.

**2. Commonality, typicality, and Rule 23(b)(2)**. A single problem defeats Plaintiffs' attempt to show commonality and typicality: Their proposed class sweeps in individuals who received gender-related medical interventions at *any* New York City hospital, but those individuals are not similarly situated with respect to Plaintiffs' claims. Plaintiffs claim to be certain that NYU Langone has received a grand jury subpoena, and they allege a belief that Mount Sinai and unnamed other hospitals in New York City have also received grand jury subpoenas. *See* Compl. ¶ 114. If Plaintiffs were correct, that would mean they are trying to certify a class based on *different* government actions regarding *different* third-party actors (the hospitals), only some of whom are named as defendants in this action. Separate grand jury subpoenas may have different demands and may be issued to investigate different potential violations of the law, and each recipient of a grand jury subpoena may adopt a different strategy for engaging with the government upon receipt.

On Plaintiffs' telling, prospective class members suffer injuries from different government actions—alleged grand jury subpoenas issued to different hospitals. That defeats commonality and typicality. Commonality requires a common answer to a common question among class members, "where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration in original) (quotation omitted); *accord Dukes*, 564 U.S. at 350 (for commonality purposes, class's claims must "depend upon a common contention" which "must be of such a nature that it is capable of classwide resolution"). In other words, commonality "requires the plaintiff to demonstrate that the class members have suffered [or will soon suffer] the same injury." *Dukes*, 564 U.S. at 350. While it is true that a single common question will do, whether each class member "suffered a violation of the same provision of law" is not enough. *Dukes*, 564

17

U.S. at 350. Rather, "[c]ommonality requires the plaintiffs to demonstrate that the class members have suffered the same injury." *Id.* (quotations omitted). Where, on Plaintiffs' telling, prospective class members are injured by *different* government actions, which Plaintiffs cannot prove are materially identical, that defeats susceptibility of the questions to common proof or affirmative demonstration that common classwide answers are possible.

Plaintiffs' supposed common question of fact can be broken down in the exact way *Dukes* warns against. Plaintiffs' Did the Department issue subpoenas? Did the subpoenas seek medical records? Will NYU Defendants imminently disclose the records?" questions mirror the *Dukes* recitation of "Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice?" *Id.* This Court should hold, as did *Dukes*, that "[r]eciting these questions is not sufficient to obtain class certification." *Id.*

The bottom line is that Plaintiffs fail to affirmatively demonstrate that they have presented any issue capable of classwide resolution in "one stroke," *Dukes*, 564 U.S. at 350, because they seek to cram together claims arising from separate alleged subpoenas to separate medical institutions, without any affirmative showing that the same claims arise from the distinct alleged government actions. Plaintiffs assert that answering to the questions they articulate "does not involve the circumstances of any individual [class member]." Class Mot. 13 (quoting *Elisa W.*, 82 F.4th at 125). Not so. For one, even assuming a privacy interest sometimes allows a non-recipient to challenge a subpoena on the grounds that Plaintiffs raise, Plaintiffs fail to substantiate their argument that the entire class shares the same privacy interest in the requested records. *Cf. Doe v. Luzerne Cnty.*, 660 F.3d 169, 176 (3d Cir. 2011) ("Privacy claims under the Fourteenth Amendment necessarily require fact-intensive and context-specific analyses, and unfortunately, bright lines generally cannot be drawn."). Plaintiffs also seek to define a class consisting of patients who were

treated at several different hospitals, despite attaching an alleged subpoena allegedly served on just one hospital. As a result, Plaintiffs fail to convince that the Court can provide a "common answer[]" throughout the class. *Dukes*, 564 U.S. at 350 (quotation omitted). Commonality is therefore lacking.

