United States District Court
Southern District of New York

---

CARTER COE, by and through his parent and next friend, CAROLINE COE; REED COE, by and through his parent and next friend, RILEY COE; NICOLE COE, by and through her parent, NORMAN COE; and JAY DOE, *on behalf of themselves and all similarly situated*,

Plaintiffs,

- against -

No. 1:26-CV-04641 (JAV)

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; NYU LANGONE HEALTH SYSTEM; NYU LANGONE HOSPITALS; and NYU LANGONE GROSSMAN SCHOOL OF MEDICINE, A DIVISION OF NEW YORK UNIVERSITY,

Defendants.

---

# BRIEF FOR AMICUS CURIAE CITY OF NEW YORK IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

RICHARD DEARING
DEVIN SLACK
CHLOÉ K. MOON
GEOFFREY CURFMAN
JAMISON DAVIES
   *of Counsel*

June 16, 2026

STEVEN BANKS
*Corporation Counsel
of the City of New York*
Attorney for Amicus Curiae
100 Church Street
New York, New York 10007
212-356-2490
jdavies@law.nyc.gov

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...............................................................................................ii

PRELIMINARY STATEMENT  AND INTEREST OF AMICUS CURIAE .................1

ARGUMENT ......................................................................................................................2

      THE BROADER PUBLIC INTEREST AND THE EQUITIES WEIGH IN
      FAVOR OF GRANTING INJUNCTIVE RELIEF .............................................2

      A.   The City is deeply invested in ensuring safety and welfare of its
           residents and, in particular, its transgender youth. ................................3

      B.   Disclosure of health information pursuant to subpoenas will chill
           transgender patients from receiving the care they need and deserve.....6

CONCLUSION ...................................................................................................................8

CERTIFICATE OF COMPLIANCE ...........................................................................9

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .........................................................................................2

**Statutes**

N.Y. City Admin. Code § 8-107.........................................................................3

**Other Authorities**

Azeen Ghoravshi, *Report Reveals Sharp Rise in Transgender Young
   People in the U.S.*, N.Y. TIMES (June 10, 2022), available at
   https://tinyurl.com/4vr3ehyf ........................................................................3

Emily Baumgartner, *Gender Surgeries Nearly Tripled From 2016
   Through 2019, Study Finds*, N.Y. TIMES (Aug. 23, 2023), available
   at https://tinyurl.com/mpdetz58; ...................................................................4

Israel T. Agaku, et al., *Concern about security and privacy, and
   perceived control over collection and use of health information
   are related to withholding of health information from healthcare
   providers,* J. AM. MED. INFORMATICS ASS'N (2014), available at
   https://tinyurl.com/29twyv4j .........................................................................6

Jack Walker, *City-run gender-affirming care clinic for trans
   patients coming to New York City,* THE ADVOCATE (June 8, 2026),
   available at https://perma.cc/HVD4-FAM2 .....................................................5

Jason D. Wright et al., *National Estimates of Gender-Affirming
   Surgery in the US*, JAMA, Netw Open, 2023;6;(8):e2330348
   (Aug. 23, 2023), available at https://tinyurl.com/2n3wan3h ............................4

Matthew J. DePuccio, et al., *Patients' Perceptions About Medical
   Record Privacy and Security: Implications for Withholding of
   Information During the COVID-19 Pandemic*, J. GEN. INTERNAL
   MED. (July 2020), available at https://perma.cc/777N-LSH3 ...........................6

Mount Sinai, *Mount Sinai Center Is World Leader in Transgender
   Health Care*, available at https://tinyurl.com/3mnnf99p...............................5

N.Y. City Comm'n on Human Rights, *Legal Enforcement Guidance
   on Discrimination on the Basis of Gender Identity or Expression*
   (Feb. 15, 2019), available at https://perma.cc/ALZ8-QZGE.............................3

N.Y. City Dep't of Educ., *Guidelines to Support Transgender and
   Gender Expansive Students*, available at https://perma.cc/GYR9-
   DBH5 ..........................................................................................................4

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

N.Y. City Health, *Epi Data Brief No. 138* (Nov. 2023), available at
https://perma.cc/V57L-FUDJ .................................................................4

