**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CARTER COE, by and through his parent and next friend, CAROLINE COE; REED ROE, by and through his parent and next friend, RILEY ROE; NICOLE NOE, by and through her parent, NORMAN NOE; KARL KOE; and JAY DOE, *on behalf of themselves and all similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; U.S. DEPARTMENT OF JUSTICE; NYU LANGONE HEALTH SYSTEM; NYU LANGONE HOSPITALS; and NYU GROSSMAN SCHOOL OF MEDICINE, A DIVISION OF NEW YORK UNIVERSITY,<br><br>Defendants. | Case No. 1:26-cv-04641-JAV |

**<u>REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND PROVISIONAL CLASS
CERTIFICATION</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES.............................................................................................. iii

I.      THIS COURT HAS JURISDICTION. ...............................................................1

II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR FIFTH AMENDMENT CLAIM..............................................................................................................4

III.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR FOURTH AMENDMENT CLAIM..............................................................................................................7

        A.      The Third-Party Doctrine Does Not Bar Plaintiffs' Claim. ......................... 7

        B.      This Court Must Weigh DOJ's Improper Purpose Against Plaintiffs' Interests............ 8

IV.     THE REQUESTED PRELIMINARY RELIEF IS APPROPRIATE. ...............................9

        A.      Provisional Class Certification. .................................................... 9

        B.      Scope of TRO. ......................................................................11

CONCLUSION..............................................................................................................11

**TABLE OF AUTHORITIES**

**CASES**                                                                 **Page(s)**

*A.A.R.P. v. Trump*,
  145 S. Ct. 1364 (2025) .................................................................................................. 9

*Abouammo v. United States*,
  No. 25-5146, 2026 WL 1686084 (U.S. June 11, 2026) ............................................. 4

*Albright v. Oliver*,
  510 U.S. 266 (1994) .................................................................................................... 9

*Am. Council of Learned Societies v. McDonald*,
  792 F.Supp.3d 448 (S.D.N.Y. 2025) ......................................................................... 9

*Branzburg v. Hayes*,
  408 U.S. 665 (1972) .................................................................................................... 6

*Carpenter v. United States*,
  585 U.S. 296 (2018) ................................................................................................. 7, 8

*CASA, Inc. v. Trump*,
  793 F.Supp.3d 703 (D. Md. 2025) ............................................................................ 11

*Dean Foods Co.*,
  384 U.S. 597 (1966) .................................................................................................... 3

*Doe v. Bridgeport Police Dep't*,
  198 F.R.D. 325 (D. Conn. 2001) .............................................................................. 10

*Ferguson v. City of Charleston*,
  532 U.S. 67 (2001) ...................................................................................................... 8

*FTC v. Dean Foods Co.*,
  384 U.S. 597 (1966) .................................................................................................... 3

*H.C.R. v. Mullin*,
  No. 25-CV-00747, 2026 WL 850555 (M.D. Fla. Mar. 27, 2026) ........................... 10

*In re 2025 UPMC Subpoena*,
  No. 25-MC-01069, 2026 WL 570419 (W.D. Pa. Mar. 2, 2026) ............................... 11

*In re Admin. Subpoena to Rhode Island Hosp.*,
  No. 26-MC-0007, 2026 WL 1392565 (D.R.I. May 14, 2026) .................................... 3

*In re Grand Jury Subpoena Served Upon Doe*,
  781 F.2d 238 (2d Cir. 1986) ....................................................................................... 6

*In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*,
   No. 26-MC-00012, 2026 WL 710202 (D.D.C. Mar. 13, 2026),
   *reconsideration denied,* No. 26-MC-00012, 2026 WL 1224046 (D.D.C. Apr. 3, 2026) ............ 6

*In re Rausch*,
   197 B.R. 109 (Bankr. D. Nev. 1996), *aff'd*, 213 B.R. 364 (D. Nev. 1997),
   *aff'd sub nom. In re Crawford*, 194 F.3d 954 (9th Cir. 1999) ........................................................ 4

