**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARTER COE, BY AND THROUGH HIS PARENT AND NEXT FRIEND, CAROLINE COE, et al., <br>                Plaintiffs, <br><br>       v. <br><br> TODD BLANCHE, et al., <br>                  Defendants. | No. 1:26-cv-04641 (KPF) |

**DOJ DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    I.    The government is likely to succeed on the merits of its appeal. ..................................... 2

        A.    Plaintiffs are in the wrong court............................................................................ 2

        B.    Plaintiffs' Fifth Amendment claim is unlikely to succeed..................................... 5

        C.    Plaintiffs' Fourth Amendment claim is unlikely to succeed.................................. 9

        D.    Plaintiffs' claims against the NYU Defendants are unlikely to succeed. .............. 9

    II.    The non-merits factors favor a stay ............................................................................ 10

CONCLUSION.................................................................................................................. 12

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Perez*,
585 U.S. 579 (2018) .............................................................................................. 5

*Article 13 LLC v. Ponce De Leon Fed. Bank*,
175 F.4th 397 (2d Cir. 2026) ................................................................................ 5

*Big Ridge, Inc. v. Fed Mine Safety & Health Rev. Comm'n*,
715 F.3d 631 (7th Cir. 2013) ................................................................................ 8

*Branzburg v. Hayes*,
408 U.S. 665 (1972) .......................................................................................... 1, 3

*Carpenter v. United States*,
585 U.S. 296 (2018) .............................................................................................. 9

*Chatrie v. United States*,
609 U.S. __, 2026 WL 1855568 (June 29, 2026) ................................................ 9

*Chicago Headline Club v. Noem*,
168 F.4th 1033 (7th Cir. 2026) ........................................................................... 10

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992) ................................................................................................ 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .............................................................................................. 4

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998) .............................................................................................. 8

*Dobbs v. Jackson Women's Health Organization*,
597 U.S. 215 (2022) .............................................................................................. 5

*Dole v. Serv. Emps. Union, FL-CIO, Local 280*,
950 F.2d 1456 (9th Cir. 1991) ............................................................................ 11

*Edmonson v. Leesville Concrete Co.*,
500 U.S. 614 (1991) ............................................................................................ 10

*Ferguson v. City of Charleston*,
532 U.S. 67 (2001) ................................................................................................ 9

*Hancock v. Cnty. of Rensselaer*,
882 F.3d 58 (2d Cir. 2018) ................................................................................... 7

*In re Grand Jury Proceedings*,
  801 F.2d 1164 (9th Cir. 1986) ................................................................................... 6

*In re Grand Jury Subpoena, No. 16-03-217*,
  875 F.3d 1179 (9th Cir. 2017) ................................................................................ 11

*In re Sealed Case*,
  794 F.2d 749 (D.C. Cir. 1986) ................................................................................ 11

*In re Subpoena Duces Tecum*,
  228 F.3d 341 (4th Cir. 2000) ............................................................................. 8, 12

*Kerns v. Bader*,
  663 F.3d 1173 (10th Cir. 2011) ................................................................................ 9

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................. 4

*Maryland v. King*,
  567 U.S. 1301 (2012) .............................................................................................. 10

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
  145 S. Ct. 2658 (2025) .............................................................................................. 3

*New York Times Co. v. Dep't of Def.*,
  2026 WL 1179440 (D.C. Cir. Apr. 27, 2026) ........................................................ 12

*New York Times Co. v. Gonzales*,
  459 F.3d 160 (2d Cir. 2006) ..................................................................................... 3

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................................................. 2

*NML Capital, Ltd. v. Republic of Argentina*,
  727 F.3d 230 (2d Cir. 2013) ..................................................................................... 9

*O'Connor v. Pierson*,
  426 F.3d 187 (2d Cir. 2005) ..................................................................................... 9

*Samia v. United States*,
  599 U.S. 635 (2023) ............................................................................................ 7, 11