Typicality, which "tend[s] to merge," with commonality, *Dukes*, 564 U.S. at 349 n.5, requires a showing that the class representatives' claims are typical of the class members' claims, *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022). That is satisfied when "each member's claim arises from the same course of events." *Id.* But here, Plaintiffs are all aggrieved by the alleged subpoena to NYU Langone, while they seek to represent a class consisting of individuals who may be aggrieved by alleged subpoenas allegedly issued to other medical institutions—with no affirmative showing whatsoever that other alleged subpoenas have the same terms, could be vulnerable to the same claims, or even exist at all. That defeats typicality.

Certifying a class despite those differences is especially dangerous when it comes to a Rule 23(b)(2) class, which binds all class members and prevents them from pursuing claims or seeking relief arising from the same factual nexus outside the class. If a Rule 23(b)(2) class member needs additional relief of a different kind or could press additional claims based on his or her particular circumstances, that class member is still bound to the judgment, win or lose, and cannot pursue relief on his or her own. Courts should not lightly place an absent class member in that position when there are signs of a lack of commonality or typicality.

Indeed, for essentially the same reasons, Rule 23(b)(2) treatment is not appropriate here. Under Rule 23(b)(2), Plaintiffs must show that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class

19

is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (citation omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* Again, because Plaintiffs claim certainty about exactly one alleged grand jury subpoena but seek to represent a class that includes individuals who received medical treatments at other hospitals, which Plaintiffs say may or may not have received similar or different subpoenas, that standard is not met here. The proposed class sweeps in patients of every "healthcare institution located in New York City." Class Mot. 4. Plaintiffs fall far short of affirmatively showing that every class member faces a certainly impending threat of disclosure— they themselves have no way of knowing the extent of compliance, negotiation, or even contents of all the alleged subpoenas they seek to enjoin, at least against hospitals other than NYU Langone. The indivisible-remedy requirement of Rule 23(b)(2) is satisfied only when every class member is entitled to the requested relief. Where a significant portion of the class could not independently seek the injunctions Plaintiffs request, that class fails the (b)(2) test.

**3. Adequacy.** Last, proceeding pseudonymously imperils Plaintiffs' ability to serve as adequate class representatives. Courts have repeatedly expressed "concerns about the prospect of a pseudonymous plaintiff acting as a class representative." *Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 649 (D.N.H. 2020); *see J.R. v. Atrium Health, Inc.*, 2024 WL 3032890, at *1 n.4 (W.D.N.C. June 17, 2024) ("[S]ome out-of-circuit courts have not permitted class representatives to proceed pseudonymously in litigation because it hampers the evaluation of the class representatives' ability to represent the entire class."). Pseudonymity makes it "unclear how [p]laintiffs [can] satisfy their burden to show adequacy when they are unknown or how they would

20

evaluate potential conflicts with other class members." *Doe (1) v. Univ. of Kan. Hosp. Auth.*, 2025 WL 1634958, at *4 (D. Kan. June 9, 2025); *see Sherman v. Trinity Teen Sols., Inc.*, 339 F.R.D. 203, 206 (D. Wyo. 2021) ("If Plaintiff proceeds under a pseudonym, it will be difficult to ascertain if Plaintiff and his counsel can fairly and adequately protect the interests of the class."); *In re Ashley Madison Customer Data Sec. Breach Litig.*, 2016 WL 1366616, at *4-5 (E.D. Mo. Apr. 6, 2016) (plaintiffs could not proceed pseudonymously as class representatives because the class members and public had interest in knowing who was guiding and directing the litigation).

The Department does not oppose Plaintiffs' wish to use pseudonyms; but Plaintiffs' choice to proceed pseudonymously imperils the Court's and the parties' ability to determine whether they are adequate class representatives. To determine adequacy, the Court must consider whether there are "conflicts of interest between named parties and the class they seek to represent," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997), and whether the named parties "possess the same interest and suffer the same injury as the class members," *id.* at 625 (quotation omitted). Adequacy "also factors in competency and conflicts of class counsel." *Id.* at 626 n.20. The Court cannot evaluate whether Plaintiffs are credible, conflict-free representatives of a class of allegedly hundreds without knowing who they are. Nor can it assess whether their litigation decisions are driven by genuine class interests or by an idiosyncratic personal circumstance that might not reflect the class as a whole. The Court has nothing more than Plaintiffs' assertion that they "have no incentive to deviate from this class relief" and that their interests are identical to those of absent class members. Class Mot. 15. That assertion cannot substitute for the showing Rule 23 requires.