N.Y. City Health, *Epi Data Brief No. 145* (Mar. 2025), available at
https://perma.cc/MVR3-KX89 ...............................................................3

Nat'l Acad. Scis., Eng'g & Med., *Understanding the Well-Being of
LGBTQI+ Populations*, Ch. 12 (Patterson, Sepúlveda & White
eds., 2020), available at https://perma.cc/FLN8-RPAG ....................4

NYU Langone Health, *Transgender Health*, available at
https://perma.cc/RS58-2HB5 .................................................................5

Roger Hsieh, *Improving HIPAA Enforcement and Protecting
Patient Privacy in a Digital Healthcare Environment*, 46 Loy. U.
Chi. L.J. 175 (2014) ...............................................................................6

*Statement from NYCCHR Commissioner Annabel Palma Opposing
Proposed Federal Rule Targeting Transgender Care* (Jan. 20,
2026), available at https://perma.cc/KW6M-KXU6 .........................5

UCLA School of Law, Williams Institute, *LGBT Adults in Large US
Metropolitan Areas* (Mar. 2021), available at
https://perma.cc/5GNU-DKGX .............................................................3

### PRELIMINARY STATEMENT
### AND INTEREST OF AMICUS CURIAE

While the federal government launches attacks on transgender rights across the country, the City of New York is committed to supporting the trans community. We will protect their rights, defend their humanity, and stand beside them without hesitation. That includes ensuring access to gender-affirming care.

The City thus submits this amicus brief in support of plaintiffs' motion seeking to temporarily pause the federal government's attempt to wield grand jury subpoenas to force NYU Langone to disclose highly sensitive medical records of patients who have sought gender-affirming care. This effort—part of the current federal administration's broader campaign to bring an end to gender-affirming care for transgender youth—strikes at the heart of bedrock privacy interests that are both safeguarded by our Constitution and critical to preserving the free exchange of information between patients and their healthcare providers.

Few things are more personal and sensitive than medical records, which is why they are carefully shielded from unnecessary disclosure by all manner of federal and state laws even apart from the Constitution. When a patient's personal health information is disclosed without their consent, it gives rise to a profound and visceral sense of violation. Sadly, when the subpoenas here are considered alongside the federal government's larger campaign against gender-affirming care, it would seem that fostering that sense of violation is part of the point.

The City writes here to underscore how the public interest and the equities weigh heavily in favor of a temporary restraining order—to protect plaintiffs and their families. The importance of gender-affirming care to members of the New York City community cannot be overstated. With a long history of activism for rights

protecting gender minorities, the City is home to one of the largest transgender populations in the country, including many transgender minors and young adults. These residents face a wide range of healthcare challenges that uniquely affect their community. The City has a strong interest in ensuring they have access to appropriate medical care. But subpoenas like those at issue here will have a chilling effect on patients seeking treatment, making them less willing to seek out the care they need. The issuance of the subpoenas may have already shaken some patients' confidence in the privacy of their medical records. Actual disclosure would be much worse—it would be irreversible for the patients affected and deeply harmful for the broader community. These points provide strong reason to temporarily bar disclosure while the parties litigate the merits.

## ARGUMENT

### THE BROADER PUBLIC INTEREST AND THE EQUITIES WEIGH IN FAVOR OF GRANTING INJUNCTIVE RELIEF

In determining whether to grant a temporary restraining order, this court decides, among other factors, whether relief is in the public interest and is consistent with the balance of the equities. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Both factors point in the same direction here, and they strongly counsel in favor of granting the relief plaintiffs request and pausing compliance with the subpoenas, especially considering the dire consequences disclosure would carry for the health and well-being of New York City residents.

2

### A.    The City is deeply invested in ensuring safety and welfare of its residents and, in particular, its transgender youth.