*M.C. v. Jefferson Cnty., New York*,
   No. 22-CV-00190, 2022 WL 1541462 (N.D.N.Y. May 16, 2022) ............................................ 10

*Mercado v. Noem*,
   800 F.Supp.3d 526 (S.D.N.Y. 2025) ........................................................................................ 10

*Nat'l Aeronautics & Space Admin v. Nelson*,
   562 U.S. 134 (2011) .................................................................................................................... 5

*New York Times Co. v. Gonzales*,
   459 F.3d 160 (2d Cir. 2006) .................................................................................................. 1, 6

*NewYork Times Co. v. Gonzales*,
   382 F.Supp.2d 457 (S.D.N.Y. 2005), *as amended* (Mar. 2, 2005),
   *vacated and remanded*, 459 F.3d160 (2d Cir. 2006) ................................................................ 1, 2

*Polardo v. Adelberg*,
   No. 22-CV-2533, 2023 WL 26646 (S.D.N.Y. Mar. 28, 2023) ...................................................... 8

*Powell v. Schriver*,
   175 F.3d 107 (2d Cir. 1999) ........................................................................................................ 8

*R.B. v. United Behav. Health*,
   No. 21-CV-00553, 2023 WL 5977234 (N.D.N.Y. Sept. 14, 2023) ............................................ 10

*R.F.M. v. Nielsen*,
   365 F.Supp.3d 350 (S.D.N.Y. 2019) .......................................................................................... 10

*Sheehan v. Purolator Courier Corp.*,
   676 F.2d 877 (2d Cir. 1981) ........................................................................................................ 3

*Smith v. Maryland*,
   442 U.S. 735 (1979) .................................................................................................................... 8

*Stiggle v. Reichard*,
   No. 18-CV-01066, 2021 WL 2917630 (D. Conn. July 12, 2021) ................................................ 8

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ................................................................................................................ 9, 10

*Tucson Woman's Clinic v. Eden*,
　379 F.3d 531 (9th Cir. 2004)...........................................................................................4

*United States v. Anderson*,
　328 U. S. 699 (1946)........................................................................................................4

*United States v. Batchelder,*
　442 U.S. 114 (1979).........................................................................................................9

*United States v. Cessa*,
　856 F.3d 370 (5th Cir. 2017)...........................................................................................4

*United States v. Dionisio*,
　410 U.S. 1 (1973)........................................................................................................5, 9

*United States v. Miller*,
　425 U.S. 435 (1976).........................................................................................................8

*Wayte v. United States*,
　470 U.S. 598 (1985).........................................................................................................9

*Westchester Indep. Living Ctr., Inc. v. State Univ. of New York, Purchase Coll.*,
　331 F.R.D. 279 (S.D.N.Y. 2019) ....................................................................................10

*Z.A. v. Lucile Salter Packard Child.'s Hosp. at Stanford*,
　No. 26-cv-04998 (N.D. Cal. Jun 03, 2026)......................................................................3

**STATUTES**

28 U.S.C. §§ 2201-02 .........................................................................................................3

**OTHER AUTHORITIES**

Matt Tracy, *Mount Sinai confirms it would, if required, provide records of trans youth to Trump administration*, Gay City News (June 5, 2026), https://tinyurl.com/3vs583kv
　[https://perma.cc/N4Z9-76YW].......................................................................................2

§ *9-11.121 – Venue Limitations*, *in* Justice Manual, DOJ, https://tinyurl.com/2jnxhy9b
　[https://perma.cc/6K8Z-5AFT] (last visited June 17, 2026).........................................4

## I.      THIS COURT HAS JURISDICTION.

DOJ attacks a strawman, claiming that Plaintiffs seek to interfere in a grand jury investigation, Gov't Br. 2-4. That is wrong. The proposed class seeks relief to prevent DOJ from demanding their identifying and sensitive health information in a serial attempt to access this information through multiple means, including, but not limited to, grand jury subpoenas served on an unknown number of healthcare institutions. Plaintiffs invoke the authority of this Court, in the jurisdiction where they received medical care, where the alleged offenses took place,  where the targeted records are housed, in a state that has chosen to protect the provision of the medical care that the federal government seeks to "end," not to interfere with a grand jury proceeding but to protect their rights in the only appropriate venue for doing so.