*Smith v. Maryland*,
  442 U.S. 735 (1979) .................................................................................................. 9

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ............................................................................................ 3, 10

iii

*United States v. Beaufils,*
    160 F.4th 1147 (11th Cir. 2025) ................................................................................................ 8

*United States v. Calandra,*
    414 U.S. 338 (1974) ................................................................................................................... 6

*United States v. Dionisio,*
    410 U.S. 1 (1973) ....................................................................................................................... 6

*United States v. Harry,*
    130 F.4th 342 (2d Cir. 2025) ..................................................................................................... 9

*United States v. Hayes,*
    794 F.2d 1348 (9th Cir. 1986) ................................................................................................... 8

*United States v. Miller,*
    425 U.S. 435 (1976) ................................................................................................................... 9

*United States v. Oladipo,*
    2023 WL 4552112 (D. Mass. July 14, 2023) ............................................................................ 8

*United States v. Pompy,*
    2021 WL 978797 (E.D. Mich. Mar. 16, 2021) .......................................................................... 8

*United States v. R. Enters., Inc.,*
    498 U.S. 292 (1991) ................................................................................................................... 6

*United States v. Sells Eng'g, Inc.,*
    463 U.S. 418 (1983) ................................................................................................................... 6

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ..................................................................................................................... 10

## **STATUTES**

18 U.S.C. § 1032 .............................................................................................................................. 8

18 U.S.C. § 1082A ............................................................................................................................ 8

18 U.S.C. § 1347 .............................................................................................................................. 8

18 U.S.C. § 3282(a) ........................................................................................................................ 11

18 U.S.C. § 3486 .............................................................................................................................. 4

21 U.S.C. § 841 ................................................................................................................................ 8

iv

## <u>RULES</u>

Fed. R. Crim. P. 6(e)(3)(E)(i) ................................................................................................ 2

Fed. R. Crim. P. 17(e) ............................................................................................................. 2

**INTRODUCTION**

The Supreme Court has long upheld the "longstanding principle" that the grand jury is entitled to "every man's evidence." *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972). Because this Court's recent injunction flouts those principles, turns centuries of grand jury jurisprudence on its head, and prevents the government from obtaining relevant evidence to further an active criminal investigation, this Court should stay its injunction pending appeal.

**BACKGROUND**

On July 6, 2026, the Court granted Plaintiffs' motions for provisional class certification and a preliminary injunction, adopting the Court's oral reasoning supporting its temporary restraining order. *See* Order, ECF No. 71; ECF No. 77 ("TRO Tr."). As to class certification, the court provisionally certified a class of certain patients who received certain treatments "at a healthcare institution located in New York City" and a subclass of patients who received those treatments "at NYU Langone Hospitals or any other NYU entity." ECF No. 71 at 3-4. On the merits, the Court concluded that Plaintiffs were likely to succeed on their Fifth Amendment informational privacy claim and their Fourth Amendment claim. TRO Tr. at 20-27. As for the remaining injunction factors, the court concluded that Plaintiffs will likely suffer irreparable harm absent an injunction and that the balance of equities and public interest tip in favor of relief. TRO Tr. at 27-30.

The Court ultimately enjoined the Department from "[s]eeking, receiving, using, retaining, or disseminating any identifying or sensitive health information of Plaintiffs and members of the Class through the Subpoenas at issue or substantially similar administrative or grand jury subpoenas as part of the U.S. Department of Justice's claimed investigations into health care offenses related to gender-affirming medical care" and enjoined NYU Defendants from "[d]isclosing or producing any identifying or sensitive health information of Plaintiffs and

1

members of the NYU Subclass to the DOJ Defendants in response to the Subpoena at issue or any substantially similar administrative or grand jury subpoenas as part of the U.S. Department of Justice's claimed investigations into healthcare offenses related to gender-affirming medical care." ECF No. 71 at 4-5.