Even assuming anonymity does not prevent adequacy finding, a conflict of interest exists between Plaintiffs and other members of the proposed class. The proposed class encompasses not only patients and families who oppose disclosure and who share the named representatives' policy

21

views, but also patients and families who hold contrary views—who may support enforcement of patient protection laws, who may have no objection to their records being produced, or who may actively prefer disclosure as a matter of personal conviction or legal strategy. A class representative who seeks to block the investigation entirely cannot adequately represent a class member who does not. It follows that, without more, the Court cannot conclude that Plaintiffs "possess the same interest and suffer the same injury" as the proposed class members, *Amchem*, 521 U.S. at 594 (quotation omitted), and that the proposed class is conflict-free, *cf., e.g.*, *Kim v. Allison*, 87 F.4th 994, 1000-01 (9th Cir. 2023) (conflict of interest when, "by maximizing their own interests, the putative representatives … would necessarily undercut the interests of another portion of the class"). Also, given that the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a)," the issues preventing findings of commonality and typically—especially with respect to putative class members that could be affected by hypothetical subpoenas in the future—also demonstrate that "the named plaintiff's claim and the class claims are [not] so interrelated," and "that the interests of the class members will [not] be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20.

Plaintiffs' response—that the requested relief "would benefit all class members" by protecting their privacy regardless of their views on the merits—is circular. It assumes that every member of the proposed class shares the named representatives' assessment that disclosure is harmful and that the investigation is illegitimate. That assumption is not established, and on a class of this breadth cannot be assumed. This *ipse dixit*—especially when putative class members may well disagree with Plaintiffs' evaluation of the Department's investigation—does not cut it. *Cf. Dukes*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard.").

Under Rule 23(b)(2), Plaintiffs must show that Defendants have "acted or refused to act on

22

grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (citation omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* That standard is not met here. The proposed class sweeps in patients of every "healthcare institution located in New York City." Class Mot. 4. The alleged subpoena at issue was served on NYU Langone. Plaintiffs allege "on information and belief" that Mount Sinai and unnamed "other New York City-based healthcare providers" also received subpoenas. *Id.* at 1. Plaintiffs fall short of establishing that every class member faces a certainly impending threat of disclosure—they themselves have no way of knowing the extent of compliance, negotiation, or even contents of all the subpoenas they seek to enjoin, at least against hospitals other than NYU Langone. The indivisible-remedy requirement of Rule 23(b)(2) is satisfied only when every class member is entitled to the requested relief. Where a significant portion of the class—here, patients of hospitals that have received no subpoena—could not independently seek the injunctions Plaintiffs request, that class fails the (b)(2) test.

## VI.     The non-merits factors do not favor preliminary relief.

**A. Irreparable harm.** Plaintiffs bear the burden to show that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). That showing is "essential to the issuance of a preliminary injunction." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995). Plaintiffs fail to make that showing.

First, Plaintiffs argue that violating their Fourth and Fifth Amendment rights would irreparably harm them. But Plaintiffs are not likely to show any such violation, for the reasons

23

explained above. This theory of irreparable harm fails with Plaintiffs' merits arguments.