Dating to events such as the Stonewall Inn uprising and one of the country's first Pride parades, New York City has long been an epicenter of the movement demanding equal rights based on sexual orientation and gender identity. The City has responded to that movement in part by passing laws that are among the country's most protective for members of the LGBTQIA+ community,[1] designed to make the City an inviting environment in which to live, work, build families, and seek other means of fulfillment. And the City has, in turn, welcomed an increasingly large LGBTQIA+ population, including those who are transgender. As of 2021, the New York City metro area had the largest population of LGBT residents in the nation, at over 700,000,[2] and by 2023, more than 150,000 adults living in the City identified as transgender specifically, with a higher percentage concentrated among those ages 18 through 24.[3] Consistent with that distribution, data covering New York State show that 3% of its teenage population identify as transgender, higher than any other state.[4]

As is true across the country, the City's transgender population faces healthcare challenges specific to their community that often stem from

---

[1] *See* N.Y. City Admin. Code § 8-107; N.Y. City Comm'n on Human Rights, *Legal Enforcement Guidance on Discrimination on the Basis of Gender Identity or Expression* (Feb. 15, 2019), available at https://perma.cc/ALZ8-QZGE.

[2] UCLA School of Law, Williams Institute, *LGBT Adults in Large US Metropolitan Areas* (Mar. 2021), available at https://perma.cc/5GNU-DKGX.

[3] N.Y. City Health, *Epi Data Brief No. 145* at 1 (Mar. 2025), available at https://perma.cc/MVR3-KX89.

[4] Azeen Ghorayshi, *Report Reveals Sharp Rise in Transgender Young People in the U.S.*, N.Y. TIMES (June 10, 2022), available at https://tinyurl.com/4vr3ehyf.

mistreatment and stigmatization, producing a wide range of health disparities affecting our residents and transgender youth in particular. For example, in 2023, more than 20% of the City's transgender adult population was estimated to suffer from serious psychological distress, compared to less than 10% of those who identified as cisgender.[5] For the City's younger transgender population, these challenges are often even more acute. In 2021, for instance, more than 70% of New York City high school students who identified as transgender reported feeling sadness or hopelessness, more than double the rate of students who did not identify as transgender.[6] Partly as a response to the higher risks of marginalization and victimization transgender youth often face, the New York City Department of Education instituted guidelines designed to affirm their identities, protect their privacy, and police discrimination in order to foster a more inclusive environment in City schools.[7]

In addition to non-medical measures like these, gender-affirming care is a form of intervention on which transgender City residents depend to address the myriad healthcare challenges they face. Growing evidence shows that gender-affirming treatments are medically necessary as a means of reducing distress and promoting wellbeing.[8] And evidence supports affirming interventions for adolescents

---

[5] N.Y. City Health, *Epi Data Brief No. 145* at 2 (Mar. 2025), available at https://perma.cc/MVR3-KX89.

[6] N.Y. City Health, *Epi Data Brief No. 138* at 2 (Nov. 2023), available at https://perma.cc/V57L-FUDJ.

[7] N.Y. City Dep't of Educ., *Guidelines to Support Transgender and Gender Expansive Students*, available at https://perma.cc/GYR9-DBH5.

[8] Nat'l Acad. Scis., Eng'g & Med., *Understanding the Well-Being of LGBTQI+ Populations*, Ch. 12 (Patterson, Sepúlveda & White eds., 2020), available at https://perma.cc/FLN8-RPAG.

in particular, with studies showing they can benefit from improved psychological functioning and reductions in gender dysphoria.[9]

These developments in medical evidence have coincided with rising national demand for gender-affirming procedures that has been no less pronounced in New York City,[10] where hospitals now offer gender-affirming care covering a wide range of healthcare needs.[11] And, to keep pace with the increasing need for care serving our transgender population, the City recently committed to opening its own transgender healthcare clinic.[12]

The City thus has a strong interest in ensuring access to the types of gender-affirming care that have been proven to improve health outcomes for our transgender population. These are members of our community who participate in all facets of daily life here—as family members, students, employers, employees, and much more. When they are unable to access care sufficient to meet their needs, they will suffer, as will their loved ones and the City more broadly.

---

[9] *See id.*

[10] Emily Baumgartner, *Gender Surgeries Nearly Tripled From 2016 Through 2019, Study Finds*, N.Y. TIMES (Aug. 23, 2023), available at https://tinyurl.com/mpdetz58; Jason D. Wright et al., *National Estimates of Gender-Affirming Surgery in the US*, JAMA Netw Open, 2023;6;(8):e2330348 (Aug. 23, 2023), available at https://tinyurl.com/2n3wan3h.