The Second Circuit's decision in *New York Times Co. v. Gonzales* confirms that protecting Plaintiffs' constitutional rights in the district where their identifying and sensitive health information was generated and is maintained is a proper function for this Court notwithstanding separate potential grand jury investigations. As here, in *Gonzales*, DOJ argued that that the exercise of jurisdiction by the district court would "lead to wide-scale disruption of grand jury investigations." 382 F.Supp.2d 457, 480 (S.D.N.Y. 2005), *as amended* (Mar. 2, 2005), *vacated and remanded*, 459 F.3d 160 (2d Cir. 2006); Gov't Br. 4. The Second Circuit rejected such arguments, and this Court should do the same.

Putative class members received medical treatment at multiple healthcare institutions in New York City, and DOJ refuses to confirm whether such institutions have received, been threatened with, or complied with subpoenas. *Gonzales*, 459 F.3d at 167 (jurisdiction appropriate where quashal "would not offer ... the same relief as" relief sought because of, e.g., uncertainty about existence of one or more subpoenas, compliance status, and acts of "third party" in district). As NYU details, NYU Br. 5, DOJ sought the same information through an administrative

subpoena. For eleven months, NYU and DOJ negotiated over the scope of productions in compliance with that subpoena. Until the filings here, none of that information was public. And while it is reported that Mount Sinai Health System received a subpoena, Plaintiffs do not know whether such subpoena is an administrative or a grand jury subpoena.[1] It is possible, and even likely, that more subpoenas seeking the same information about putative class members are outstanding. Absent relief by this Court maintaining the *status quo* until the parties' rights can be litigated, Plaintiffs are left without a path to the relief they seek: safeguarding their rights with respect to their identifying and sensitive health information. Though DOJ suggests that Plaintiffs move to quash in the jurisdiction overseeing one alleged investigation, even if such a mechanism were available, it could not provide the same clarification or relief given the ongoing and ever-changing demands for their information.

That the *Gonzales* court only considered the plaintiff's request for declaratory relief does not change its relevance here. There, the parties had "agreed to maintain the status quo with respect to the records sought" for the duration of the briefing on the dispositive motions, obviating the need for the emergency relief sought here. *Gonzales*, 382 F.Supp.2d at 465. While declaratory relief was sufficient to clarify plaintiffs' rights in that posture, the underlying complaint in *Gonzales* also sought injunctive relief and nothing about the Court's decision to exercise jurisdiction turned on the nature of the relief.[2] In any event, DOJ conflates available relief under 28 U.S.C. §§ 2201-02 with this Court's equitable authority to retain jurisdiction and preserve the

---

[1]    *See* Matt Tracy, *Mount Sinai confirms it would, if required, provide records of trans youth to Trump administration*, Gay City News (June 5, 2026), https://tinyurl.com/3vs583kv [https://perma.cc/N4Z9-76YW].

[2]    DOJ has no argument to the contrary and merely cites another case for the proposition that declaratory relief can be "milder." Gov't Br. 5. That is a non-sequitur. Under 28 U.S.C. §§ 2201-02, a court can issue injunctive relief where proper.

*status quo*. Maintaining the *status quo* so that this Court can adjudicate the parties' rights is squarely within the Court's authority. *See Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 884 (2d Cir. 1981) ("the court has incidental equity jurisdiction to grant temporary relief to preserve the status quo"); *see also FTC v. Dean Foods Co.*, 384 U.S. 597, 608 (1966) (court has "express authority under the All Writs Act to issue such temporary injunctions as may be necessary to protect its own jurisdiction"). Even if the Court ultimately concludes that only declaratory relief is warranted, the Court's exercise of jurisdiction to preserve the *status quo* is necessary in the interim.