The Department has conferred with the other parties, who do not consent to a stay pending appeal. However, the parties consent to an expedited briefing schedule for this motion, under which any opposition briefs would be due by July 27 and any reply brief would be due by July 30.

## **ARGUMENT**

When deciding a motion to stay an order pending appeal, courts consider "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009).

**I.      The government is likely to succeed on the merits of its appeal.**

**A.  Plaintiffs are in the wrong court.**

DOJ Defendants are likely to succeed on their arguments that this Court cannot interfere with any grand jury subpoenas issued from a federal grand jury in Texas. The Federal Rules of Criminal Procedure establish a comprehensive framework governing the issuance, supervision, and challenge of grand jury subpoenas. By permitting Plaintiffs to bypass that framework through collateral civil litigation, this Court effectively created a new mechanism for challenging federal grand jury process that neither the Rules nor precedent recognizes.

Grand jury subpoenas can be served "at any place within the United States," Fed. R. Crim. P. 17(e), and so a multiplicity of inconsistent rulings among federal courts could result if grand jury process could be challenged outside the issuing court. Further, the historic tradition of grand

2

jury secrecy, now enshrined by Rule 6(e), means that it is impossible for the government to effectively litigate collateral challenges to grand jury process without the express authorization of the supervising court. *See* Fed. R. Crim. P. 6(e)(3)(E)(i). Nor is there any equitable history or tradition recognizing freestanding constitutional causes of action to enjoin grand jury process. And prior to these cases, no other federal court appears to have endorsed the novel procedure adopted by this Court. Instead, as the Supreme Court has recognized, "[g]rand juries are subject to judicial control and subpoenas to motions to quash." *Branzburg v. Hayes*, 408 U.S. 665, 708 (1972). An action to prevent DOJ's enforcement of a grand jury subpoena in another district "lacks a historical pedigree" and "falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025). *New York Times Co. v. Gonzales* is no exception. 459 F.3d 160 (2d Cir. 2006). Regarding the permissibility of the district court entertaining the action at all, the court of appeals concluded only (1) that Criminal Rule 17 is not a "special statutory proceeding" that forecloses the availability of declaratory relief, *id.* at 166, and (2) that the "five factors to be considered before a court entertains a declaratory judgment action" tipped in the plaintiffs' favor when Rule 17 relief was unavailable, *id.* at 167. Regardless, the court in *Gonzales* concluded that relief was not warranted. Plaintiffs have thus identified zero judicial orders interfering with an out-of-district grand jury subpoena or investigation, prior to this month—*Gonzales* included.

Plaintiffs may not salvage matters by seeking *broader* relief from any other efforts by the Department to seek their patient records. *See* TRO Tr. at 6, 17-18. That does not solve Plaintiffs' Rule 17 problem, and it instead simply introduces new problems. As to grand jury subpoenas, a plaintiff cannot end-run the limitations of Rule 17 by packaging an impermissible request for relief from grand jury process together with a request for relief from other previously issued or

3

hypothetical future process. That would not make any sense. If an order forbidding Action A is foreclosed, that limit cannot be evaded simply by entering an order forbidding "Action A or Action B." *See, e.g.*, *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2660-61 (2025) (staying an injunction in part, because challenges to grant terminations were channeled to a different forum, despite plaintiffs' packaging them together with challenge to guidance that was properly before district court).

Further, Plaintiffs lack standing to challenge investigatory measures other than the alleged grand jury subpoena. They provide no evidence that the government will seek to obtain their information through any means other than the alleged grand jury subpoena—rather, they can offer only mere speculation that the government might use other tools at its disposal to obtain records containing such information. It is black-letter law that to establish standing, a plaintiff must allege an injury that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citation omitted). Accordingly, a "threatened injury must be *certainly impending* to constitute injury in fact, and . . . allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and citation omitted) (emphasis in original). Plaintiffs plainly have not established any "certainly impending" injury from hypothetical future investigations. *See generally* Complaint; TRO Mot. at 5 (asserting that Plaintiffs have standing on the ground that "Plaintiffs face an imminent risk that their identifying and sensitive health information will be disclosed on or before June 10, 2026 because of the Subpoenas sent by DOJ."). And what's more, those hypothetical future investigations may be subject to their own particular frameworks for motions to quash. *E.g.*, 18 U.S.C. § 3486.