Second, Plaintiffs argue that disclosure of their personal information would irreparably harm them. But the cases they cite to support that theory involve *public* disclosure, not disclosure to the government for law enforcement purposes. Plaintiffs lack authority for the idea that providing their records to the federal government in response to an alleged grand jury subpoena would constitute irreparable harm. Grand jury proceedings are subject to strict secrecy requirements. Fed. R. Crim. P. 6. The tradition of grand jury secrecy is "older than our Nation itself." *In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973) (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959)). And "the characteristic secrecy of grand jury proceedings is a further protection against" concerns about disclosure of personal information. *Branzburg*, 408 U.S. at 700. This case is utterly unlike the case Plaintiffs cite, *Airbnb, Inc. v. City of New York*, where disclosure under a freedom of information law of records surrendered to the government was a real, imminent threat built into the structure of the ordinance at issue there. 373 F. Supp. 3d 467, 499 (S.D.N.Y. 2019). By contrast, "[d]ocuments produced pursuant to a grand jury subpoena remain the property of the person producing them ... and their inspection by persons other than the grand jury and the prosecuting attorneys is therefore dependent upon the consent of the owner *or* upon a court order." *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960). This Court has drawn just this distinction. *Trump v. Vance*, 481 F. Supp. 3d 161, 164 (S.D.N.Y. 2020) (distinguishing *Airbnb* and rejecting irreparable harm "[b]ecause a grand jury is under a legal obligation to keep the confidentiality of its records").

The same answer goes for Plaintiffs' wholly speculative, unsupported concern about a "risk [of] public outing." TRO Mot. 27. "Irreparable harm is an injury that is not remote or speculative but actual and imminent." *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995).

A mere possibility is not enough. *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.2d 30, 34 (2d Cir. 1991). Yet Plaintiffs provide no reason to think that the breach of grand jury secrecy that would be required to publicly out anyone via materials submitted in response to any grand jury subpoena is anything but a remote, speculative possibility.

**B. Balance of hardships and public interest.** The Court also "must balance the hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010). The public and the government have a "compelling interest in finding, convicting, and punishing those who violate the law." *Samia v. United States*, 599 U.S. 635, 655 (2023) (citation omitted); *see Newsom v. Trump*, 141 F.4th 1032, 1054 (9th Cir. 2025) (recognizing government's "uncontested interest" in the "faithful execution of law."). And there is a strong "public interest in law enforcement and in ensuring effective grand jury proceedings." *Branzburg*, 408 U.S. at 690; *see, e.g.*, *In re Sealed Case*, 794 F.2d 749, 751 n.3 (D.C. Cir. 1986) (per curiam) (recognizing "the weighty public interest in the orderly functioning of grand juries and the judicial process"); *In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000) (interest in finding, convicting, and punishing those who violate the law far "outweighs the privacy rights of those whose [medical] records" are sought via administrative subpoena). Plaintiffs' contrary argument rests solely on the merits, TRO Mot. 27-28, and fails for the reasons already explained.

## CONCLUSION

The Court should deny Plaintiffs' motion. If the Court grants the motion, the Department respectfully requests that the Court stay its order pending appeal, or at minimum for 10 days.

Dated: June 15, 2026

Respectfully submitted,

| | |
|---|---|
| BRETT A. SHUMATE<br>Assistant Attorney General | SEAN BUCKLEY<br>Deputy United States Attorney<br>86 Chambers Street, 3rd Floor<br>New York, New York 10007 |

BRETT A. SHUMATE
Assistant Attorney General

JORDAN C. CAMPBELL
Deputy Assistant Attorney General

SARAH WELCH
Senior Counsel to the Assistant Attorney General

/s/ John Bailey
JOHN BAILEY
BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General

LISA K. HSIAO
Acting Director
Enforcement & Affirmative Litigation Branch

SHIMENG ZHANG
LUKE MILLER
EUGENE O'HALLORAN
Attorneys

United States Department of Justice
Civil Division
950 Pennsylvania Ave.
Washington, DC 20044
Tel:    202-514-6993
John.Bailey@usdoj.gov

SEAN BUCKLEY
Deputy United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007

26

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) and this Court's individual rules, the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court and, as measured by the word processing system used to prepare it, this memorandum is less than 25 pages and contains 8,262 words.

Dated: New York, New York

June 15, 2026

/s/ John Bailey
JOHN BAILEY
Counsel to the Assistant Attorney General

1