[11] *See, e.g.*, NYU Langone Health, *Transgender Health*, available at https://perma.cc/RS58-2HB5; Mount Sinai, *Mount Sinai Center Is World Leader in Transgender Health Care*, available at https://tinyurl.com/3mnnf99p.

[12] Jack Walker, *City-run gender-affirming care clinic for trans patients coming to New York City*, THE ADVOCATE (June 8, 2026), available at https://perma.cc/HVD4-FAM2.

### B.    Disclosure of health information pursuant to subpoenas will chill transgender patients from receiving the care they need and deserve.

The disclosure of sensitive health information pursuant to subpoenas such as those at issue here has far-reaching downstream effects on the City and its residents. The City is deeply invested in ensuring that all of its residents have access to appropriate medical care, as explained above. The City's transgender and gender nonconforming residents—especially minors and young adults—already face serious health and safety risks.[13] The release of their private information will only heighten those risks by chilling patients from seeking and accessing appropriate medical care.

These subpoenas present a serious barrier for an already vulnerable group of City residents. The possibility that private medical information may be released makes patients less likely to share relevant medical information with their providers[14] and less likely to seek medical care in the first place.[15] Even a perception of decreased privacy can cause negative health outcomes and lead to worse treatment.[16]

For transgender minors and young adults, the prospect of publicly released medical information is all the more threatening given the sensitive nature of their

---

[13] *See, e.g.*, *Statement from NYCCHR Commissioner Annabel Palma Opposing Proposed Federal Rule Targeting Transgender Care* (Jan. 20, 2026), available at https://perma.cc/KW6M-KXU6.

[14] Matthew J. DePuccio, et al., *Patients' Perceptions About Medical Record Privacy and Security: Implications for Withholding of Information During the COVID-19 Pandemic*, J. GEN. INTERNAL MED. (July 2020), available at https://perma.cc/777N-LSH3.

[15] Roger Hsieh, *Improving HIPAA Enforcement and Protecting Patient Privacy in a Digital Healthcare Environment*, 46 LOY. U. CHI. L.J. 175, 177 (2014).

[16] Israel T. Agaku, et al., *Concern about security and privacy, and perceived control over collection and use of health information are related to withholding of health information from healthcare providers*, J. AM. MED. INFORMATICS ASS'N (2014), available at https://tinyurl.com/29twyv4j.

6

records. Transgender patients will be less likely to seek medical care, whether it be for gender-affirming treatment or any other kind of medical treatment, with the possibility that their medical information may be released publicly. As plaintiffs explain, the information sought by the subpoenas contain intimate and sensitive details about minors' private medical treatment (Pls.' Mem. at 19-21). That is true of all medical records, which if shared publicly would erode patients' trust in doctors and prevent them from receiving the best possible care outcomes.

But the release of information that the subpoenas here seek places transgender patients at further risk because it relates to medical decisions about gender-affirming care for transgender minors and young adults—vulnerable populations seeking highly personal and specialized care—where the information could be used to embarrass, harass, or discriminate against the patient.[17] Without the relief requested here, transgender patients' information could be released, without their consent, and chill them and others like them from seeking care in the future when they need it. That outcome would be devastating for transgender individuals, especially transgender minors; for their families; and for their communities across the City of New York.

---

[17] Hsieh, *supra* n.17.

## CONCLUSION

This Court should grant plaintiffs a temporary restraining order.

Dated:     New York, New York
           June 16, 2026

Respectfully submitted,

STEVEN BANKS
*Corporation Counsel*
*of the City of New York*
Attorney for Amicus Curiae

By:     /s/ *Jamison Davies*
        JAMISON DAVIES
        Assistant Corporation Counsel

        100 Church Street
        New York, NY 10007
        212-356-2490
        jdavies@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
CHLOÉ K. MOON
GEOFFREY CURFMAN
JAMISON DAVIES
   *of Counsel*

8

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 1,845 words, not including the table of contents, table of authorities, this certificate, and the cover.

/s/ Jamison Davies
JAMISON DAVIES