The unusual nature of DOJ's multi-jurisdictional demands for Plaintiffs' information makes relief from this Court even more urgent than in *Gonzales*. Despite ongoing negotiations with at least three hospitals—NYU, Stanford, and Rhode Island Hospital—concerning this sensitive health information, DOJ suddenly and without explanation changed course "in favor of" what one district court characterized as "a distant forum that DOJ deems friendly to its political positions." *In re Admin. Subpoena to Rhode Island Hosp.*, No. 26-MC-0007, 2026 WL 1392565, at *1 (D.R.I. May 14, 2026). Prior to the unexplained change of venue, the locus of the purported investigations was Washington, D.C. along with the various jurisdictions where target hospitals are located. *Id.* at *3; *see also* Defs.' Br., *Z.A. v. Lucile Salter Packard Child.'s Hosp. at Stanford*, No. 26-cv-04998 (N.D. Cal. Jun 03, 2026) (ECF 31), at 3-6 (detailing DOJ's sudden dismissal of administrative subpoena after months of engagement with Stanford and issuance of N.D. Tex. grand jury subpoena the next day). Now, DOJ insists Plaintiffs must go to this distant forum, in a state with a history of investigating parents who consent to this medical treatment for their minor children, Plaintiffs' Br. 13, and pursue relief without any confirmation that such investigation exists, Gov't Br. 4, 6. Though DOJ has not suggested that Plaintiffs or their parents are targets of the purported investigations, founding era principles generally reject that any accused—and by extension,

3

vulnerable third parties—be dragged to a distant forum unnecessarily. *See Abouammo v. United States*, No. 25-5146, 2026 WL 1686084, at *3 (U.S. June 11, 2026); *United States v. Anderson*, 328 U. S. 699, 703 (1946). At common law, a grand jury was "sworn to enquire, only for the body of the county, *pro corpore comitatus*; and therefore they [could] not regularly enquire of a fact done out of that county for which they [we]re sworn." *United States v. Cessa*, 856 F.3d 370, 372 (5th Cir. 2017) (quoting Blackstone, *Commentaries on the Laws of England* 300); *see also* Justice Manual § 9-11.121 ("A case should not be presented to a grand jury in a district unless venue for the offense lies in that district.").[3] To prevent harm to Plaintiffs through the ongoing subversion of investigatory processes, this Court's exercise of jurisdiction is warranted.

## II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR FIFTH AMENDMENT CLAIM.

The right to informational privacy encompasses both "the government's collection and storing of information about citizens," and "the release of information to the public or another government agency." *In re Rausch*, 197 B.R. 109, 115 (Bankr. D. Nev. 1996), *aff'd*, 213 B.R. 364 (D. Nev. 1997), *aff'd sub nom. In re Crawford*, 194 F.3d 954 (9th Cir. 1999). And "even if a law adequately protects against *public* disclosure of private information," the government's collection of such information may still violate informational privacy rights. *See Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551-52 (9th Cir. 2004). DOJ is thus wrong to argue that the right to informational privacy is not implicated by their demand for Plaintiffs' identifying and sensitive health information—information the Second Circuit has recognized warrants constitutional protection. Plaintiffs' Br. 10-12.

---

[3]    § *9-11.121 – Venue Limitations*, *in* Justice Manual, DOJ, https://tinyurl.com/2jnxhy9b [https://perma.cc/6K8Z-5AFT] (last visited June 17, 2026).

Critically, the contexts in which the government's demand for confidential information have been found not to violate informational privacy are typically when the government acts as an employer or conditions a benefit on the provision of such information. For example, key to the Court's decision in *Nat'l Aeronautics & Space Admin. v. Nelson* was the fact that the information was requested for background checks as a condition of federal employment, such that the government was acting "in its capacity 'as proprietor' and manager of its 'internal operation.'" 562 U.S. 134, 148-49 (2011).