Plaintiffs' attempted remedial broadening also introduces new problems. A remedy barring *all* prospective subpoenas, including grand jury subpoenas, is, if anything, even more unprecedented than an order targeting grand jury process would be, and it represents an even greater judicial invasion of Executive Branch prerogatives. Nor can Plaintiffs possibly show on the merits that any and all future attempts by the government to access their patient records would violate the Constitution. Ultimately, Plaintiffs sought and obtained an order that functions just like quashal of a grand jury subpoena. *Cf. Abbott v. Perez*, 585 U.S. 579, 595 (2018) (endorsing functional approach to assessment of remedy in order to prevent "manipulation" of rules through "careful" use of "terminology"). The government is likely to prevail in arguing on appeal that that was impermissible. Indeed, just last week, two other courts correctly refused collateral-attack invitations to interfere with investigations or lawsuits properly supervised elsewhere. *See Am. Acad. of Pediatrics v. Uthmeier*, No. 26-2238, ECF No. 34 (7th Cir. July 8, 2026) (en banc) (staying collateral-attack preliminary injunction); *World Prof'l Ass'n for Transgender Health v. FTC*, No. 26-cv-532, ECF No. 58 (D.D.C. July 10, 2026) (denying motion for temporary restraining order seeking "to block the Federal Trade Commission's enforcement action in a different forum").

**B. Plaintiffs' Fifth Amendment claim is unlikely to succeed.**

The Court erroneously held that Plaintiffs were likely to succeed on the merits of their Fifth Amendment informational privacy claim. The Second Circuit cases on which the Court relied predate *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), and cannot properly be extended to this novel context. *Dobbs* makes clear that courts may not recognize new applications of substantive due process by describing the asserted liberty interest "at a high level of generality," such as a generalized interest in "privacy," "autonomy," or bodily integrity. *Id.* at

5

254-57. Rather, the asserted interest must be carefully defined and shown to be "deeply rooted in the Nation's history and traditions." *Id.* at 250, 256; *see, e.g.*, *Article 13 LLC v. Ponce De Leon Fed. Bank*, 175 F.4th 397, 407 (2d Cir. 2026) (framing inquiry as whether plaintiff had a substantive due process "right to wait until after the limitations period expired to challenge the validity of an earlier foreclosure action"). Properly framed, the right asserted here is not a general right to informational privacy, but a constitutional right to prevent a grand jury from obtaining medical records held by a third party through otherwise lawful compulsory process.

History and tradition provide no support for such a right. Just the opposite. Both the Supreme Court and Ninth Circuit have recognized that a "witness has no right of privacy before the grand jury," which is entitled to "responses [that] might prove embarrassing or result in an unwelcome disclosure of his personal affairs." *United States v. Calandra*, 414 U.S. 338, 353 (1974); *In re Grand Jury Proceedings*, 801 F.2d 1164, 1169 (9th Cir. 1986) ("There is no general right to privacy before the grand jury."); *see also, e.g.*, *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 433 (1983) ("[T]here are few if any other forums in which a governmental body has such relatively unregulated power to compel other persons to divulge information or produce evidence.").

More generally, the Supreme Court has also repeatedly declined to adopt "[a]ny holding that would saddle a grand jury with minitrials and preliminary showings [that] would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio*, 410 U.S. 1, 17 (1973). Subjecting alleged grand jury subpoenas to a "multifactor test" focused on interest balancing does just that—it "invite[s] procedural delays and detours while courts evaluate the relevancy and admissibility of documents sought by a particular subpoena." *United States v. R. Enters., Inc.*, 498 U.S. 292, 298 (1991).