DOJ fails to meaningfully engage with the balancing of interests that courts must consider when assessing whether the government's demand for identifying and sensitive health information outweighs plaintiffs' interest in keeping such information confidential. *See* Plaintiffs' Br. 11-18. Regardless, some responses to DOJ's errors or omissions are warranted.

First, and crucially, DOJ's opposition does not dispute that the identifying and sensitive health information at issue here is not necessary to any purported investigation. It offers no interest—let alone a legitimate one—in obtaining the specific information Plaintiffs seek to shield. Nor does DOJ contest that it has agreed to accept de-identified data from NYU and other hospitals facing the same investigations. *See* Plaintiffs' Br. 15-16; Compl. ¶¶ 131-34; *cf.* Dkt. 45 (Cunha Decl.) ¶ 4 (noting DOJ agreeing to de-identified data in the first instance). This alone should be dispositive on the issue.

Second, DOJ implies that its grand jury subpoena power is absolute such that it may infringe upon citizens' constitutional rights. Gov't Br. 9-10. But DOJ may not use grand jury subpoenas as "some talisman that dissolves all constitutional protections." *United States v. Dionisio*, 410 U.S. 1, 11 (1973). It is barred from using grand jury proceedings for improper means. *See, e.g., In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, No. 26-MC-00012, 2026

WL 710202, at \*6 (D.D.C. Mar. 13, 2026) (DOJ "cannot use criminal investigations to pressure [officials] into enacting their preferred policies"), *reconsideration denied*, No. 26-MC-00012, 2026 WL 1224046 (D.D.C. Apr. 3, 2026). Or to circumvent constitutional rights. *See Dionisio*, 410 U.S. at 11; *Gonzales*, 459 F.3d at 172 ("We do not expect courts will forget that grand juries must operate within the limits of the First Amendment as well as the Fifth." (quoting *Branzburg v. Hayes*, 408 U.S. 665, 708 (1972))). Indeed, one of the cases DOJ cites suggests that when a jury subpoena infringes a constitutionally protected interest, a preliminary showing is warranted before allowing the government to enforce it. *See In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 244 (2d Cir. 1986) (en banc).[4] Thus, like all governmental powers, DOJ's use of grand jury subpoenas must yield to constitutional limits.

Third, while DOJ argues that recognizing Plaintiffs' right to informational privacy would lead to interference with grand jury proceedings, Gov't Br. 9, the Second Circuit has rejected that argument and confirmed the propriety of testing the constitutionality of similar demands for records, *see Gonzales*, 459 F.3d at 167. That is particularly true where, as here, Plaintiffs challenge DOJ's repeated and continuous attempts to seek their identifying and sensitive health information through ever shifting and partly unknown means. *Compare* Ex. A to Compl. *to* Dkt. 45-1 *and* Dkt. 15-3. Moreover, the circumstances here would only repeat where DOJ seeks the extremely private information of one party—such as transgender status and sensitive health information—through an unknown number of varying subpoenas to other parties and does so for an improper purpose.

---

[4]     The question there was whether the subpoena for an attorney to testify infringed the Sixth Amendment right to counsel or due process. The court simply concluded the Sixth Amendment right had not attached. *Id.* at 244.

6

Fourth, DOJ seems to imply that Plaintiffs have no right to informational privacy because of boilerplate notices from healthcare institutions that they may have to disclose personal health information for law enforcement purposes. Gov't Br. 10. But such notices further evince the sensitive and highly personal nature of the information at issue. And where such notices alert patients as to possible *limited* disclosure, they assume *lawful* requests for the information. The notices do not waive Plaintiffs' right to informational privacy for demands that are part of an overarching plan to target them as a group and their healthcare as is the case here.