6

Application of a multifactor balancing test, weighing the privacy of the information against the government's need for the information and how well-justified the investigation is, would be utterly inconsistent with a functional grand jury system. More still, such an approach, particularly in the non-supervising court, improperly "compromise[s] the indispensable secrecy of grand jury proceedings" by "[r]equiring the government to explain in too much detail the particular reasons underlying a subpoena." *Id.* at 299.

Regardless, insofar as a grand jury's receipt of evidence implicates constitutionally protected privacy interests, such "a breach of privacy takes a form courts have previously approved." *Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 66 (2d Cir. 2018). No ad hoc interest balancing is required to conclude that Plaintiffs' Fifth Amendment claim is doomed.

In any event, Plaintiffs' substantive due process claim also fails under any interest-balancing test. Plaintiffs' claimed expectation of privacy in medical records held by third parties is incompatible with the disclosures that hospitals such as NYU Langone and Mount Sinai provide to patients. *See* ECF No. 46-1; ECF No. 46-2. Even apart from that, the Court's analysis substantially overstates Plaintiffs' privacy interests by treating disclosure of medical records pursuant to a grand jury subpoena as tantamount to public dissemination of highly sensitive medical information. *See* TRO Tr. at 19-23. It is not. On Plaintiffs' own telling, the records would be produced to federal investigators in connection with a grand jury proceeding, subject to the historic safeguards governing such investigations. And the alleged sensitivity of evidence cannot itself place that evidence beyond the reach of otherwise lawful criminal process. Federal prosecutors routinely obtain and handle intensely private information, including when investigating crimes involving sexual violence or child exploitation; Plaintiffs' contrary theory would apparently prevent the government from investigating some of the most serious offenses in

Title 18 and cannot possibly be right.

On balance, and by any measure, the relevant factors plainly favor the government. Whatever cognizable privacy interests may be at stake here, they cannot possibly overcome the government's "compelling interest in finding, convicting, and punishing those who violate the law." *Samia v. United States*, 599 U.S. 635, 655 (2023) (citation omitted). The Court's conclusion that the government's interest here is minimal because personally identifying medical records cannot be needed for an investigation of any "conceiv[able]" crime, TRO Tr. at 22, is irreconcilable with the various crimes the government regularly uses medical records—in substantial quantities—to investigate and prosecute. *See, e.g.*, *United States v. Oladipo*, 2023 WL 4552112 (D. Mass. July 14, 2023) (over 140 patients' records, in investigation of health care fraud and controlled substances offenses); *United States v. Pompy*, 2021 WL 978797 (E.D. Mich. Mar. 16, 2021) ("all patient medical records" of "the medical practice of Lesly Pompy," in prosecution for controlled substance distribution, 21 U.S.C. § 841, and health care fraud, 18 U.S.C. § 1347); *United States v. Beaufils*, 160 F.4th 1147, 1154-57, 1161, 1163-66 (11th Cir. 2025) (recounting patterns observed across approximately a thousand patients' medical records, in challenge to convictions for health care fraud, 18 U.S.C. § 1347; false statements related to health care matters, 18 U.S.C. § 1032; and aggravated identity theft, 18 U.S.C. § 1082A); *In re Subpoena Duces Tecum*, 228 F.3d 341, 345, 350 (4th Cir. 2000) (rejecting motion to quash administrative subpoena seeking production of "more than 15,000 patient files" "[e]ven though these documents might be numerous," to investigate "any of 13 federal statutory offenses"); *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986) (investigation involving "over 10,000 patient files"); *cf. Big Ridge, Inc. v. Fed Mine Safety & Health Rev. Comm'n*, 715 F.3d 631, 636, 639, 644 (7th Cir. 2013) (upholding federal agency's demand to review medical records of all miners, across dozens of mines, to

8

evaluate compliance with reporting requirements).