Finally, DOJ argues that disclosure to parties other than DOJ is not possible, but that is not true, as Plaintiffs have explained. Plaintiffs' Br. 13-14.

## III. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR FOURTH AMENDMENT CLAIM.

### A. The Third-Party Doctrine Does Not Bar Plaintiffs' Claim.

DOJ's argument that Plaintiffs have no cognizable Fourth Amendment privacy interest in their comprehensive identifying and sensitive medical information due to the third-party doctrine fails. The fact that information is disclosed by custodians of records for specific delineated purposes "in the ordinary course of their business," Gov't Br. 10, is in no way dispositive as to individuals' reasonable expectations of privacy in such information. Indeed, the cell site location records at issue in *Carpenter v. United States* were likewise "business records," 585 U.S. 296, 313 (2018), that were required to be disclosed "as required by law," *id.* at 332 (Kennedy, J., dissenting). Nevertheless, the Court concluded that individuals maintained Fourth Amendment privacy rights in the "detailed and comprehensive records[s]" sought by the government there, *id.* at 309, even though the investigatory mechanism (unlike here) "required the Government to show reasonable grounds for believing that the records were relevant and material to an ongoing investigation," *id.* at 317 (quotations omitted).

7

Rather than overturning the third-party doctrine, *Carpenter* clarified that the privacy interests at stake for certain types of records—those that are so "revealing" as to encompass "not only … particular movements" but individuals' "familial, political, professional, religious, and sexual associations," *id.* at 311—may be weighty enough to "overcome" the fact that those records are held by third parties. *Id.* at 309-11 (citation omitted).[5] *See also id.* at 314 (distinguishing *Smith v. Maryland*, 442 U.S. 735 (1979) and *United States v. Miller*, 425 U.S. 435 (1976), by noting that "telephone call logs reveal little in the way of identifying information" and "checks [a]re not confidential communications but negotiable instruments to be used in commercial transactions" (cleaned up)). Here, there is not only a subjective "expectation that the information would remain confidential," *Stiggle v. Reichard*, No. 18-CV-01066, 2021 WL 2917630, at *4 (D. Conn. July 12, 2021), but multiple overlapping legal protections against disclosure indicating the objective reasonableness of privacy expectations in such intimate and comprehensive information. Plaintiffs' Br. 20-21.

**B. This Court Must Weigh DOJ's Improper Purpose Against Plaintiffs' Interests.**

DOJ erroneously claims that the Fourth Amendment inquiry here "can be meaningfully addressed only in the court that allegedly issued the process." Gov't Br. 12. Under its theory, DOJ could move its bad faith campaign from one jurisdiction to which Plaintiffs have no connection to another, and Plaintiffs would be required to play a perverse game of judicial whack-a-mole to

---

[5]     DOJ misreads *Ferguson v. City of Charleston*, 532 U.S. 67 (2001), which did not address the third-party doctrine. *Ferguson* examined whether the government's asserted justification in a policy of drug testing all maternity patients qualified as a "special need" as opposed to an interest in general law enforcement. *Id.* at 77-86. Likewise, cases involving "disclosure of prisoners' medical records during criminal proceedings," *Polardo v. Adelberg*, No. 22-CV-2533, 2023 WL 2664612, at 16 n.15 (S.D.N.Y. Mar. 28, 2023), do not obviate the need to weigh the specific type and breadth of medical records sought against the asserted government interest. *Cf. Powell v. Schriver*, 175 F.3d 107, 112-13 (2d Cir. 1999).