On this record, Plaintiffs simply have not shown that the government has engaged in any "egregious," "conscience-shocking" misconduct prohibited by the Fifth Amendment. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849, 846 (1998); *see O'Connor v. Pierson*, 426 F.3d 187, 201-03 (2d Cir. 2005).

### C. Plaintiffs' Fourth Amendment claim is unlikely to succeed.

The government is also likely to succeed in its appeal of the Court's Fourth Amendment ruling. Plaintiffs' medical records are maintained by third-party hospitals, which disclose to their patients that they will share those medical records with a litany of other entities, including the government. *See, e.g.*, ECF No. 46-1; ECF No. 46-2. Courts have repeatedly applied the third-party doctrine to medical records, and the Supreme Court has not resolved the question. *See Kerns v. Bader*, 663 F.3d 1173, 1185 (10th Cir. 2011) (Gorsuch, J.) (discussing *Ferguson v. City of Charleston*, 532 U.S. 67 (2001)). Unlike the novel, location-based, and retrospective technologies the Supreme Court considered in *Carpenter v. United States*, 585 U.S. 296 (2018), and, more recently, in *Chatrie v. United States*, 609 U.S. __, 2026 WL 1855568 (June 29, 2026), papers held by businesses that reveal various details about an individual are nothing new—and in fact represent the very context in which the third-party doctrine arose. *See, e.g.*, *United States v. Miller*, 425 U.S. 435, 444-45 (1976) (bank records); *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) (collecting cases); *see United States v. Harry*, 130 F.4th 342, 349 (2d Cir. 2025) (cabining recent Supreme Court Fourth Amendment decisions to circumstances where "modern technology enhances law enforcement's traditional surveillance capabilities").

### D. Plaintiffs' claims against the NYU Defendants are unlikely to succeed.

Last, the Court issued a preliminary injunction running against the NYU defendants. That injunction injures the government because it represents a separate barrier to investigation. *Cf. NML*

9

*Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 239 (2d Cir. 2013) (permitting even a non-party to appeal "where the non-party has an interest plausibly affected by the judgment"). And the government is likely to succeed on its appeal of that portion of the preliminary injunction. The Court made no findings that Plaintiffs would likely succeed in showing a violation of the law by the NYU defendants. That error is clear cause for reversal. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Especially because Plaintiffs are not likely to succeed: As another judge considering similar claims concluded in declining to issue relief running against a hospital, "[t]he Constitution's protections … apply in general only to action by the government," *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991), and a private party would not become a government actor for constitutional purposes merely by complying with investigative process. Order, *Z.A. v. Lucile Salter Packard Children's Hosp. at Stanford*, No. 5:26-cv-4998, ECF No. 40 at 9-15 (N.D. Cal. June 6, 2026). Accordingly, the Court should stay its order in full.

## II.     The non-merits factors favor a stay.

Numerous recent rulings have recognized the irreparable harm to the Government visited by erroneous injunctions limiting lawful investigations and actions. It is well-established that the government suffers a quintessential form of irreparable injury when it is forestalled from enforcing its own laws. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). The injunction here thus irreparably harms the United States because it directly prohibits the government from utilizing grand jury process to seek Plaintiffs' patient records. This harm is compounded in this context: by "prevent[ing] the Government from enforcing its policies against nonparties," the Court's injunction transgresses the separation of powers by "effectively establish[ing] the district court as the supervisor" of the Government's criminal investigation. *Chicago Headline Club v. Noem*, 168 F.4th 1033, 1040 (7th

10

Cir. 2026); *CASA*, 606 U.S. at 859. And because the Court lacks equitable authority to enjoin grand jury process allegedly issued by a sister federal court, "the Government is likely to suffer irreparable harm from the [court's] entry of [an] injunction[] that likely exceed[s] the [court's] authority." *CASA*, 606 U.S. at 860. The preliminary injunction indefinitely bars the Department from obtaining the covered information through *any* grand jury process to investigate *any* crime, no matter how strong the evidence of wrongdoing, how necessary the information is to effectively prosecute it, or whether the subject of investigation is a hospital, doctor, pharmaceutical company, or otherwise.