protect their highly sensitive information from unreasonable intrusion by the government. That cannot be. "[A]lthough prosecutorial discretion is broad, it is not 'unfettered;" and is "subject to constitutional constraints." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (quoting *United States v. Batchelder,* 442 U.S. 114, 125 (1979)). Such constraints include the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiffs do not assert that DOJ is acting in bad faith and with an intent to harass lightly. The remarkable factual history of DOJ's demands for this category of information and series of uniform judicial conclusions as to their complete lack of legitimate purpose are certainly not presented "in passing." Gov't Br. 12. Plaintiffs are aware of the deference afforded to grand jury subpoenas; indeed, Plaintiffs present evidence that DOJ has blatantly forum shopped and weaponized the secrecy of faraway grand jury proceedings following its failed identical administrative subpoenas for this exact purpose: to insulate them from proper judicial review. This Court has the equitable authority to declare unlawful and enjoin DOJ's "transformation of the grand jury into an instrument of oppression." *Dionisio*, 410 U.S. at 12. When this Court weighs DOJ's bad faith "probing into" hundreds of "individual[s'] private li[ves]" against Plaintiffs' "interests in human dignity," *id.* at 15, the result is unmistakable: DOJ's attempted intrusions are unreasonable under the Fourth Amendment.

## IV.    THE REQUESTED PRELIMINARY RELIEF IS APPROPRIATE.

### A. Provisional Class Certification.

Contrary to DOJ's assertion, Gov't Br. 14, federal courts routinely issue temporary relief to a putative class, including after *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). In issuing class-wide preliminary relief in *American Council of Learned Societies v. McDonald*, this Court noted that "[t]here is no reason … to assume that the Court in *CASA* intended to walk back a pronouncement it made the previous month in *A.A.R.P.* [*v. Trump*, 145 S. Ct. 1364 (2025)]. … [P]reliminary

injunctive relief that relates solely to the pleaded classes … is not broader than necessary to provide complete relief to each plaintiff with standing to sue." 792 F.Supp.3d 448, 498 (S.D.N.Y. 2025) (citation modified). That practice is followed in this Court. *See*, *e.g.*, *Mercado v. Noem*, 800 F.Supp.3d 526, 559 (S.D.N.Y. 2025) (provisionally certifying class for preliminary relief). Indeed, Justice Kavanaugh's concurrence in *CASA* expressly anticipated such relief. 606 U.S. at 869 (Kavanaugh, J., concurring) ("[P]laintiffs who challenge the legality of" governmental "action and request preliminary injunctive relief may sometimes seek to proceed by class action under [Rule] 23(b)(2) and ask a court to award preliminary class-wide relief … .").

DOJ's assertions that Plaintiffs' putative class does not meet Rule 23's requirements cannot overcome Plaintiffs' straightforward arguments. Dkt. 17 at 9-18.[6] Citing out-of-circuit cases, DOJ suggests that proceeding under pseudonym frustrates Plaintiffs' ability to adequately represent the class. That is wrong. Courts across this circuit have regularly certified classes with pseudonymous class representatives. *See*, *e.g.*, *R.F.M. v. Nielsen*, 365 F.Supp.3d 350, 360 (S.D.N.Y. 2019); *M.C. v. Jefferson Cnty., New York*, No. 22-CV-00190, 2022 WL 1541462, at *5 (N.D.N.Y. May 16, 2022); *R.B. v. United Behav. Health*, No. 21-CV-00553, 2023 WL 5977234, at *5 (N.D.N.Y. Sept. 14, 2023); *Doe v. Bridgeport Police Dep't*, 198 F.R.D. 325, 350 (D. Conn. 2001). And multiple courts have rejected DOJ's argument, particularly as it pertains to 23(b)(2) classes. *See H.C.R. v. Mullin*, No. 25-CV-00747, 2026 WL 850555, at *13 (M.D. Fla. Mar. 27, 2026) ("The pseudonym arguments lack merit. Plaintiffs cite ample authority showing that individuals using pseudonyms

---

[6]    DOJ's arguments regarding numerosity are without merit. "[T]he numerosity inquiry is not strictly mathematical but must take into account the context of the particular case." *Westchester Indep. Living Ctr., Inc. v. State Univ. of New York, Purchase Coll.*, 331 F.R.D. 279, 288 (S.D.N.Y. 2019). And DOJ offers no evidence to suggest that fewer than forty patients are impacted by their demands.

often serve as class representatives."); *CASA, Inc. v. Trump*, 793 F.Supp.3d 703, 724 (D. Md. 2025). As set forth in their declarations and the initial class briefing, Plaintiffs are plainly adequate representatives of the putative class.