These harms to the government and the public interest cannot be repaired by a later judgment in the government's favor. In this context, delay concretely and irreversibly harms the government's "clearly . . . legitimate and compelling interest" in enforcing criminal laws. *In re Grand Jury Subpoena, No. 16-03-217*, 875 F.3d 1179, 1191 (9th Cir. 2017). The public and the government have a "compelling interest in finding, convicting, and punishing those who violate the law." *Samia*, 599 U.S. at 655 (citation omitted); *Dole v. Serv. Emps. Union, FL-CIO, Local 280*, 950 F.2d 1456, 1461 (9th Cir. 1991) ("[T]here is little doubt that the Department's purpose of investigating possible criminal violations of [a federal law] serves a compelling governmental interest."); *accord, e.g.*, *In re Sealed Case*, 794 F.2d 749, 751 n.3 (D.C. Cir. 1986) (per curiam) (recognizing "the weighty public interest in the orderly functioning of grand juries and the judicial process"). In the meantime, during the indefinite delay imposed by the preliminary injunction, personnel depart, records are lost or destroyed, statutes of limitations run, and witnesses' memories fade. *See, e.g.*, 18 U.S.C. § 3282(a) (default five-year statute of limitations for federal crimes). Indefinite delay threatens to foreclose investigative avenues—or prosecution altogether—before the government can complete its inquiry.

11

On the other side of the balance, Plaintiffs' asserted privacy interests do not outweigh those interests. The Court's determination that Plaintiffs would be irreparably harmed absent an injunction does not control its ruling on this stay motion—after all, all preliminary injunctions involve a determination that the prevailing party will be irreparably harmed absent an injunction, but district courts and courts of appeals stay preliminary injunctions anyway. *See, e.g.*, *New York Times Co. v. Dep't of Def.*, 2026 WL 1179440, at *2-3 (D.C. Cir. Apr. 27, 2026) (granting a stay despite concluding the losing party would face irreparable harm from a stay). For the reasons explained already, to the extent Plaintiffs retain privacy interests in medical records held by hospitals in this context, the government's interest in finding, convicting, and punishing those who violate the law far "outweighs the privacy rights of those whose [medical] records" are sought via grand jury subpoena. *In re Subpoena*, 228 F.3d at 351. Any records disclosed to the government in the interim could be returned if Plaintiffs were to ultimately prevail on appeal. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13-15 (1992) ("[I]f the summons were improperly issued or enforced a court could order that the IRS' copies of the tapes be either returned or destroyed."). No principle of law or equity supports an injunction that indefinitely prohibits the Department from seeking or receiving an entire category of relevant evidence.

## **CONCLUSION**

The Court should enter an expedited briefing schedule, *supra* p. 2, and grant the motion for a stay pending appeal.

12

Dated: July 16, 2026                    Respectfully submitted,


                                        BRETT A. SHUMATE
                                        *Assistant Attorney General*

                                        JORDAN CAMPBELL
                                        *Deputy Assistant Attorney General*

                                        /s/ *Sarah Welch*

                                        SARAH WELCH
                                        *Senior Counsel to the Assistant Attorney General*

                                        JOHN R. BAILEY
                                        BRANTLEY T. MAYERS
                                        *Counsel to the Assistant Attorney General*

                                        STEVEN R. SCOTT
                                        EUGENE O'HALLORAN
                                        LUKE A. MILLER
                                        *Trial Attorneys*

                                        *U.S. Department of Justice*
                                        *Civil Division*

                                        Attorneys for Federal Defendants

13

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court and, as measured by the word processing system used to prepare it, this memorandum contains 3,756 words.

Dated: July 16, 2026

/s/ *Sarah Welch*

SARAH WELCH
*Senior Counsel to the Assistant Attorney General*

14