Lastly, DOJ Defendants attempt to manufacture a conflict between Plaintiffs and some transgender youth and their families who may not oppose disclosure of their health records and identifying. Gov't Br. 22-23. This misses the point. Plaintiffs seek this Court's protection from *compelled* disclosure of their identities and sensitive health information; neither the requested relief nor their membership in the class prohibits someone's voluntary disclosure.

## B. Scope of TRO.

As discussed (*see supra* at pp. 1-4), this Court has broad equitable authority to fashion relief to maintain the *status quo*. Though DOJ has consistently suggested that de-identified information would be permissible, given the risk that redaction cannot fully protect a patient's sensitive health information and transgender status from disclosure, an order preventing the release of Plaintiffs' records is warranted. *See In re 2025 UPMC Subpoena*, No. 25-MC-01069, 2026 WL 570419, at *1 (W.D. Pa. Mar. 2, 2026) ("The patients have persuaded the Court that true and effective anonymization cannot be achieved."). But if the Court believes narrower relief could protect the relevant interests, Plaintiffs respectfully request that Defendants be ordered not to seek or provide any identifying information as part of any purported and ongoing government investigation into healthcare offenses related to the provision of gender-affirming medical care.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion for Temporary Restraining Order and Provisional Class Certification.

Dated: June 18, 2026

11

Respectfully submitted,

*/s/ Omar Gonzalez-Pagan*

| | |
|---|---|
| Robert Hodgson | Omar Gonzalez-Pagan |
| Gabriella Larios | Karen L. Loewy |
| Anya Weinstock | **Lambda Legal Defense** |
| **New York Civil Liberties Union** | **and Education Fund, Inc.** |
| **Foundation** | 120 Wall Street, 19th Floor |
| 125 Broad Street, 19th Floor | New York, New York 10005 |
| New York, New York 10004 | Telephone: 212-809-8585 |
| Telephone: 212-607-3300 | Facsimile: 855-535-2236 |
| rhodgson@nyclu.org | ogonzalez-pagan@lambdalegal.org |
| glarios@nyclu.org | kloewy@lambdalegal.org |

Chase B. Strangio
Shana Knizhnik
**American Civil Liberties Union**
**Foundation**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: 212-549-2500
Facsimile: 212-549-2650
cstrangio@lambdalegal.org
sknizhnik@aclu.org

Elizabeth Gill**
**American Civil Liberties Union**
**Foundation**
425 California Street, Suite 700
San Francisco, California 94104
Telephone: 415-343-0779
egill@aclu.org

Nora Huppert*
**Lambda Legal Defense**
**and Education Fund, Inc.**
3656 N. Halsted St.
Chicago, Illinois 60613
Telephone: 312-605-3233
Facsimile: 855-535-2236
nhuppert@lambdalegal.org

A.D. Sean Lewis*
**Lambda Legal Defense**
**and Education Fund, Inc.**
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
Telephone: 213-382-7600
Facsimile: 855-535-2236
alewis@lambdalegal.org

* Admitted *pro hac vice.*
** *Pro hac vice* forthcoming

*Attorneys for Plaintiffs*

## CERTIFICATION UNDER LOCAL CIVIL RULE 7.1(c)

In accordance with Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, promulgated pursuant to 28 U.S.C. § 2071 and Fed. R. Civ. P. 83, the undersigned certifies that the word count in this memorandum of law (not including the caption, table of contents, table of authorities, and signature block as well as this certification), as established using the word count function on the word-processing system used to prepare it, complies with the word-count limitations of this Court and is 3,493 words.

Dated: June 18, 2026

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan